# Case Information

| | | |
|---|---|---|
| **Local Case Number:**<br>2025-023258-CA-01 | **State Case Number:**<br>132025CA02325801GE01 | **Case Style:**<br>Evangelos Skevofilax vs Dinner Key Marina et al |
| **Filing Date:**<br>11/24/2025 | **Judicial Section:**<br>CA08 - Downtown Miami - Judge Watson, Robert | **Case Status:**<br>OPEN |
| **Case Type:**<br>Contract & Indebtedness | **Consolidated Case No.:** | |

# Related Cases

| | | |
|---|---|---|
| **Case Number:**<br>2025-019547-CA-01 | **Filing Date:**<br>10/06/2025 | **Case Type:**<br>Injunctive Relief |

# Hearing Details

No data available

# Parties

| Party Description | Party Name | Attorney Information | Other Attorney(s) |
|---|---|---|---|
| Plaintiff | Skevofilax, Evangelos | | |
| Defendant | Dinner Key Marina | | |
| Defendant | United American Lien and Recovery | | |
| Defendant | City of Miami | | |

# Dockets

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| 27 | 12/16/2025 | | Order: | Event | REQUIRING RESPONSE BY DEFENDANTS BY DECEMBER 23, 2025, TO EMERGENCY MOTION FOR INJUNCTIVE RELIEF |
| 26 | 12/16/2025 | | Order: | Event | CORRECTED* ORDER DENYING EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER |
| 25 | 12/16/2025 | | Order Denying Motion | Event | EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER |
| 24 | 12/15/2025 | | Emergency Motion | Event | FOR TEMPORARY RESTRAINING ORDER EX PARTE |
| 23 | 12/10/2025 | | Service Returned | Event | |
| 22 | 12/09/2025 | | Summons Returned - No Service | Event | |
| 21 | 12/05/2025 | | Electronic Summons Email Notification Sent | Event | Evangelos Skevofilax |
| 20 | 12/05/2025 | | Electronic Summons Email Notification Sent | Event | Evangelos Skevofilax |

| DIN | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| | 12/05/2025 | | 20 Day Summons Issued | Service | |
| 19 | 12/05/2025 | | ESummons 20 Day Issued | Event | Re: Index # 13. |
| | 12/05/2025 | | 20 Day Summons Issued | Service | |
| 18 | 12/05/2025 | | ESummons 20 Day Issued | Event | Re: Index # 14. |
| 17 | 12/05/2025 | | Receipt: | Event | Receipt#:3270155 Amt Paid:$20.00 Comment: Allocation Code Quantity Unit Amount 3139-Summons Issue Fee 1 $10.00 $10.00 3139-Summons Issue Fee 1 $10.00 $10.00 Tender Type:Indigent Tender Amt:$20.00 Receipt Date:12/05/2025 Register#:327 Cashier:EFilingUser EFiling #:236939880 |
| 16 | 12/03/2025 | | Amended Complaint | Event | |
| 15 | 12/03/2025 | | Copy of: | Event | APPLICATION FOR DETERMINATION OF CIVIL INDIGENT STATUS. |
| 14 | 12/03/2025 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 13 | 12/03/2025 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 12 | 12/01/2025 | | Emergency Motion | Event | for Injunctive and Declaratory Relief |
| 10 | 12/01/2025 | | Receipt: | Event | Receipt#:2050251 Amt Paid:$5.00 Comment: Allocation Code Quantity Unit Amount 3142-Recording Fee 1 $5.00 $5.00 Tender Type:Indigent Tender Amt:$5.00 Receipt Date:12/01/2025 Register#:205 Cashier:EFilingUser EFiling #:236549212 |
| 9 | 12/01/2025 | | Receipt: | Event | Receipt#:2050134 Amt Paid:$401.00 Comment: Allocation Code Quantity Unit Amount 3100-Circuit Filing Fee 1 $401.00 $401.00 Tender Type:Indigent Tender Amt:$401.00 Receipt Date:12/01/2025 Register#:205 Cashier:EFilingUser EFiling #:236494968 |
| 11 | 11/30/2025 | | Motion: | Event | TO DETERMINE CONFIDENTIALITY OF COURT RECORDS |
| 7 | 11/25/2025 | | Certificate of Indigency / Insolvency | Event | |
| 6 | 11/25/2025 | | Copy of: | Event | Application for Determination of Civil Indigent Status |
| 5 | 11/25/2025 | | Lis Pendens | Event | |
| 4 | 11/25/2025 | | Affidavit of Indigency | Event | |
| 3 | 11/25/2025 | | Notice of Related Cases | Event | |
| 2 | 11/24/2025 | | Complaint | Event | |
| 1 | 11/24/2025 | | Civil Cover Sheet - Claim Amount | Event | |

Filing # 237879040 E-Filed 12/16/2025 05:56:10 PM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2025-023258-CA-01
SECTION: CA08
JUDGE: Robert T. Watson

**Evangelos Skevofilax**

Plaintiff(s)

vs.

**Dinner Key Marina et al**

Defendant(s)

_____/

## ORDER REQUIRING RESPONSE BY DEFENDANTS BY DECEMBER 23, 2025, TO EMERGENCY MOTION FOR INJUNCTIVE RELIEF

Docket Index Number: **12**
Or
Efiling Number: _____ Date Filed: **12/01/2025**
Full Name of Motion: **Emergency Motion for Injunctive and Declaratory Relief**

Each Defendant shall file a Response to the Motion no later than December 23, 2025. Promptly after filing, a copy must be emailed to: rwatson@jud11.flcourts.org.

After reviewing the Response(s), the Court will determine the need for a hearing and, if one is needed, coordinate same with the parties.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 16th day of December, 2025.

2025-023258-CA-01 12-16-2025 5:55 PM
Hon. Robert T. Watson

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**

- Evangelos Skevofilax: skev.evan@gmail.com
- Evangelos Skevofilax: evantech@gmail.com
- Evangelos Skevofilax: skev.evan@gmail.com
- George K Wysong III: gwysong@miamigov.com
- George K Wysong III: martagomez@miamigov.com
- City of Miami Office of the City Attorney: law@miamigov.com
- United American Lien and Recovery: unitamer@bellsouth.net
- UAL and Recovery: Karen@unitedamericanlien.net
- Marguerite Clare Racher Snyder: MSnyder@miamigov.com
- Marguerite Clare Racher Snyder: ereinike-heinemann@miamigov.com
- Marguerite Clare Racher Snyder: mdelgadillo@miamigov.com

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2025-023258-CA-01
SECTION: CA08
JUDGE: Robert T. Watson

**Evangelos Skevofilax**

Plaintiff(s)

vs.

**Dinner Key Marina et al**

Defendant(s)

_____/

## CORRECTED* ORDER DENYING EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

*Docket index number and date filed corrected.

Docket Index Number: **24**
Or
Efiling Number: _____ Date Filed: **12/15/2025**
Full Name of Motion: **Emergency Motion for Temporary Restraining Order Ex Parte**

The Court construes the Motion as one for a temporary injunction under Florida Rule of Civil Procedure 1.610, including because the Motion itself refers to that rule. See Mot. at 4 ¶ 14.

Though titled "Ex Parte," the Motion seeks, in part, "an order compelling defendant to show cause." It therefore contemplates notice to the defendant.

The Third District Court of Appeal long ago instructed that "the issuance of a temporary injunction is an extraordinary and drastic remedy which should be granted sparingly and with caution only after the moving party has proven sufficient facts entitling it to relief." Jennings v. Perrine Fish Mkt., Inc., 360 So. 2d 434, 435 (Fla. 3d DCA 1978). "In view of the particular facts presented in each case, the determination to grant or deny an application for temporary injunction rests within the sound discretion of the [judge] guided by established rules of the principles of equity jurisdiction." Id. (citing Muss v. City of Miami Beach, 312 So. 2d 553 (Fla. 3d DCA 1975)).

In order to obtain a temporary injunction, the Movants must satisfy a five-part test, showing: "'(1) the substantial likelihood of success on the merits, (2) the likelihood of irreparable harm, (3) the unavailability of an adequate remedy at law, (4) the threatened injury [absent the temporary Case No: 2025-023258-CA-01 Page 1 of 3 injunction] outweighs the possible harm [of entering the temporary injunction], and (5) the issuance of the temporary injunction will not disserve the public interest. If the party seeking the temporary injunction fails to establish any of these requirements,

the party's motion for temporary injunction must be denied.'" *Un Monde Nouveau, Inc. v. Young Men's Christian Assoc. of South Florida, Inc.*, 365 So. 3d 461, 462 (Fla. 3d DCA 2023) (quoting *VME Group Int'l, LLC v. Grand Condo. Ass'n, Inc.*, 305 So. 3d 30, 31 (Fla. 3d DCA 2019)). "The establishment of a clear legal right to the relief requested is an essential requirement prior to the issuance of a temporary injunction." *City of Jacksonville v. Naegele Outdoor Advert. Co.*, 634 So. 2d 750, 753 (Fla. 1st DCA 1994).

The Court finds that the Movant has not met his burden. The Motion cites no legal authority for its argument. It fails to establish that the Movant is substantially likely to succeed on the merits of his claims and that Movant has no adequate remedy at law if he does succeed on one or more of his claims.

Because the party seeking the temporary injunction has failed to establish one (or more) of the requirements, its motion for temporary injunction must be denied. *Un Monde Nouveau*, 365 So. 3d at 462.

Therefore, the Motion is DENIED.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>16th day of December, 2025</u>.

<u>2025-023258-CA-01 12-16-2025 5:47 PM</u>
2025-023258-CA-01 12-16-2025 5:47 PM
Hon. Robert T. Watson

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**

- Evangelos Skevofilax: skev.evan@gmail.com
- Evangelos Skevofilax: evantech@gmail.com
- Evangelos Skevofilax: skev.evan@gmail.com
- George K Wysong III: gwysong@miamigov.com
- George K Wysong III: martagomez@miamigov.com
- City of Miami Office of the City Attorney: law@miamigov.com
- United American Lien and Recovery: unitamer@bellsouth.net
- UAL and Recovery: Karen@unitedamericanlien.net
- Marguerite Clare Racher Snyder: MSnyder@miamigov.com
- Marguerite Clare Racher Snyder: ereinike-heinemann@miamigov.com
- Marguerite Clare Racher Snyder: mdelgadillo@miamigov.com

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: <u>2025-023258-CA-01</u>
SECTION: <u>CA08</u>
JUDGE: <u>Robert T. Watson</u>

**Evangelos Skevofilax**

Plaintiff(s)

vs.

**Dinner Key Marina et al**

Defendant(s)

_____/

<u>**ORDER DENYING EMERGENCY MOTION FOR TEMPORARY RESTRAINING
ORDER**</u>

Docket Index Number: **12**
Or
Efiling Number: _____ Date Filed: **12/01/2025**
Full Name of Motion: **Emergency Motion for Temporary Restraining Order Ex Parte**

The Motion was filed on December 1, 2025, but placed in the emergency motion queue only
yesterday, December 15, 2025.

The Court construes the Motion as one for a temporary injunction under Florida Rule of Civil
Procedure 1.610, including because the Motion itself refers to that rule. *See* Mot. at 4

¶ 14. Though titled "Ex Parte," the Motion seeks, in part, "an order compelling defendant to show
cause." It therefore contemplates notice to the defendant.

The Third District Court of Appeal long ago instructed that "the issuance of a temporary injunction
is an extraordinary and drastic remedy which should be granted sparingly and with caution only
after the moving party has proven sufficient facts entitling it to relief." *Jennings v. Perrine Fish
Mkt., Inc.*, 360 So. 2d 434, 435 (Fla. 3d DCA 1978). "In view of the particular facts presented in
each case, the determination to grant or deny an application for temporary injunction rests within
the sound discretion of the [judge] guided by established rules of the principles of equity
jurisdiction." *Id*. (citing *Muss v. City of Miami Beach*, 312 So. 2d 553 (Fla. 3d DCA 1975)).

In order to obtain a temporary injunction, the Movants must satisfy a five-part test, showing: "'(1)
the substantial likelihood of success on the merits, (2) the likelihood of irreparable harm, (3) the
unavailability of an adequate remedy at law, (4) the threatened injury [absent the temporary

injunction] outweighs the possible harm [of entering the temporary injunction], and (5) the issuance of the temporary injunction will not disserve the public interest. If the party seeking the temporary injunction fails to establish any of these requirements, the party's motion for temporary injunction must be denied.'" *Un Monde Nouveau, Inc. v. Young Men's Christian Assoc. of South Florida, Inc.*, 365 So. 3d 461, 462 (Fla. 3d DCA 2023) (quoting *VME Group Int'l, LLC v. Grand Condo. Ass'n, Inc.*, 305 So. 3d 30, 31 (Fla. 3d DCA 2019)).

"The establishment of a clear legal right to the relief requested is an essential requirement prior to the issuance of a temporary injunction." *City of Jacksonville v. Naegele Outdoor Advert. Co.*, 634 So. 2d 750, 753 (Fla. 1st DCA 1994).

The Court finds that the Movant has not met his burden. The Motion cites no legal authority for its argument. It fails to establish that the Movant is substantially likely to succeed on the merits of his claims and that Movant has no adequate remedy at law if he does succeed on one or more of his claims.

Because the party seeking the temporary injunction has failed to establish one (or more) of the requirements, its motion for temporary injunction must be denied. *Un Monde Nouveau,* 365 So. 3d at 462.

Therefore, the Motion is DENIED.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 16<u>th</u> day of <u>December, 2025</u>.

2025-023258-CA-01 12-16-2025 5:42 PM

<u>2025-023258-CA-01 12-16-2025 5:42 PM</u>
Hon. Robert T. Watson

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**

- Evangelos Skevofilax: skev.evan@gmail.com
- Evangelos Skevofilax: evantech@gmail.com
- Evangelos Skevofilax: skev.evan@gmail.com
- George K Wysong III: gwysong@miamigov.com
- George K Wysong III: martagomez@miamigov.com
- City of Miami Office of the City Attorney: law@miamigov.com
- United American Lien and Recovery: unitamer@bellsouth.net
- UAL and Recovery: Karen@unitedamericanlien.net
- Marguerite Clare Racher Snyder: MSnyder@miamigov.com
- Marguerite Clare Racher Snyder: ereinike-heinemann@miamigov.com
- Marguerite Clare Racher Snyder: mdelgadillo@miamigov.com

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: <u>2025-023258-CA-01</u>

SECTION: <u>CA-08</u>

JUDGE: ROBERT T WATSON

**EVANGELOS SKEVOFILAX,**

    Plaintiff,

**vs.**

**CITY OF MIAMI,**

**UNITED AMERICAN LIEN AND RECOVERY,**

    Defendants.

_____/

**<u>EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER</u>**

**<u>EX PARTE</u>**

Plaintiff Evangelos Skevofilax moves this honorable Court for a temporary restraining order preventing Defendant from acquiring title, selling, or otherwise interfering with Plaintiff's vessel ("Noula").

This emergency arises from Defendant's unlawful seizure, prolonged possession, and nonjudicial sale of Plaintiff's yacht ("Noula") and the impound and destruction of Plaintiff's yacht tender ("Tender"); direct and proximate retaliatory actions taken in breach of contract, and in violation of City of Miami Code, Florida statute, and constitutionally protected interests.

1. Noula has served as Plaintiff's domicile since arriving at Dinner Key Marina ("DKM") in 2023. Prior to seizure, Noula was located on Mooring Ball 56, in the DKM Mooring Field ("DKMF"), approximately one and one-half miles offshore. Prior to being discarded, Tender was his sole method of conveyance between shore and Noula.

2. Defendant's seizure of Tender and Noula caused, and continue to cause, irreparable harm to Plaintiff, forcing him into homelessness and depriving him of his lawful home and his constitutionally protected speech interests, property interests and due process interests.

3. The effects of being homeless quickly manifested themselves on Plaintiff's physical and mental health, affecting every aspect of his personal and professional life since August 21, 2025.

4. As a result of the extreme emotional distress caused by the unlawful seizure of his property and home, Plaintiff sought and receives ongoing treatment from his physician and from a mental health professional.

5. Plaintiff will be permanently and irreparably harmed if the City is permitted to continue the prolonged, unlawful possession of his property.

Verified Motion

6.      Plaintiff will be permanently and irreparably harmed if this Court permits the City to complete the November 21, 2025, nonjudicial sale of Noula, as she is his home.

7.      The City is not harmed by the granting of this motion, as it has no legal or contractual basis for its actions or for its persistence in denying Plaintiff's property and due process rights.

8.      This Court rights a wrong by granting each of Plaintiff's requests for relief, allowing him to continue his pursuit of justice from the comfort of his home.

9.      Granting Plaintiff's request for Slip 44 at Pier 7 at Defendant's expense is unusual but warranted, considering the City's unlawful impoundment, failure to notify law enforcement, and destruction of Plaintiff's Tender.

10.     There is public interest in upholding the sanctity of Plaintiff's contract with the City. Granting Plaintiff's motion clearly indicates to the City that it must take affirmative action to cure its history of denying the rights of DKM clientele.  Granting this motion indicates this Court values the rights of citizens, regardless of their socioeconomic status.

11.     There is public interest in Plaintiff's challenge of Fla. Stat. § 328.17, based on its lack of specificity and on its lack of provision for constitutionally guaranteed due process.

12.     A temporary restraining order is appropriate in that:

        a.  Plaintiff is likely to succeed on the merits of his claim;

        b.  The seizures and the termination are clear violations of contract, ordinance, and Plaintiff's protected speech interests, property interests, and due process interests.

Verified Motion

3

    c.  The City has no legal or contractual justification for possession of Plaintiff's property or for the non-judicial sale or title reassignment of Noula;

    d.  There is no genuine dispute as to law or fact in Plaintiff's breach of contract claims and he is likely to be entitled to judgment as a matter of law; and

    e.  There is no genuine dispute as to law or fact in Plaintiff's violation of ordinance claims and he is likely to be entitled to judgment as a matter of law.

13.    Damages are appropriate in that the Defendants disregarded the law, seized Plaintiff's Tender without a legal basis, and then tossed it into the dumpsters, failing to notify law enforcement or the lawful owner.

14.    It is appropriate to waive the bond requirements of Florida Rules of Civil Procedure 1.610 (b) due to Plaintiff's inability to pay and due to the clear law and fact in this case.

15.    There is no other adequate administrative post-deprivation remedy available to Plaintiff.

16.    Defendants have a history of depriving Plaintiff of his constitutionally protected liberties and interests, as detailed in complaint.

Plaintiff requests relief in the form of:

    a.  an order compelling defendant to show cause;

    b.  a temporary restraining order preventing defendants from any further interference with plaintiff's property; and

    c.  an order compelling defendant to allow plaintiff to retrieve personal belongings from Noula.

Verified Motion

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 15th day of December 2025.

Respectfully submitted,

Evangelos Skevofilax, pro se

3400 Pan American Dr

Miami FL 33133

Telephone: 305-339-2568

skev.evan@gmail.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been furnished to the individuals on the Service List by email generated by My Florida Courts E-Filing Portal this 15th day of December 2025.

Evangelos Skevofilax

Plaintiff pro se

Verified Motion

## **SERVICE LIST**

Marguerite C. Snyder

Assistant City Attorney

444 S.W. 2nd Avenue, Suite 945

Miami, FL 33130-1910

Tel.: (305) 416-1800

Fax: (305) 400-5071

Email: MSnyder@miamigov.com

Email: EReinikeheinemann@miamigov.com

Email: MDelgadillo@miamigov.com

United American Lien and Recovery

PO Box 5823

Fort Lauderdale, Florida 33310

Karen@unitedamericanlien.net

unitamer@bellsouth.net

Verified Motion



# Miami-Dade Sheriff's Office

## Court Services Bureau

**Rosie Cordero-Stutz**
*Sheriff*

| | |
|---|---|
| EVANGELOS SKEVOFILAX (et al.) vs. CITY OF MIAMI CLERK OF COURT (et al.) | **Case Number**<br>2025-023258-CA-01 |

## RETURN OF SERVICE

### SUMMONS - CIVIL

| 12/9/25  12:36 pm | Served - Corporate Service | SERVED (SVRT) | CITY OF MIAMI CLERK OF COURT |
|---|---|---|---|

12/08/2025      Came this day into hand of the Sheriff

12/09/2025      12:36 PM - SERVED THE SUMMONS UPON CITY OF MIAMI CLERK OF COURT AT 3500 PAN
AMERICAN DR, MIAMI, FL 33133 BY DELIVERING A COPY TO JOSE ALVAREZ- BUSINESS AGENT, IN
ACCORDANCE WITH F.S. 48.081 AND F.S. 48.091. SERVICE AFFECTED BY: CSS1 MAGALLY
MONTENEGRO #4747, DEPUTY SHERIFF OF MIAMI-DADE COUNTY, FL.\N\N

MAGALLY MONTENEGRO, CSS1, #4747

**EVANGELOS SKEVOFILAX**
**3400 PAN AMERICAN DR**
**MIAMI, FL 33133**

Filing # 236494968 E-Filed 11/25/2025 08:13:25 AM

IN THE CIRCUIT/COUNTY COURT OF THE __11TH__ JUDICIAL CIRCUIT
IN AND FOR __MIAMI-DADE__ COUNTY, FLORIDA

EVANGELOS SKEVOFILAX

CASE NO. 2025-023258-CA-01

Plaintiff/Petitioner or in the interest of

CITY OF MIAMI et al   vs.

Defendant/Respondent

## APPLICATION FOR DETERMINATION OF CIVIL INDIGENT STATUS

**Notice to Applicant:** If you qualify for civil indigence, the filing and summons fees are waived; other costs and fees are not waived.

1. I have __0__ dependents. (Include only those persons you list on your U.S. income tax return.)
   Are you Married?...Yes NO   Does your Spouse Work?...Yes NO   Annual Spouse Income? $ NA

2. I have a net income of $ __2000__ paid ( ) weekly ( ) every two weeks ( ) semi-monthly ✓ monthly ( ) yearly ( ) other __NA__ .
(Net income is your total income including salary, wages, bonuses, commissions, allowances, overtime, tips and similar payments, minus deductions required by law and other court-ordered payments such as child support.)

3. I have other income paid ( ) weekly ( ) every two weeks ( ) semi-monthly ( ) monthly ( ) yearly ( ) other __NA__ .
(Circle "Yes" and fill in the amount if you have this kind of income, otherwise circle "No")

| | | | | |
|---|---|---|---|---|
| Second Job ....................................... Yes $ | No | Veterans' benefits...................................... Yes $ | No |
| Social Security benefits | | Workers compensation ............................. Yes $ | No |
| For you........................................... Yes $ | No | Income from absent family members ....... Yes $ | No |
| For child(ren) ............................... Yes $ | No | Stocks/bonds............................................ Yes $ | No |
| Unemployment compensation.......... Yes $ | No | Rental income........................................... Yes $ | No |
| Union payments ............................. Yes $ | No | Dividends or interest................................ Yes $ | No |
| Retirement/pensions ..................... Yes $ | No | Other kinds of income not on the list ........ Yes $ | No |
| Trusts .............................................. Yes $ | No | Gifts ......................................................... Yes $ | No |

I understand that I will be required to make payments for costs to the clerk in accordance with §57.082(5), Florida Statutes, as provided by law, although I may agree to pay more if I choose to do so.

4. I have other assets: (Circle "yes" and fill in the value of the property, otherwise circle "No")

| | | | | |
|---|---|---|---|---|
| Cash ............................................ Yes $ 33 | No | Savings account............................................Yes $ 0 | No |
| Bank account(s) ............................. Yes $ 166 | No | Stocks/bonds.................................................Yes $ 0 | No |
| Certificates of deposit or | | Homestead Real Property* ...............................Yes $ 0 | No |
| Money market accounts .................. Yes $ 0 | No | Motor Vehicle*...............................................Yes $ 0 | No |
| Boats* ........................................... Yes $ 4500 | No | Non-homestead real property/real estate* ....... Yes $ 0 | No |

Boat was seized and sold but still titled in my name Other assets* .......................................Yes $ 0 No

Check one: I ( ) DO ✓ DO NOT expect to receive more assets in the near future. The asset is NA

5. I have total liabilities and debts of $ __65045__ as follows: Motor Vehicle $ 0 , Home $ 0 , Boat
$ 0 , Non-homestead Real Property $ 0 , Child Support paid direct $ 0 , Credit Cards $ 2500 ,
Medical Bills $ 1400 , Cost of medicines (monthly) $ 55 , Other $ 61045 .

6. I have a private lawyer in this case..........___Yes   ✓ No

A person who knowingly provides false information to the clerk or the court in seeking a determination of indigent status under s. 57.082, F.S. commits a misdemeanor of the first degree, punishable as provided in s.775.082, F.S. or s. 775.083, F.S. I attest that the information I have provided on this application is true and accurate to the best of my knowledge.

Signed on __NOVEMBER 24__ , 20 25 .

| | |
|---|---|
| __1970__ __8000__ | Signature of Applicant for Indigent Status |
| Year of Birth   Last 4 digits of Driver License or ID Number | Print Full Legal Name EVANGELOS SKEVOFILAX |
| Email address: skev.evan@gmail.com | Phone Number/s: 305-339-2568 |

__3400 Pan American Drive, Miami, FL 33133__
Address: Street, City, State, Zip Code

This form was completed with the assistance of: _____
Clerk/Deputy Clerk/Other authorized person.

---

**CLERK'S DETERMINATION**

Based on the information in this Application, I have determined the applicant to be (✓) Indigent ( ) Not Indigent, according to s. 57.082, F.S.

Dated on ___NOV 2 5 2025___ ,20___.

Clerk of the Circuit Court
By _____ Deputy Clerk

APPLICANTS FOUND NOT TO BE INDIGENT MAY SEEK REVIEW BY A JUDGE BY ASKING FOR A HEARING TIME. THERE IS NO FEE FOR THIS REVIEW.
Sign here if you want the judge to review the clerk's decision _____

Filing # 236939880 E-Filed 12/03/2025 02:21:20 PM

☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.
☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION | | CASE NUMBER |
|---|---|---|
| ☒ CIVIL<br>☐ DISTRICTS<br>☐ OTHER | **SUMMONS 20 DAY CORPORATE SERVICE**<br>**(a) GENERAL FORMS** | 2025-023-258-CA-01 |
| **PLAINTIFF(S)**<br>EVANGELOS SKEVOFILAX | **VS.  DEFENDANT(S)**<br>**CITY OF MIAMI** | **SERVICE** |

**SERVED**

DATE /2-5-25
TIME /25301?
BY _____
BADGE # _____
MIAMI-DADE POLICE DEPARTMENT
OFFICE OF THE
METROPOLITAN SHERIFF
COURT SERVICES BUREAU
MIAMI-DADE COUNTY, FLORIDA

CLOCK IN

THE STATE OF FLORIDA:

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on
defendant(s): CITY OF MIAMI CLERK OF COURT

3500 PAN AMERICAN DR

MIAMI FL 33133

Each defendant is required to serve written defense to the complaint or petition on
Plaintiff's Attorney: EVANGELOS SKEVOFILAX, pro se

whose address is: 3400 PAN AMERICAN DR MIAMI FL 33133

within 20 days * **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies,
or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days.
When suit is brought pursuant to 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons
on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before
service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for
the relief demanded in the complaint or petition.

| JUAN FERNANDEZ-BARQUIN<br>CLERK OF THE COURT AND COMPTROLLER<br>MIAMI-DADE COUNTY<br>CIRCUIT AND COUNTY COURTS | BY: _____<br>wasdto<br>DEPUTY CLERK | DATE<br>12/5/2025 |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to
participate in this proceeding, you are entitled, at no cost to you, to the provision of certain
assistance. Please contact Alican Simpkins, the Eleventh Judicial Circuit Court's ADA
Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400,
Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email
ADA@jud11.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your
scheduled court appearance, or immediately upon receiving this notification if the time
before the scheduled appearance is less than seven (7) days; if you are hearing or voice
impaired, call 711."**

CLK/CT. 314 Rev. 06/23                                                                                   Clerk's web address: www.miamidadeclerk.gov

Filing # 236939880 E-Filed 12/03/2025 02:21:20 PM

| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |
| ☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |

| DIVISION<br>☒ CIVIL<br>☐ DISTRICTS<br>☐ OTHER | SUMMONS 20 DAY CORPORATE SERVICE<br>(a) GENERAL FORMS | CASE NUMBER<br>2025-023-258-CA-01 |
|---|---|---|
| PLAINTIFF(S)<br>EVANGELOS SKEVOFILAX | VS.  DEFENDANT(S)<br><br>**UNITED AMERICAN LIEN<br>AND RECOVERY** | SERVICE |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on

defendant(s): "KAREN" or VICKI HURD

3411 NW 9TH AVENUE, SUITE 707

FORT LAUDERDALE FL 33309

CLOCK IN

Each defendant is required to serve written defense to the complaint or petition on
Plaintiff's Attorney: EVANGELOS SKEVOFILAX, pro se

whose address is: 3400 PAN AMERICAN DR MIAMI FL 33133

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| JUAN FERNANDEZ-BARQUIN<br>CLERK OF THE COURT AND COMPTROLLER<br>MIAMI-DADE COUNTY<br>CIRCUIT AND COUNTY COURTS | BY:_____<br>DEPUTY CLERK | DATE |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@jud11.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

Filing # 236939880 E-Filed 12/03/2025 02:21:20 PM

| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |
| ☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |

| DIVISION | SUMMONS 20 DAY CORPORATE SERVICE | CASE NUMBER |
|---|---|---|
| ☒ CIVIL | (a) GENERAL FORMS | 2025-023-258-CA-01 |
| ☐ DISTRICTS | | |
| ☐ OTHER | | |

| PLAINTIFF(S) | VS.  DEFENDANT(S) | SERVICE |
|---|---|---|
| EVANGELOS SKEVOFILAX | CITY OF MIAMI | |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s): CITY OF MIAMI CLERK OF COURT

3500 PAN AMERICAN DR

MIAMI FL 33133

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney: EVANGELOS SKEVOFILAX, pro se

whose address is: 3400 PAN AMERICAN DR MIAMI FL 33133

**CLOCK IN**

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| JUAN FERNANDEZ-BARQUIN<br>CLERK OF THE COURT AND COMPTROLLER<br>MIAMI-DADE COUNTY<br>CIRCUIT AND COUNTY COURTS | BY:_____<br>DEPUTY CLERK | DATE |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@jud11.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL**

**CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO**:** 2025-023258-CA-01

SECTION: CA-08

JUDGE: Robert T. Watson

**Evangelos Skevofilax,**

      Plaintiff, pro se

vs.

**The City of Miami,**

**United American Lien And Recovery,**

      Defendants.

_____/

**<ins>FIRST AMENDED COMPLAINT</ins>**

## INTRODUCTION

1.        The City of Miami ("City"), via the acts of final policymakers and their staff, created, implemented, and executed a policy of harassment, intimidation, and coercion, culminating in the unconscionable: a series of ongoing, direct and proximate adverse actions that constitute violations of code and statute, and deprive Plaintiff of his constitutionally protected liberties and interests.

2.        The City impounded Plaintiff's yacht tender ("Tender"), his sole conveyance between shore and domicile, terminated Plaintiff's Moorage Agreement ("Contract"), expelled him from Dinner Key Marina ("DKM"), and impounded the sailing yacht that serves as his domicile ("Noula").

3.        The City's thirst for revenue was partial motivation for adverse action against Plaintiff; aggressive collections actions, the imposition of thousands of dollars in fines that serve no remedial purpose, and the levy of late fees disguised as "finance charges" that constitute a material breach of contract, as described herein.

4.        In its zeal to generate revenue, the City assessed more than $30,000.00 in fines disguised as "storage fees," preventing Plaintiff from reclaiming Tender, and depriving him of his most valued possessions: his home and his property, along with the liberty interests, protected speech interests, property interests, and due process interests granted by the Constitution of the State of Florida and the Constitution of the United States.

5.        To quench their thirst for plenary power, Defendants disregard law and constitution, create policy on a whim and apply it retroactively, and in this case, seized Plaintiff's property and home without legal or contractual basis, acts that shock the conscience.

6.        The City's imposition of "storage fees" prevented Plaintiff from reclaiming his lawful property. The prolonged, unlawful possession of Noula has so diminished her value as to rise to the level of a taking and Tender was removed from the water and relegated to the dumpster area, in violation of code, statute, and, again, Plaintiff's constitutionally protected liberties and interests.

7.        The subsequent filing of a lien based on fictional "storage fees," and the falsification of said lien by the third-party towing and storage company contracted by the City, United American Lien and Towing ("UAL"), led to Plaintiff's home being sold at auction on November 21, 2025.

**Verified Complaint**

8.      As of the date of this complaint, the City's final policymakers have been unable to provide legal or contractual bases for their actions. In response to a request for clarification from District Two Commissioner Damian Pardo's office, Guillermo Quinones ("Quinones"), the Manager of all City marina properties, was unable to cite law or contract as bases for his actions, as described in his own words herein.

9.      At the time the City commenced its campaign of retaliation against Plaintiff, Tender was lawfully docked; neither a safety hazard nor a navigation hazard, its statutorily required registration not disputed by the City. Tender was therefore not subject to punitive action by any authority.

10.     On the day the City seized her, Noula was lawfully moored; neither a safety hazard nor a navigation hazard; not abandoned; causing no harm to the environment; her statutorily required registration sticker displayed in plain view on her bow and her contractually required insurance valid without interruption since arrival at DKM two years prior.

11.     In their own words, DKM management and staff describe Plaintiff as a "liveaboard" DKM customer. Defendants are and were aware that Noula was Plaintiff's home. Defendants are and were aware that Tender was Plaintiff's sole method of conveyance from shore to his home. The acts of the City's final policymakers described herein are unconscionable.

## Parties

12.     Plaintiff Evangelos Skevofilax, of 3400 Pan American Drive, a ten-year resident of Miami-Dade County and two-year resident of Dinner Key Marina, is a DKM Mooring Facility ("DKMF") licensee and the lawful owner of the vessels described herein.

13.     Defendant City of Miami is a political subdivision of the State of Florida, therefore subject to this court's jurisdiction. The City is a government entity subject to suit under 42 U.S.C. § 1983. On all occasions relevant to the factual allegations contained in this complaint, the City owned, operated, staffed, and managed DKM and had the responsibility of ensuring legal compliance and implementation of procedures, practices, and customs at DKM and across all City marinas.

14.     Defendant United American Lien and Recovery ("UAL") is a towing and storage company located at POB 5823, Fort Lauderdale, Florida, 33310, according to their website.

**Verified Complaint**

## VENUE, JURISDICTION, AND LAW

15.     This is an action for damages of more than $50,000.00, exclusive of attorney's fees, costs and interest, and a civil rights claim pursuant to 42 U.S.C. § 1983.

16.     Pursuant to Fla. Stat. § 47.011, venue for this action lies properly in the Eleventh Judicial Circuit as the parties are located within, and the causes of action accrued and continue to accrue within Miami-Dade County.

17.     Each of the 42 U.S.C. § 1983 actions set forth in this complaint was taken pursuant to either a City custom, policy, or practice, or to a decision made or an action taken by an official or employee of the City with final policymaking authority.

## BACKGROUND

18.     Plaintiff is a two-year resident of DKM. Noula is a sailing vessel equipped with full living accommodations, including a galley. Tender is an  inflatable vessel satisfying "vessel equipment requirements" of City of Miami, Florida, Municipal Code § 50-423.

19.     Plaintiff arrived at DKM in November 2023 and commenced preparations for a May 2024 research expedition to the Dodecanese Islands. From November 5, 2023, until October 1, 2024, Noula occupied Slip 44 on Pier 7.

20.     On July 7, 2024, Plaintiff suffered a leg injury and underwent surgery the following month. The implications to Plaintiff's health and finances were significant, leading Plaintiff to cancel his voyage and resume preparations for professional school.

21.     During his recovery from injury and surgery, Plaintiff accrued a past-due balance of $3,418.73, equal to two months of slip fees plus "finance charges." Negotiations for payment of the past-due balance were held, leading Defendants to agree to the creation of a payment plan that included "arrest" of Noula by "chaining" her to the dock with a bicycle lock. Impoundment was neither suggested nor discussed by the City's Marinas Manager at the time.

22.     On October 2, 2024, Plaintiff departed Slip 44 and relocated Noula to  Mooring Ball 56 ("MB56") in the DKMF, approximately one and one-half nautical miles offshore. On this day, Tender became Plaintiff's sole method of conveyance between shore and Noula.

23.     Plaintiff pays $424.79 monthly as consideration for the right to moor Noula at MB56, one unassigned parking space on DKM property, the legal right to dock Tender at the DKM dinghy dock, and the option to use the mooring field charter (Shuttle) for travel between shore and DKMF.

**Verified Complaint**

24.     The following amenities are available to DKM customers: a public bathroom, public Wi-Fi, and access to a coin-operated laundry facility and a small, sparsely furnished community lounge.

25.     The Shuttle is piloted by DKM employees during the four-mile round trip between shore and mooring field, four times daily, beginning at 9:00 a.m. with a final charter at 4:00 p.m.

26.     Between 4:00 p.m. and 9:00 a.m., vessel owners are responsible for their own transport between shore and mooring field.

27.     It is unclear whether the Shuttle complies with statutory requirements for vessel registration. It is unclear whether Shuttle is compliant with the Code of Federal Regulations (CFR).

28.     For the reasons stated in Paragraph 28, Plaintiff abides by United States Coast Guard ("USCG") recommendation to refrain from boarding passenger vessels that are noncompliant with the CFR.

29.     Plaintiff has no history of violating policy or law during his two-year residency at DKM.

30.     Plaintiff's marina account balance was $0.00 on July 31, 2025, his $424.79 monthly payment was late on August 2, 2025, and his monthly payment was delinquent on August 11, 2025. A "finance charge" was assessed, as it has been for delinquent payments since Plaintiffs arrival at DKM in November 2003.

31.     The City is legally and contractually obligated to follow a specific timeline and clear procedure in the event a moorage fee becomes delinquent.

**FACTUAL ALLEGATIONS**

32.     On August 20, 2025, at approximately 2:00 p.m., Pablo Pino ("Pino"), a City employee and DKM Supervisor, stopped Plaintiff from exiting the DKM office and attempted to coerce Plaintiff into paying the monthly moorage fee. Upon hearing Plaintiff assert his statutory right to privacy and to freedom from harassment related to his debt to the City, Pino became irate. Pino gestured and yelled loudly to City employee Hyron Figueredo ("Figueredo") to revoke Plaintiff's parking pass, and "access to amenities." Plaintiff was able to depart without further incident. This marked the commencement of the City's adverse action against Plaintiff.

**Verified Complaint**

33.     On August 21, 2025, at 8:00 a.m., at the DKM dinghy dock, Thomas Nesbitt ("Nesbitt"), a City employee and DKM Supervisor, attempted to coerce Plaintiff regarding the monthly moorage fee. Plaintiff again asserted his right to privacy and freedom from harassment and Nesbitt responded, "Well I don't see anyone around." Nesbitt ordered Plaintiff to remove Tender from the DKM dinghy dock, stating "access to amenities" had been revoked. Plaintiff requested to remove Tender upon his return from work and Nesbitt agreed to allow Tender to remain at dock until 5:30 p.m. Plaintiff departed with the reasonable expectation that Tender would be there when he returned from work.

34.     On August 21, 2025, at 1:00 p.m., Pino notified Plaintiff via email of the impound of Tender, preventing Plaintiff from reaching home from shore. Pino further stated the City would not be renewing Plaintiff's Contract and ordered him to depart DKM by August 31, 2025. Quinones, Nesbitt, and Alex Bustamante ("Bustamante") were copied on this and future emails.

35.     On August 25, 2025, Nesbitt stated to Plaintiff, "we were just gonna [sic] have you come and pay and release it," indicating the seizure of Tender was also intended to coerce Plaintiff.

36.     On August 29, 2025, Figueredo and an unknown DKM office staff member refused Plaintiff access to Tender during a week of heavy rain, thereby allowing Tender to fill with water.

37.     On September 3, 2025, DKM impounded Noula and subsequently filed a nonjudicial sale lien, in violation of contract, code, and Florida and federal constitution.

38.     Over the next two months, Plaintiff contacted District Two Commissioner Damian Pardo's office, the City Manager's office, Director of the Department of Real Estate, Andrew Frey, Nesbitt, and Quinones, attempting to assert his lawful and civil rights.

39.     When contacted via email by District Two Commissioner Pardo's office, Quinones was unable to articulate a legal or contractual basis for the impound and sale of Noula and the impound and destruction of Tender.

40.     Quinones bases for property seizure, excessive fines, termination of contract, and destruction of Plaintiff's property was limited to claiming Tender was seized because Noula's statutorily required yacht registration had expired. Quinones further revealed he had created policy post-seizure and applied it to Plaintiff retroactively, claiming Plaintiff's driver license was

**Verified Complaint**

expired and that Plaintiff was expelled from DKM due to "late payments," citing five payments, two of which were not delinquent, and none of which constituted a breach of contract.

41.　　On or about October 31, 2025, the City removed Tender from the water, discarded Plaintiff's personal belongings, removed the motor, and discarded belongings and Tender in the dumpster corral.

42.　　The City neglected to notify law enforcement of Tender's impound or destruction and neglected to notify Plaintiff of Tender's destruction.

43.　　In its zeal to generate revenue, the City imposed over $30,000.00 in fines for vessels unlawfully impounded. On the day the City commenced the imposition of fines, Plaintiff was not in breach of Contract.

44.　　The fines serve no remedial purpose but prevented Plaintiff from paying his marina fees and claiming his property in August 2025.

45.　　On September 4, 2025, Nesbitt informed Plaintiff via email of the filing of a nonjudicial sale lien on Noula. According to Vicki Hurd ("Hurd") of UAL, the sale of Noula was completed on November 21, 2025.

46.　　The seizures, Contract termination, and destruction of Tender  constitute material breaches of contract, violations of Florida statute and Miami municipal code, and deprive Plaintiff of his constitutionally protected liberties, speech interests, property interests, and due process interests.

47.　　Plaintiff's vessel registration and insurance have been valid without interruption since August 2023. Relevance notwithstanding, Plaintiff's driver license expired two weeks after major surgery in August 2024, and was not renewed for several months, as Plaintiff was physically unable to operate a motor vehicle.

48.　　An expired driver license is a curious response to a request for a legal basis for seizures.

49.　　Nesbitt and Figueredo denied access to Tender and Noula on five separate occasions, breaching Defendants' duty of care and allowing Plaintiff's property to become partially submerged from heavy rain.

50.　　UAL supplied a lien notice that did not meet statutory requirements. The notice was unreadable, printed in 8pt font and failing to provide the itemization required by statute.

**Verified Complaint**

51.     The lien notice sent via USPS Certified Mail was dated September 15, 2025. The "Date Notices Sent" was recorded as September 11, 2025.

52.     The City has a history of depriving Plaintiff of his constitutionally protected liberties, property interests, and due process interests, Quinones and Pino having denied Plaintiff access to his vessel in September 2024 without legal or contractual basis.

## CAUSES OF ACTION
### COUNT I

### BREACH OF CONTRACT

53.     Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

54.     As described in paragraph 33, Nesbitt ordered Plaintiff to remove Tender from the DKM dinghy dock. Plaintiff requested and Nesbitt agreed to allow Tender to remain at the dinghy dock until 5:30 p.m. The City breached contract when it impounded Plaintiff's Tender at 1:00 p.m.

55.     The legality of the City's removal order notwithstanding, the seizure of Tender prior to the agreed-upon time of removal constitutes a material breach of contract.

56.     As a direct result of the City's breach of contract, Plaintiff was harmed.

Plaintiff requests judgment in his favor and against the City in the form of:

   a.   damages including, but not limited to, compensatory damages, consequential damages, tangible damages, intangible damages, and loss of use, inclusive of pre- and post-judgment interest;

   b.   an order compelling the City to rescind fines and return Plaintiff's personal belongings and outboard motor;

   c.   an injunction compelling the City's final policymakers to rescind longstanding policy of unlawful property seizures;

   d.   an injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his lawful rights; and

   e.   granting any other such relief as the Court deems just and proper.

**Verified Complaint**

## COUNT II

## BREACH OF CONTRACT

### Transient Moorage Agreement, Clause 5

57.     Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

58.     As described in paragraph 34, on August 21, 2025, Defendants notified Plaintiff via email of the termination of Contract and expulsion from marina. (Exhibit 1)

59.     The Notice Provision in Clause 5 of the Contract is clear regarding the City's obligation to provide prior written notice of termination. (Exhibit 4)

60.     The City's notice of termination via email is a failure to fulfill Clause 5 of the Contract and constitutes a material breach of contract.

61.     The City's failure to provide fifteen days prior notice of termination is a failure to fulfill the contractual obligations stipulated in Clause 5 and constitutes a material breach of contract.

62.     As a direct result of the City's breach of contract, Plaintiff was harmed.

Plaintiff requests judgment in his favor and against the City in the form of:

    a.   invalidation of Contract termination;

    b.   an injunction barring the City from expelling Plaintiff from any City-owned marina without legitimate cause;

    c.   damages including, but not limited to, compensatory damages, consequential damages, tangible damages, intangible damages, loss of use, and pre- and post-judgment interest;

    d.   an order compelling the City to rescind fines and return Plaintiff's personal belongings and outboard motor;

    e.   an injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his lawful rights; and

    f.   granting any other such relief as the Court deems just and proper.

9

**Verified Complaint**

## COUNT III

## BREACH OF CONTRACT

### Transient Moorage Agreement, Clause 6

63.     Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

64.     Clause 6 of Plaintiff's Contract states unambiguously, "OWNER agrees that in the event this Agreement is terminated […], OWNER will remove his/her vessel from the facility within five days of termination." (Exhibit 4)

65.     Plaintiff's Contract was terminated effective August 31, 2025.

66.     As described in paragraph 37, Defendants seized Noula on September 3, 2025. (Exhibit 2)

67.     Clause 6 of the Contract is clear regarding Plaintiff's contractual right to a five-day grace period for the removal of his vessel.

68.     The City's seizure of Noula is a failure to fulfill contractual obligations stipulated in Clause 6 of the Contract and constitutes a material breach of contract.

69.     As a direct result of the City's breach of contract, Plaintiff was harmed.

Plaintiff requests judgment in his favor and against the City in the form of:

    a.   invalidation of the lien filed against Noula;

    b.   invalidation of the nonjudicial sale of Noula;

    c.   damages including, but not limited to, compensatory damages, consequential damages, tangible damages, intangible damages, loss of use, and pre- and post-judgment interest;

    d.   an order compelling the City to rescind all fines;

    e.   an injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his lawful rights; and

    f.   granting any other such relief as the Court deems just and proper.

10

**Verified Complaint**

## COUNT IV

## BREACH OF CONTRACT

### Transient Moorage Agreement, Clause 7

70.     Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

71.     Clause Seven of Plaintiff's Contract states unambiguously, "IN THE EVENT OF NONPAYMENT OF MOORAGE FOR TWO (2) MONTHS, FACILITY IS AUTHORIZED TO SELL OWNER'S VESSEL AT [sic] A NONJUDICIAL SALE." (Exhibit 4)

72.     On September 4, 2025, as described in paragraph 45, the City contracted with UAL to place a lien for nonjudicial sale on Noula. (Exhibit 7)

73.     On September 4, 2025, Plaintiff was one month delinquent on moorage fees, as defined by both contract and code.

74.     The City's failure to fulfill the contractual obligations stipulated in Clause 7 of the Contract constitutes a material breach of contract.

75.     As a direct result of the City's breach of contract, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

    a.   invalidation of the nonjudicial sale of Noula;

    b.   invalidation of the nonjudicial sale lien;

    c.   damages including, but not limited to, compensatory damages, tangible damages, intangible damages, loss of use, and pre- and post-judgment interest;

    d.   an order compelling the City to rescind all fines;

    e.   a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his lawful rights; and

    f.   granting any other such relief as the Court deems just and proper.

**Verified Complaint**

## COUNT V

## BREACH OF CONTRACT

### Default Violations of Fla. Stat. § 83.808 (3)

### Per se Violations of FDUTPA

76.     Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

77.     Violations of Fla. Stat. § 83.808 constitute a per se violation of FDUPTA.

78.     The City has a policy, custom, or practice of assessing late fees not stipulated in contract, describing them as "finance charges." (Exhibit 13)

79.     As a direct result of the City's noncompliance with statute, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

    a.  damages including, but not limited to, compensatory damages, statutory damages, tangible damages, intangible damages, and pre- and post-judgment interest;

    b.  an order compelling the City to rescind and refund late fees, with interest;

    c.  a permanent injunction compelling the City to cease deceptive practices;

    d.  a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his lawful rights; and

    e.  granting any other such relief as the Court deems just and proper.

## COUNT VI

## VIOLATION OF MUNICIPAL CODE § 50-338

80.     Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

81.     Miami, Fla. Code § 50-338 states "Monthly dockage and mooring fees […] shall be considered delinquent if not paid on or before the tenth of the month."

82.     Miami, Fla. Code § 50-338 continues by stating, "A licensee who is delinquent for a period of 20 days shall be considered to be in breach of and have defaulted on his or her license agreement, and shall have 30 days to pay in full all outstanding dockage and mooring payments and late fees owed to the city."

**Verified Complaint**

83. Miami, Fla. Code § 50-338 goes on to state, "If payment in full is not made after this period, the city shall revoke his/her license agreement and reassign the berth."

84. On August 11, 2025, Plaintiff's monthly payment became delinquent, and the legally mandated twenty-day period of delinquency commenced.

85. The City's seizure of Tender on August 21, 2025, was a violation of law.

86. As a result of the City's violation of Miami, Fla. Code § 50-338, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

    a.  damages including, but not limited to, compensatory damages, consequential damages, tangible damages, intangible damages, loss of use, and pre- and post-judgment interest;

    b.  a permanent injunction compelling the City to rescind fines;

    c.  a permanent injunction compelling the City to cease the present and future practice of using "late payments" as pretext for adverse actions;

    d.  a permanent injunction barring the City from taking further retaliatory action, including further legal action, to deprive Plaintiff of his lawful rights; and

    e.  granting any other such relief as the Court deems just.

## COUNT VII

### VIOLATION OF MUNICIPAL CODE § 50-338

87. Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

88. Miami, Fla. Code § 50-338 states "Monthly dockage and mooring fees […] shall be considered delinquent if not paid on or before the tenth of the month."

89. Miami, Fla. Code § 50-338 continues by stating, "A licensee who is delinquent for a period of 20 days shall be considered to be in breach of and have defaulted on his or her license agreement, and shall have 30 days to pay in full all outstanding dockage and mooring payments and late fees owed to the city."

90. Miami, Fla. Code § 50-338 goes on to state, "If payment in full is not made after this period, the city shall revoke his/her license agreement and reassign the berth."

**Verified Complaint**

91.     On August 11, 2025, Plaintiff's monthly payment became delinquent, and the twenty-day period of delinquency commenced.

92.     Therefore, the City's termination of Plaintiff's Contract on August 21, 2025, was unlawful. (Exhibit 1)

93.     As a result of the City's violation of Miami, Fla. Code § 50-338, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

a.   invalidation of the Contract termination;

b.   damages including, but not limited to, compensatory damages, consequential damages, tangible damages, intangible damages, and pre- and post-judgment interest;

c.   a permanent injunction compelling the City to take affirmative action to cure the long-term and ongoing violations of its own ordinance;

d.   entering a permanent injunction barring the City from taking further retaliatory action including in its governmental capacity to deprive Plaintiff of his lawful rights; and

e.   granting any other such relief as the Court deems just.

## COUNT VIII

## VIOLATION OF MUNICIPAL CODE § 50-338

94.     Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

95.     Miami, Fla. Code § 50-338 states "Monthly dockage and mooring fees […] shall be considered delinquent if not paid on or before the tenth of the month."

96.     Miami, Fla. Code § 50-338 continues by stating, "A licensee who is delinquent for a period of 20 days shall be considered to be in breach of and have defaulted on his or her license agreement, and shall have 30 days to pay in full all outstanding dockage and mooring payments and late fees owed to the city."

97.     Miami, Fla. Code § 50-338 goes on to state, "If payment in full is not made after this period, the city shall revoke his/her license agreement and reassign the berth."

**Verified Complaint**

98.     On August 11, 2025, Plaintiff's monthly payment became delinquent, and the twenty-day period of delinquency commenced.

99.     On August 31, 2025, Plaintiff was in breach of contract and the legally mandated thirty-day period to make payment commenced.

100.     On September 3, 2025, Plaintiff was on day three of the legally mandated thirty-day period to make payment in full, as defined by code.

101.     Therefore, the City's seizure of Noula on September 3, 2025, was unlawful. (Exhibit 2)

102.     As a result of the City's violation of Miami, Florida Code § 50-338, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

   a.   Invalidation of the nonjudicial lien;
   b.   damages including, but not limited to, compensatory damages, consequential damages, tangible damages, intangible damages, loss of use, and pre- and post-judgment interest;
   c.   an injunction compelling the City to take affirmative action to cure the historical and ongoing violations of its own laws;
   d.   a permanent injunction barring the City from taking further retaliatory action, including further legal action, to deprive Plaintiff of his lawful rights; and
   e.   granting any other such relief as the Court deems just.

## COUNT IX

## VIOLATION OF MUNICIPAL CODE § 50-428

103.     Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

104.     Miami, Fla. Code § 50-428 states unambiguously, "The city shall provide a dinghy dock for the accommodation of dinghies […] of the Dinner Key mooring facility customers […]."

105.     The law is clear regarding the City's legal responsibility to provide a dinghy dock for mooring facility customers.

**Verified Complaint**

106.    As described in paragraph 33, Defendants violated Plaintiff's lawful rights by characterizing the dinghy dock as an "amenity," and an order compelling him to remove Tender.

107.    As a result of the City's violation of Miami, Fla. Code § 50-428, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

    a.  declaring the City's characterization of the DKM dinghy dock as an "amenity" unlawful;

    b.  declaring the use of the DKM dinghy dock a legal right of DKMF customers;

    c.  damages including, but not limited to, compensatory damages, consequential damages, tangible damages, intangible damages, loss of use, and pre- and post-judgment interest;

    d.  a permanent injunction compelling the City to take affirmative action to cure the long-term, ongoing violations of its own laws;

    e.  a permanent injunction barring the City from taking further retaliatory action, including further legal action, to deprive Plaintiff of his lawful rights; and

    f.  granting any other such relief as the Court deems just.

## COUNT X

## FLORIDA STATUTE § 328.17

### Failure to Itemize Lien Notice

### United American Lien and Recovery

108.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

109.    Fla. Stat. § 328.17 (5)(a)(1) states unambiguously, "The marina shall provide written notice to the vessel's owner…"

110.    Fla. Stat. § 328.17 (5)(b)(1) states unambiguously, the notice shall include "an itemized statement of the marina's claim, showing the sum due at the time of the notice and the date upon which the sum became due.

111.    UAL provided an invoice showing subtotal, a lien fee, and a total due for Noula, omitting the itemization required by statute.

**Verified Complaint**

112.    UAL further omitted mention of fines for Tender, which were included in the total but not itemized. (Exhibit 7)

Plaintiff requests judgement in his favor and against the City in the form of:

    a.    invalidation of the nonjudicial lien;

    b.    damages including, but not limited to, compensatory damages, consequential damages, tangible damages, intangible damages,  and pre- and post-judgment interest;

    c.    a permanent injunction barring UAL from issuing further liens against Plaintiff's property; and

    d.    granting any other such relief as the Court deems just.

## COUNT XI

### Florida Statute § 713.78

### United American Lien and Recovery

113.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

114.    Fla. Stat. § 713.78 (4) (c) states "The notice of lien must be sent by an approved third-party service by certified mail to the registered owner […] within 5 business days, excluding a Saturday, Sunday, or federal legal holiday.

115.    As described in Paragraph 37, Noula was seized on September 3, 2025, and notice was sent on September 15, 2025. (Exhibit 15)

116.    UAL's failure to meet the statutory deadline for notification is a default violation of statute.

117.    As a result of UAL's failure to meet the statutory deadline for notification, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

    a.    invalidation of the nonjudicial lien;

    b.    damages including, but not limited to, compensatory damages, consequential damages, tangible damages, intangible damages, and pre- and post-judgment interest;

**Verified Complaint**

c.  a permanent injunction barring UAL from issuing further liens against Plaintiff's property; and

d.  granting any other such relief as the Court deems just.

## COUNT XII

### Florida Statute § 715.07

118.  Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

119.  Fla. Stat. § 715.07 (2) (a) (2) states "The person or firm towing or removing the vehicle or vessel shall, within 30 minutes after completion of such towing or removal, notify the municipal police department [...]."

120.  As described in Paragraph 37, Tender was seized on August 21, 2025, at approximately 1:00 p.m.

121.  The City's failure to notify law enforcement within thirty minutes of the seizure of Tender is a violation of statute.

122.  As a result of the City's failure to meet the statutory deadline for notification, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

a.   damages including, but not limited to, compensatory damages, consequential damages, tangible damages, intangible damages, loss of use, and pre- and post-judgment interest;

b.  a permanent injunction compelling the City to cure its history of frequent violations of Fla. Stat. § 715.07;

c.  a permanent injunction barring the City from taking further retaliatory action, including further legal action, to deprive Plaintiff of his lawful rights; and

d.  granting any other such relief as the Court deems just.

**Verified Complaint**

## COUNT XIII

### Florida Statute § 715.07

123.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

124.    Fla. Stat. § 715.07 (2) (a) (2) states "The person or firm towing or removing the vehicle or vessel shall, within 30 minutes after completion of such towing or removal, notify the municipal police department [...]."

125.    As described in paragraph 37, Noula was seized on September 3, 2025, at approximately 11:00 a.m.

126.    The City's failure to notify law enforcement within thirty minutes of the seizure of Noula is a violation of statute.

127.    As a result of the City's failure to meet the statutory deadline for notification, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

a.   damages including, but not limited to, compensatory damages, consequential damages, tangible damages, intangible damages, loss of use, and pre- and post-judgment interest;

b.   a permanent injunction compelling the City to cure its history of frequent violations of Fla. Stat. § 715.07;

c.   a permanent injunction barring the City from taking further retaliatory action, including further legal action, to deprive Plaintiff of his lawful rights; and

d.   granting any other such relief as the Court deems just.

**Verified Complaint**

## COUNT XIV

### PROTECTED EXPRESSION -- 42 U.S.C. § 1983

### Defendants revoke Plaintiff's "access to amenities."

128.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

129.    The First Amendment to the United States Constitution prohibits the Defendants from depriving Plaintiff of protected speech interests.

130.    State actors with final policymaking authority created, implemented, and executed, personally and/or by and through their employees, a policy of public harassment, intimidation, and coercion as collections action related to Plaintiff's debt to the City. In each instance, Plaintiff asserted his right to privacy and his right to freedom from harassment.

131.    As described in paragraph 32, the City violated a core First Amendment principle via direct and immediate adverse action driven by retaliatory animus in response to Plaintiff's exercise of constitutionally protected speech.

132.    Defendants acted herein under color of state law.

133.    There is an immediate causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

134.    As a direct result of the City's adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

      a.    damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

      b.    an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

      c.    a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

      d.    granting any other such relief as the Court deems just and proper.

**Verified Complaint**

## COUNT XV

### PROTECTED EXPRESSION -- 42 U.S.C. § 1983

#### Defendants revoke Plaintiff's lawful right to the dinghy dock.

135.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

136.    The First Amendment to the United States Constitution prohibits the City from depriving Plaintiff of protected speech interests.

137.    State actors with final policymaking authority created, implemented, and executed, personally and/or by and through their employees, a policy of public harassment, intimidation, and coercion as collections action related to Plaintiff's debt to the City. In each instance, Plaintiff asserted his statutory rights to privacy and to freedom from harassment.

138.    As alleged in paragraph 33, Defendants violated a core First Amendment principle via direct and proximate adverse action driven by retaliatory animus in response to Plaintiff's exercise of constitutionally protected speech.

139.    The Defendants acted herein under color of state law.

140.    There is a direct, proximate, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

141.    As a direct result of the Defendants' adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

    a.    damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

    b.    an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

    c.    a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

    d.    granting any other such relief as the Court deems just and proper.

21

**Verified Complaint**

## COUNT XVI

## PROTECTED EXPRESSION -- 42 U.S.C. § 1983

### Defendants terminate contract and expel Plaintiff from marina.

142.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

143.    The First Amendment to the United States Constitution prohibits the City from depriving Plaintiff of protected speech interests.

144.    State actors with final policymaking authority created, implemented, and executed, personally and/or by and/or through their employees, a policy of public harassment, intimidation, and coercion as collections action related to Plaintiff's debt to the City. In each instance, Plaintiff asserted his statutory rights to privacy and to freedom from harassment.

145.    As alleged in paragraph 34, Defendants violated a core First Amendment principle via direct and proximate adverse action driven by retaliatory animus in response to Plaintiff's exercise of constitutionally protected speech.

146.    Defendants acted herein under color of state law.

147.    There is a direct, proximate, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

148.    As a direct result of Defendant's adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

      a.    damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

      b.    an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

      c.    a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

      d.    granting any other such relief as the Court deems just and proper.

**Verified Complaint**

## COUNT XVII

## PROTECTED EXPRESSION -- 42 U.S.C. § 1983

### Defendants seize Tender

149.     Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

150.     The First Amendment to the United States Constitution prohibits the City from retaliatory acts related to Plaintiff's assertion of lawful rights.

151.     State actors with final policymaking authority created, implemented, and executed, personally and/or by and/or through their employees, a policy of public harassment, intimidation, and coercion as collections action related to Plaintiff's debt to the City. In each instance, Plaintiff asserted his statutory right to privacy and his right to freedom from harassment.

152.     As alleged in paragraph 34 (Exhibit 1), Defendants violated a core First Amendment principle via direct and proximate adverse action driven by retaliatory animus in response to Plaintiff's exercise of constitutionally protected speech.

153.     The Defendants acted herein under color of state law.

154.     There is a direct, proximal, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

155.     As a direct result of the Defendants' adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

   a.     damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

   b.     an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

   c.     a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

23

**Verified Complaint**

d.      granting any other such relief as the Court deems just and proper.

## COUNT XVIII

### PROTECTED EXPRESSION -- 42 U.S.C. § 1983

### Noula seized.

156.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

157.    The First Amendment to the United States Constitution prohibits the City from retaliatory acts related to Plaintiff's assertion of lawful rights.

158.    State actors with final policymaking authority created, implemented, and executed, personally and/or by and through their employees, a policy of public harassment, intimidation, and coercion as collections action related to Plaintiff's debt to the City. In each instance, Plaintiff asserted his statutory right to privacy and his right to freedom from harassment.

159.    As alleged in paragraph 37, Defendants violated a core First Amendment principle via direct and proximate adverse action driven by retaliatory animus in response to Plaintiff's exercise of constitutionally protected speech.

160.    Defendants requested updated registration and insurance documentation for Noula neither before nor after seizure.

161.    The City acted herein under color of state law.

162.    There is a direct, proximal, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

163.    As a direct result of the Defendants' adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

a.      damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

b.      an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

24

**Verified Complaint**

c.      a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

d.      granting any other such relief as the Court deems just and proper.

## COUNT XIX

### UNREASONABLE SEIZURE – 42 U.S.C. § 1983

#### Seizure of Tender

164.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

165.    The Fourth Amendment to the Constitution as incorporated by the Fourteenth Amendment to the Constitution protects Plaintiff's right to be secure against "unreasonable seizure." The Fourteenth Amendment guarantees Plaintiff's right to due process.

166.    State actors with final policymaking authority created, implemented, and executed, personally and/or by and through their employees, a policy of unlawful impoundment to harass, intimidate, and coerce DKM clientele, thereby depriving Plaintiff of his constitutionally protected rights.

167.    As described in paragraph 34 (Exhibit 1), Defendants violated Plaintiff's property interests and via direct and proximate adverse action driven by retaliatory animus in response to Plaintiff's exercise of constitutionally protected speech.

168.    Courts have found that prolonged, unlawful possession of property equates to seizure.

169.    Defendants requested updated registration and insurance documentation neither before nor after seizure.

170.    The Defendants acted herein under color of state law.

171.    There is a direct, proximate, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

172.    As a direct result of Defendant's adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

a.      damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost

25

**Verified Complaint**

earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

b.      an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

c.      a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

d.      granting any other such relief as the Court deems just and proper.

## COUNT XX

## UNREASONABLE SEIZURE – 42 U.S.C. § 1983

### Seizure of Noula

173.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

174.    The Fourth Amendment to the Constitution as incorporated by the Fourteenth Amendment to the Constitution protects Plaintiff's right to be secure against "unreasonable seizure." The Fourteenth Amendment  protects Plaintiff's due process interests.

175.    State actors with final policymaking authority created, implemented, and executed, personally and/or by and through their employees, a policy of unlawful impoundment to harass, intimidate, and coerce DKM clientele, thereby depriving Plaintiff of his constitutionally protected rights.

176.    As described in paragraph 37, Defendants violated Plaintiff's  property interests and due process interests via direct and proximate adverse action driven by retaliatory animus in response to Plaintiff's exercise of constitutionally protected speech.

177.    Courts have found the prolonged, unlawful possession of property equates to seizure.

178.    Defendants requested updated registration and insurance documentation neither before nor after seizure.

179.    The Defendants acted herein under color of state law.

180.    There is a direct, proximate, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

26

**Verified Complaint**

181.    As a direct result of Defendant's adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

    a.    damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

    b.    an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

    c.    a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

    d.    granting any other such relief as the Court deems just and proper.

**COUNT XXI**

**EXCESSIVE FINES -- 42 U.S.C. § 1983**

**Defendants impose "storage fees" on Tender.**

182.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

183.    The Eighth Amendment to the U.S. Constitution, as incorporated by the Fourteenth Amendment to the U.S. Constitution, prohibits the Defendant from imposing "excessive fines."

184.    State actors with final policymaking authority created, implemented, and executed, personally and/or by and through their employees, a policy oof imposing excessive fines to generate revenue and to harass, intimidate, and coerce DKM clientele, thereby depriving Plaintiff of his constitutionally protected liberties.

185.    As described in paragraph 43 (Exhibit 8), Defendants deprived Plaintiff of his constitutionally protected Eighth Amendment rights to freedom from excessive fines.

186.    Defendant imposed excessive, punitive, revenue-generating fines; serving no remedial purpose and intended to punish Plaintiff, in violation of his constitutionally protected liberties.

**Verified Complaint**

187.     Defendant imposed fines that far exceed Plaintiff's ability to pay.

188.     The City adopted the actions of its final policymakers via its deliberate indifference to the deprivation of Plaintiff's constitutional rights.

189.     The City acted herein under color of state law.

190.     There is a direct, proximate, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

191.     As a direct result of the Defendants' adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

   a.     damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

   b.     an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

   c.     a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

   d.     granting any other such relief as the Court deems just and proper.

## COUNT XXII

## EXCESSIVE FINES -- 42 U.S.C. § 1983

### Defendants impose "storage fees" on Noula.

192.     Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

193.     The Eighth Amendment to the U.S. Constitution, as incorporated by the Fourteenth Amendment to the U.S. Constitution, prohibits the Defendant from imposing "excessive fines."

194.     State actors with final policymaking authority created, implemented, and executed, personally and/or by and through their employees, a policy of imposing excessive fines

28

**Verified Complaint**

to generate revenue and to harass, intimidate, and coerce DKM clientele, thereby depriving Plaintiff of his constitutionally protected rights.

195.    As described in paragraph 43 (Exhibit 8), Defendants deprived Plaintiff of his constitutionally protected Eighth Amendment liberties.

196.    Defendant imposed excessive, punitive, revenue-generating fines; serving no remedial purpose and intended to punish Plaintiff, in violation of his constitutionally protected liberties.

197.    Defendant imposed fines that far exceed Plaintiff's ability to pay.

198.    The City adopted the actions of its final policymakers via its deliberate indifference to the deprivation of Plaintiff's constitutional rights.

199.    The City acted herein under color of state law.

200.    There is a direct, proximate, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

201.    As a direct result of the Defendants' adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

a.    damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

b.    an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

c.    a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

d.    granting any other such relief as the Court deems just and proper.

**Verified Complaint**

## COUNT XXIII

## PROCEDURAL DUE PROCESS – 42 U.S.C. § 1983

### The City seizes Plaintiff's Tender

202.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

203.    The Fourth Amendment to the United States Constitution protects Plaintiff from unreasonable seizures. The Fourteenth Amendment guarantees Plaintiff's right to due process.

204.    Plaintiff's rights to his property are protected by the U.S. Constitution.

205.    As described in paragraph 34, Tender was seized while lawfully docked; neither a safety hazard nor a navigation hazard, the statutorily required registration not disputed by the City. Tender was therefore not subject to punitive action by any authority.

206.    The City failed to give Plaintiff a "time to cure" any outstanding issues and failed to notify law enforcement, thereby depriving Plaintiff of his constitutionally protected due process interests.

207.    The City acted herein under color of state law.

208.    There is a direct, proximal, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

209.    As a direct result of the City's adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

 a.  damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

 b.  an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

 c.  a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

 d.  granting any other such relief as the Court deems just and proper.

**Verified Complaint**

## COUNT XXIV

## PROCEDURAL DUE PROCESS – 42 U.S.C. § 1983

### The City seizes Noula

210.     Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

211.     The Fourth Amendment to the United States Constitution protects Plaintiff from unreasonable seizures. The Fourteenth Amendment guarantees Plaintiff's right to due process.

212.     Plaintiff's rights to his property are protected by the U.S. Constitution.

213.     As described in paragraph 10, Noula was seized while lawfully moored; neither a safety hazard nor a navigation hazard, her statutorily required registration sticker displayed on her bow.

214.     The City failed to provide a legitimate cause for terminating and expelling Plaintiff from the marina. The City failed again by seizing Noula during the contractually stipulated five-day period to vacate after termination of Contract. The City failed a third time by dishonoring the covenant of good faith and fair dealing inherent to every contract, wherein Plaintiff would have happily provided proof of registration, proof of insurance, and proof of a valid driver license, relevance notwithstanding, within the "time to cure" the City was obligated to give for cure of outstanding issues.

215.     The City failed to notify law enforcement of the impound of a vessel.

216.     The City acted herein under color of state law.

217.     There is a direct, proximal, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

218.     As a direct result of the City's adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

      a.     damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

31

**Verified Complaint**

b.    an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

c.    a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

d.    granting any other such relief as the Court deems just and proper.

## COUNT XXV

## PROCEDURAL DUE PROCESS – 42 U.S.C. § 1983

### The City discards Tender

219.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

220.    The Fourth Amendment to the United States Constitution protects Plaintiff from unreasonable seizures. The Fourteenth Amendment guarantees Plaintiff's right to due process.

221.    Plaintiff's possessory rights to his property are protected by the United States Constitution.

222.    As described in paragraph 41, Defendants removed Tender from the water, discarded Plaintiff's personal belongings, removed the motor,  and discarded Tender in the dumpster corral.

223.    The City failed to notify law enforcement and breached its duty of care, thereby depriving Plaintiff of his constitutionally protected due process interests.

224.    The City acted herein under color of state law.

225.    There is a direct, proximal, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

226.    As a direct result of the City's adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

a.    damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

32

**Verified Complaint**

b.  an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

c.  a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

d.  granting any other such relief as the Court deems just and proper.

## COUNT XXVI

## PROCEDURAL DUE PROCESS – 42 U.S.C. § 1983

### The City terminates Contract.

227.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

228.    The Fourth Amendment to the United States Constitution protects Plaintiff from unreasonable seizures. The Fourteenth Amendment guarantees Plaintiff's right to due process.

229.    As described in paragraph 34, the City terminated Plaintiff's Contract without cause.

230.    The City has failed to provide a legitimate legal or contractual basis for the termination of Plaintiff's contract, resorting to fiction and pretext.

231.    The City acted herein under color of state law.

232.    There is a direct, proximal, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

233.    As a direct result of the City's adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

a.  invalidation of the termination of Contract;

b.  damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

33

**Verified Complaint**

c.   an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

d.   a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

e.   granting any other such relief as the Court deems just and proper.

## COUNT XXVII

## PROCEDURAL DUE PROCESS – 42 U.S.C. § 1983

### The City expels Plaintiff from public marina

234.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

235.    The Fourth Amendment to the United States Constitution protects Plaintiff from unreasonable seizures. The Fourteenth Amendment guarantees Plaintiff's right to due process.

236.    As described in paragraph 2, the City expelled Plaintiff from DKM without cause.

237.    The City acted herein under color of state law.

238.    There is a direct, proximal, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

239.    As a direct result of the City's adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

a.   invalidation of the termination of Contract;

b.   damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

c.   an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

d.   a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

e.   granting any other such relief as the Court deems just and proper.

**Verified Complaint**

## COUNT XXVIII

### EQUAL PROTECTION – CLASS OF ONE – 42 U.S.C. § 1983

240.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

241.    The Fourteenth Amendment guarantees Plaintiff's right to equal protection.

242.    As shown in Exhibits 18, 19, 20, 21, 20, 21, and 22, the City typically posts notices ordering vessel owners to "cure" outstanding issues, with one example containing a reference to Miami, Fla. Code § 50-428.

243.    The City is familiar with, and has a demonstrated history of, providing vessel owners with a "time to cure" outstanding issues. A reasonable person can see the City's treatment of Plaintiff's property differs dramatically from the examples provided in the exhibits described in paragraph 182.

244.    In one example, a vessel of unknown provenance and unknown registration and insurance status is given a warning notice, as opposed to being impounded. This action is compliant with Miami, Fla. Code § 50-9, which provides specific guidelines and penalties for unknown vessels docked at DKM dinghy dock.

245.    These examples indicate the City, throughout the campaign deployed against Plaintiff described herein, a unique ruleset and applied it to Plaintiff in a discriminatory manner. .

246.    The City acted herein under color of state law.

247.    There is a direct, proximal, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

248.    As a direct result of the City's adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

    a.   invalidation of the termination of Contract;

    b.   damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

    c.   an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

35

**Verified Complaint**

d.  a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

e.  granting any other such relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

**Plaintiff requests a trial by jury on all claims so triable.**

36

**Verified Complaint**

## Index of Exhibits

| | | |
|---|---|---|
| Email Termination and Expulsion | August 21, 2025 | (Exhibit 1) |
| Email re: Tender Seized | August 21, 2025 | (Exhibit 1) |
| Email re: Noula Seized | September 3, 2025 | (Exhibit 2) |
| Quinones Email to City Hall | August 22, 2025 | (Exhibit 3A) |
| Quinones pretext for seizure and term | August 22, 2025 | (Exhibit 3B) |
| Moorage Agreement | October 1, 2024 | (Exhibit 4) |
| Noula & Tender Registrations | June 2023 | (Exhibit 5) |
| Noula Vessel Insurance | | (Exhibit 6) |
| Lien Notice not itemized | September 15, 2025 | (Exhibit 7) |
| Email Lien Invoice | November 21, 2025 | (Exhibit 8) |
| Photos of Trashed Tender | November 1, 2025 | (Exhibit 9) |
| Deprived Access to Noula in 2024 | September 19, 2024 | (Exhibit 10) |
| Sale of Noula confirmed | November 24, 2025 | (Exhibit 11) |
| Property Access Denied | October 29, 2025 | (Exhibit 14A) |
| Requests for Access to Property | October 2025 | (Exhibit 14B) |
| Lien envelope dated 9/15 | September 15, 2025 | (Exhibit 15) |
| FLHSMV recommended lien notice | | (Exhibit 17) |
| Warning Notices on Vessels at Dinghy Dock | | (Exhibits 18 – 22) |
| Notice Posted on unlawfully docked tender | | (Exhibit 25) |
| Example Conspicuous Lien Notice on Vessel | | (Exhibit 26) |

**Verified Complaint**

Tender Fuel Tank Inverted                                          (Exhibit 27)

Tender Partially Submerged                                         (Exhibit 28)

Trespassing Dinghy Given Time to Cure                              (Exhibit 30)

**Verified Complaint**

Dated: December 2, 2025

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

Evangelos Skevofilax, pro se

3400 Pan American Dr

Miami FL 33133

Telephone: 305-339-2568

**Verified Complaint**



**evan skev <evantech@gmail.com>**

---

## RE: Dinner Key Marina: Payment Overdue / Mooring ball payment pass due / non-compliance / Notice of Non renewal

---

Pino, Pablo <PPino@miamigov.com>                                    Thu, Aug 21, 2025 at 1:19 PM
To: "evantech@gmail.com" <evantech@gmail.com>
Cc: E Skev <skev.evan@gmail.com>, "Quinones, Guillermo" <GQuinones@miamigov.com>, "Nesbitt, Thomas" <TNesbitt@miamigov.com>, "Bustamante, Alex" <AlexBustamante@miamigov.com>

Mr. Skevofilax,                                      PLAINTIFF EXHIBIT 1

The City of Miami will not be renewing your Mooring Dockage Agreement as of today August 21,2025. Please have your vessel removed from the Mooring ball no later than August 31st, 2025. In reviewing your customer file, your vessel registration has expired as of August 19, 2025. Driver's license is also expired as of August 19th, 2024, and your vessel insurance has expired as of June 20th, 2025.

Due to non-compliance, all amenities have been deactivated which include dinghy dock privileges, vehicle parking lot access and building key access until all past due balance is received. Please visit the 2nd floor office to make payments so we can release your dinghy once your payment has been received.

TERMINATION AND
EXPULSION FROM MARINA

**Thank you,**

**Pablo Pino**

**Marinas Supervisor**

**3400 Pan American Drive**

**Miami, FL 33133**

**305-329-4755**

ppino@miamigov.com

---

**From:** Evan Skev <evantech@gmail.com>
**Sent:** Thursday, September 19, 2024 10:38 AM
**To:** Bustamante, Alex <AlexBustamante@miamigov.com>
**Cc:** E Skev <skev.evan@gmail.com>; Quinones, Guillermo <GQuinones@miamigov.com>; Nesbitt, Thomas <TNesbitt@miamigov.com>; Pino, Pablo <PPino@miamigov.com>; Lutton, Donald <dlutton@miamigov.com>
**Subject:** Re: Dinner Key Marina: Payment Overdue



evan skev <evantech@gmail.com>

## RE: Dinner Key Marina: Payment Overdue / Mooring ball payment pass due / non-compliance / Notice of Non renewal

Nesbitt, Thomas <TNesbitt@miamigov.com>                    Wed, Sep 3, 2025 at 1:04 PM
To: "'evantech@gmail.com'" <evantech@gmail.com>, E Skev <skev.evan@gmail.com>
Cc: "Quinones, Guillermo" <GQuinones@miamigov.com>, "Bustamante, Alex" <AlexBustamante@miamigov.com>, "Pino,
Pablo" <PPino@miamigov.com>, "Nesbitt, Thomas" <TNesbitt@miamigov.com>


Good afternoon Mr. Skevofilax,


Due to your refusal to pay your outstanding balance or submit the required documents for your vessel
"Noula", the City of Miami has impounded your vessel.  If you need to collect any personal belongings, such
as medication and clothes, please let us know in advance, so we can arrange for an officer to escort you to
the vessel.

PLAINTIFF
EXHIBIT 2
NOULA SEIZED

Thank you,


Jocko Nesbitt

**City of Miami**
**Marinas Manager Assistant**
3400 Pan American Dr.
Miami, FL 33133
Tel: 305-329-4755



[Quoted text hidden]

## Subject: FW: Dinner Key Marina: Payment Overdue / Mooring ball payme... Urgent - From Evan in D2 - we met at Brickell Zoning meeting



**Quinones, Guillermo** <GQuinones@miamigov.com>

PLAINTIFF 3A

to Gonzalez, Javier, Frey, Andrew, Balzebre, Anthony, Pardo, Damian (Commissioner), Pino, Pablo, Nesbitt, Thomas, Busta...

Javier, please see additional briefing on Mr. Skevofilax. Thank you



Guillermo Quiñones
**Marinas Manager**
**3400 Pan American Drive**
**Miami, FL 33133**
**305-329-4764**
gquinones@miamigov.com

EXHIBIT 3A
QUINONES
RESPONSE TO
CITY HALL

**From:** Nesbitt, Thomas <TNesbitt@miamigov.com>
**Sent:** Friday, August 22, 2025 9:26 AM
**To:** Quinones, Guillermo <GQuinones@miamigov.com>
**Cc:** Bustamante, Alex <AlexBustamante@miamigov.com>; Nesbitt, Thomas <TNesbitt@miamigov.com>; Pino, I
**Subject:** RE: Dinner Key Marina: Payment Overdue / Mooring ball payment pass due / non-compliance / Notice

Currently Mr. Skevoflex has multiple expired documents in his file and has failed to provide the marina
Mr. Skevoflex has been habitually late with payments since his arrival in the marina. Due to the diffic
with the agreement that he would keep up with his payments in a timely manner as they would now b
timely payments and has an outstanding balance of $472.28. Below I have highlighted the consistenc

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Skevofilax Evangelos | | | | Criteria for Search: All | | | |
| 3400 Pan American dr. | | Account#: | 141027 | | | | |
| | | Phone: | | | | | |
| Miami | | Mobile: | (786)253-3421 | | | | |

**Double-click to drill down to Transaction Detail**   22-Aug-25

| Select | Date | Type | Description | Trans | B/A Code | Debit | Credit |
|---|---|---|---|---|---|---|---|
| ☐ | 9/1/2025 | DSI | RR MB056 9/1/2025-9/30/2025 Noula - 37ft +... | 396527 | DKMF | 424.79 | |
| ☐ | 8/11/2025 | DSI | Finance Charge | 396105 | DKMF | 22.49 | |
| ☐ | 8/1/2025 | DSI | RR MB056 8/1/2025-8/31/2025 Noula - 37ft +... | 394497 | DKMF | 449.79 | |
| ☐ | 7/6/2025 | DMR | Check Receipt#28803 | 337798 | DKMF | 0.00 | 44 |
| ☐ | 7/1/2025 | DSI | RR MB056 7/1/2025-7/31/2025 Noula - 37ft +... | 392970 | DKMF | 449.79 | |
| ☐ | 6/16/2025 | DMR | Master Card Receipt Receipt 28683 | 336828 | DKMF | 0.00 | 47 |
| ☐ | 6/11/2025 | DSI | Finance Charge | 392409 | DKMF | 22.49 | |
| ☐ | 6/1/2025 | DSI | RR MB056 6/1/2025-6/30/2025 Noula - 37ft +... | 390696 | DKMF | 449.79 | |
| ☐ | 5/10/2025 | DMR | Visa Receipt Receipt#28509 | 335190 | DKMF | 0.00 | 44 |
| ☐ | 5/1/2025 | DSI | RR MB056 5/1/2025-5/31/2025 Noula - 37ft +... | 388380 | DKMF | 449.79 | |
| ☐ | 4/15/2025 | DMR | Visa Receipt Receipt # 28351 | 333660 | DKMF | 0.00 | |

# PLAINTIFF'S EXHIBIT 3B

| Skevofilax Evangelos | | | | Criteria for Search: All | | | | |
|---|---|---|---|---|---|---|---|---|
| 3400 Pan American dr. | | Account#: | 141027 | DKM BASIS FOR SEIZURES AND TERM | | | | |
| | | Phone: | | | | | | |
| Miami | | Mobile: | (786)253-3421 | | | | | |

**Double-click to drill down to Transaction Detail** | 22-Aug-25 | | Account Balance: | $897.07 |

Filter Balance: $897.07

| Select | Date | Type | Description | Trans | B/A Code | Debit | Credit | Outstanding | Balance |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | 9/1/2025 | DSI | RR MB056 9/1/2025-9/30/2025 Noula - 37ft +... | 396527 | DKMF | 424.79 | 0.00 | 424.79 | $897.07 |
| ☐ | 8/11/2025 | DSI | Finance Charge | 396105 | DKMF | 22.49 | 0.00 | 22.49 | $472.28 |
| ☐ | 8/1/2025 | DSI | RR MB056 8/1/2025-8/31/2025 Noula - 37ft -... | 394497 | DKMF | 449.79 | 0.00 | 449.79 | $449.79 |
| ☐ | 7/6/2025 | DMR | Check Receipt#28803 | 337798 | DKMF | 0.00 | 449.79 | 0.00 | $0.00 |
| ☐ | 7/1/2025 | DSI | RR MB056 7/1/2025-7/31/2025 Noula - 37ft +... | 392970 | DKMF | 449.79 | 0.00 | 449.79 | $449.79 |
| ☐ | 6/16/2025 | DMR | Master Card Receipt Receipt 28683 | 336828 | DKMF | 0.00 | 472.28 | 0.00 | $0.00 |
| ☐ | 6/11/2025 | DSI | Finance Charge | 392409 | DKMF | 22.49 | 0.00 | 0.00 | $472.28 |
| ☐ | 6/1/2025 | DSI | RR MB056 6/1/2025-6/30/2025 Noula - 37ft +... | 390696 | DKMF | 449.79 | 0.00 | 449.79 | $449.79 |
| ☐ | 5/10/2025 | DMR | Visa Receipt Receipt#28509 | 335190 | DKMF | 0.00 | 449.79 | 0.00 | $0.00 |
| ☐ | 5/1/2025 | DSI | RR MB056 5/1/2025-5/31/2025 Noula - 37ft +... | 388380 | DKMF | 449.79 | 0.00 | 449.79 | $449.79 |
| ☐ | 4/15/2025 | DMR | Visa Receipt Receipt # 28351 | 333660 | DKMF | 0.00 | 472.28 | 0.00 | $0.00 |
| ☐ | 4/11/2025 | DSI | Finance Charge | 387978 | DKMF | 22.49 | 0.00 | 0.00 | $472.28 |
| ☐ | 4/11/2025 | DSI | Finance Charge | 387659 | DKM | 1.25 | 0.00 | 0.00 | $449.79 |
| ☐ | 4/1/2025 | DMC | Credit Note, Customer was invoiced and receipte... | 42409 | DKM | 0.00 | 26.25 | 0.00 | $448.54 |
| ☐ | 4/1/2025 | DMC | Credit Note, DKM Dockage Correction - Tax: Exe... | 42103 | DKM | 0.00 | 25.00 | 0.00 | $474.79 |
| ☐ | 4/1/2025 | DMF | Master Card Receipt Refund#61558 | 13758 | DKM | 25.00 | 0.00 | 0.00 | $499.79 |
| ☐ | 4/1/2025 | DMR | Data Entry Error Reversal for DMR 332742 | 332743 | DKM | 25.00 | 0.00 | 0.00 | $474.79 |
| ☐ | 4/1/2025 | DMR | AMEX Receipt Receipt#61558 | 332742 | DKM | 0.00 | 25.00 | 0.00 | $449.79 |
| ☐ | 4/1/2025 | DMI | Invoice, Miscellaneous (DKM) - Tax: ST-DK @ 7... | 387375 | DKM | 25.00 | 0.00 | 0.00 | $474.79 |
| ☐ | 4/1/2025 | DSI | RR MB056 4/1/2025-4/30/2025 Noula - 37ft +... | 386194 | DKMF | 449.79 | 0.00 | 449.79 | $449.79 |
| ☐ | 3/30/2025 | DMR | Visa Receipt Refund#28211 | 13746 | DKMF | 45.72 | 0.00 | 0.00 | $0.00 |
| ☐ | 3/9/2025 | DMR | Visa Receipt Receipt#28146 | 331992 | DKMF | 0.00 | 491.75 | 0.00 | ($45.72) |
| ☐ | 3/5/2025 | DMR | Master Card | 331807 | DKM | 0.00 | 25.00 | 0.00 | $446.03 |
| ☐ | 3/5/2025 | DMI | Invoice#61261, Miscellaneous (DKM) - parking | 385405 | DKM | 25.00 | 0.00 | 0.00 | $471.03 |
| ☐ | 3/5/2025 | DMC | Credit Note, Miscellaneous (DKMF) - parking invoi... | 41791 | DKMF | 0.00 | 25.00 | 0.00 | $446.03 |
| ☐ | 3/5/2025 | DSI | RR Parking - DKMF 3/5/2025-3/31/2025 Noula -... | 385405 | DKM | 25.00 | 0.00 | 0.00 | $471.03 |
| ☐ | 3/1/2025 | DSI | RR MB 056 3/1/2025-3/31/2025 Noula - 37ft | 384766 | DKMF | 424.79 | 0.00 | 0.00 | $446.03 |
| ☐ | 2/12/2025 | DMC | Credit Note, DKMF Dkge Correction - Tax: Exemp... | 41585 | DKMF | 0.00 | 25.00 | 0.00 | $21.24 |
| ☐ | 2/12/2025 | DMR | Dishonour Reversal Not Receipted Under DKMF ... | 331084 | DKMF | 25.00 | 0.00 | 0.00 | $46.24 |
| ☐ | 2/12/2025 | DMR | Visa | 330632 | DKMF | 0.00 | 25.00 | 0.00 | $21.24 |
| ☐ | 2/12/2025 | DSI | RR 2/12/2025-2/12/2025 | 384065 | DKMF | 25.00 | 0.00 | 0.00 | $46.24 |
| ☐ | 2/12/2025 | DMR | Visa Receipt Receipt27987 | 330631 | DKMF | 0.00 | 424.79 | 0.00 | $21.24 |
| ☐ | 2/11/2025 | DMC | Credit Note, BA Error - Late Fee Ran 3 Times inst... | 42015 | DKMF | 0.00 | 45.72 | 0.00 | $446.03 |
| ☐ | 2/11/2025 | DSI | Finance Charge | 384043 | DKMF | 23.42 | 0.00 | 0.00 | $491.75 |
| ☐ | 2/11/2025 | DSI | Finance Charge | 383653 | DKMF | 22.30 | 0.00 | 0.00 | $468.33 |
| ☐ | 2/11/2025 | DSI | Finance Charge | 383262 | DKMF | 21.24 | 0.00 | 0.00 | $446.03 |

EXHIBIT A

PLAINTIFF

EXHIBIT 4
CONTRACT

City of Miami

## TRANSIENT MOORAGE AGREEMENT    MB-56

| Vessel Owner's Name: EVANGELOS SKEVOFILAX | | Dinner Key Mooring Facility | Buoy No: 56 |
|---|---|---|---|
| Vessel Owner's Mailing Address: 3501 PAN AMERICAN DR | | Vessel Name: NOLA | Home Port: |
| City: MIAMI | State: FL | Zip: 33 | State Reg. No. or Fed. Doc.No. |
| Vessel Physical Address: | | | LOA 37 | BEAM 12 | DRAFT 5 |
| City | State: | Zip: | Vessel Type: P (S) MS  Gas (Diesel) |
| | | | Vessel Model: |
| Work Telephone: | Home Telephone: | Dinghy Reg No: | Dinghy Length | Hard/Soft |
| EMAIL: | | | |

Agreement is made this __1__ day of OCTOBER 2024, 20__ between the City of Miami (CITY) and vessel owner (OWNER) of the above-described vessel for the lawful use of mooring space at the Dinner Key Municipal Mooring Facility (FACILITY) on a transient basis.

1. The OWNER agrees to pay the CITY for transient OVERNIGHT / MONTHLY (circle one) at the rate of $_____ per DAY / MONTH, plus tax.

2. Transient vessel moorage fees are due and payable in advance. Payments shall be made to the City of Miami, c/o the Marina Facility where the vessel is moored.

3. This agreement is only for the use of mooring space on a transient basis. The OWNER agrees to move the above-described mooring space if requested to do so by the CITY. Mooring space is to be used at the sole risk of the OWNER; the CITY shall not be liable for the care or protection, or security of the vessel, her appurtenances, or contents, or for any loss or damage of any kind or nature to the vessel, her appurtenances, or contents however caused. There is no warranty of any kind as to the condition of the moorings and related equipment and tackle; piers, docks, gangways, ramps, etc. and the CITY shall not be responsible for injuries to persons or property occurring upon CITY property for any reason.

4. OWNER agrees to comply with all federal, state, and local laws pertaining to marina facilities and boating, and with all of the terms of this agreement and CITY rules and regulations governing CITY marinas and mooring facilities. Copies of the Mooring Facilities Rules & Regulations are available at the Harbormaster's Office.

5. TERMINATION: This Agreement may be terminated by either party, with or without cause, by giving fifteen (15) days prior written notice to the other party. Upon termination of this Agreement, whether caused by lapse of time or otherwise, OWNER shall at once vacate the PREMISES and remove the VESSEL from the assigned facility. Should the OWNER fail to vacate the premises upon termination, the CITY may utilize any and all remedies provided by law, and as provided herein, to remove the OWNER and/or the VESSEL from the PREMISES, including, but not limited to Chapter 82, Fla. Stat., Chapter 83, Part I, Fla. Stat., and the general maritime law.

6. Upon failure of the OWNER to comply with the terms of this Agreement or the Mooring Facilities Rules & Regulations or to pay the moorage fee hereinabove provided, this Agreement may be terminated by the CITY. OWNER agrees that in the event that this Agreement is terminated or expires, OWNER will remove his/her vessel from the FACILITY. If the vessel is not removed from the FACILITY within five (5) days of termination or expiration of this Agreement, OWNER hereby agrees and consents to have the vessel towed from the FACILITY at his/her sole risk and expense. To the extent that the vessel remains and is stored at the FACILITY after termination or expiration of this Agreement, OWNER will be responsible and liable for payment of all moorage and late charges, and any lien processing fees that may be applicable.

7. OWNER and CITY agree that the mooring space provided for herein is a "necessary" within the meaning of the federal Maritime Lien Act, 46 U.S.C BB971-975, and that the CITY, in addition to relying on the credit of the OWNER, shall retain a maritime lien against the vessel, her appurtenances and contents, for all mooring fees, delinquency charges, and for any damage caused to any mooring or related equipment, dock, piling, or any other property of the CITY

   FOR UNDOCUMENTED VESSELS, PURSUANT TO FLORIDA STATUTES SECTION 328.17, IN THE EVENT OF NON-PAYMENT OF MOORAGE FOR A PERIOD OF TWO (2) MONTHS, FACILITY IS AUTHORIZED TO SELL OWNER'S VESSEL AT A NONJUDICIAL SALE.

8. OWNER agrees to release, indemnify, defend, and hold harmless the CITY from any and all liability, claims, demands, damages, losses, or causes of action of any nature whatsoever which may arise from the OWNER's use of mooring space at the herein named facility occasioned wholly or in part by any act or omission of anyone whomsoever including the CITY. OWNER CLEARLY UNDERSTANDS THAT THIS AGREEMENT TO INDEMNIFY THE CITY SHALL INCLUDE CLAIMS IN WHICH IT IS ALLEGED THAT THE CITY WAS NEGLIGENT. Upon receipt of notice from CITY of any such claim, OWNER shall, at his/her expense, appear, defend, and pay all charges of attorneys and all costs and other expenses arising therefrom or incurred in connection therewith including any judgment rendered against the CITY in any such action.

9. The CITY may at any time, in its absolute discretion, require the OWNER to move the vessel from its assigned mooring to another mooring within the facility.

It is understood that this Agreement is not assignable or otherwise transferable. The undersigned person agrees that he/she is the lawful OWNER of the vessel described herein or is authorized to subject said vessel to the provisions of this Agreement.

_____
WITNESS

_____
WITNESS

By: _____
    OWNER (Vessel Owner)

By: _____
    City of Miami

DKMF TMA Rev. 101613

PLAINTIFF
EXHIBIT 5
NOULA REGISTRATION

## FLORIDA VESSEL REGISTRATION

CO/AGY   I   / 15

T# 2150152289
B# 13272382

FL/DO #  **FL5679MN**    DECAL   **02228513**    Expires   **Midnight Thu 8/19/2027**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| YR/MK | **1986/BEY** | BODY | **VS** | | | Reg. Tax | 7.50 | Class Code | | 104 |
| HIN | **BEY01781A686** | | | | | Init. Reg. | | Tax Months | | 24 |
| HULL | **FBGLSS** | PROPUL | **INBRD** | TITLE | **90400888** | County Fee | 1.00 | Back Tax Mos | | 0 |
| USE | **EX AV** | TYPE | **AXSAIL** | FUEL | **DIESL** | Mail Fee | 0.95 | Credit Class | | 0 |
| DL/FEID | **S237~~000000000~~** | | | LENGTH | **36'8"** | Sales Tax | | Credit Months | | |
| Date Issued | **7/2/2025** | ENG DRIVE | | | | Voluntary Fees | | | | |
| | | ST OPER | | | | Grand Total | 9.45 | | | |

**EVANGELOS MICHAEL SKEVOFILAX**
**3400 PAN AMERICAN DR**
**MIAMI, FL  33133-5503**

**IMPORTANT INFORMATION**

1   Your registration must be updated to your new address within 30 days of moving.
2   Registration renewals are the responsibility of the registrant and shall occur during
the 30-day period prior to the expiration date shown on this registration.  Renewal
notices are provided as a courtesy and are not required for renewal purposes.

EXHIBIT A

PXL_20250830_175645882~3.jpg

11/18/25, 7:14 PM

https://mail.google.com/mail/u/0/#search/noula+regitration/KtbxLzGXCJPgGsQmfvzquLXdkXjTqwXTNq?projector=1&messagePartId=0.1

1/1

PLAINTIFF

PROGRESSIVE
P.O. BOX 31260
TAMPA, FL 33631

EXHIBIT 6
NOULA INSURANCE
DEC PAGE


PROGRESSIVE®
BOAT

**Policy number: 993735553**
Underwritten by:
Progressive Select Insurance Co
November 28, 2025
Policy Period: Feb 27, 2025 - Feb 27, 2026
Page 1 of 2

EVANGELOS SKEVOFILAX
3191 GRAND AVE # 273
MIAMI, FL 33133

**progressive.com**
**Online Service**
Make payments, check billing activity, update
policy information or check status of a claim.

**1-800-PROGRESSIVE (1-800-776-4737)**
For customer service and claims service,
24 hours a day, 7 days a week.

# Boat Insurance
# Coverage Summary
This is a copy of your
Declarations Page

Your coverage began on February 27, 2025 at the later of 12:01 a.m. or the effective time shown on your application. This policy period ends on February 27, 2026 at 12:01 a.m.

This coverage summary replaces your prior one. Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for a watercraft may not be combined with the limits for the same coverage on another watercraft, unless the policy contract or endorsements indicate otherwise. The policy contract is form 2749 FL (07/19). The contract is modified by forms Z820 (12/16), A314 (09/21) and A359 FL (08/22).

## Drivers and household residents

### Evangelos Skevofilax
Additional information: Named insured

## Outline of coverage

### 1986 Beneteau 34 Sail
Hull ID #: BEY01781A686
Propulsion type: NonPower

| | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $915 |
| Bodily Injury and Property Damage Liability | $300,000 combined single limit each accident | | |
| Fuel and Oil Spill Coverage | $1,076,000 per occurrence | | 2 |
| Coastal Navigation | 75 Nautical Miles | | included |
| **Subtotal policy premium** | | | **$917.00** |
| 2023-10 FIGA Assessment | | | 9.17 |
| **Total 12 month policy premium and fees** | | | **$926.17** |

## Premium discounts

| Policy | |
|---|---|
| 993735553 | Home Owner, Prompt Payment and Transfer |

| Driver | |
|---|---|
| Evangelos Skevofilax | Safety Course and Responsible Driver |

Form 6489 FL (06/23)


Continued

```
***************************UNITED AMERICAN LIEN & RECOVERY***************************
```

# PLAINTIFF
# EXHIBIT 7
# LIEN
# NOTICE

CITY OF MIAMI
DINNER KEY MARINA
3400 PAN AMERICAN DR

MIAMI FL 33133

RE:  Year:           1986
     Manuf:          BEY
     Hull ID:        BEY01781A686
     Customer Name:  EVANGELOS SKEVOFILAX

Date Notices Sent:      09/11/25
Case Number:            V13257
Last Day of Payment:    11/21/25

**ATTACHED ARE 2 COPIES OF THE NOTICE OF SALE OF VESSEL**

             1.        POST IN MARINA OFFICE
             2.        POST ON VESSEL

This is your confirmation letter that a lien has started on the above mentioned
vessel.

As of  09/11/25  , the balance owed is $   6,052.49  which includes our
fee of $ 725.00. The monthly and/or daily storage will continue to accrue thru
last day of payment.

If no interested parties contact our office by the last day of payment,
we will apply for the title in the marina's name.  Title will be received
by our office...within 7-10 business days from application.

JUST SOME FACTS:

1.  If any parties contact you, please refer them to our office.

"NOTICE OF NONJUDICIAL SALE OF VESSEL"
CASE #: V13257

```
-------Registered Owner------              -----Customer------
EVANGELOS MICHAEL SKEVOFILAX
3400 PAN AMERICAN DR                       EVANGELOS SKEVOFILAX
                                           250 95TH ST
MIAMI FL 33133                             SURFSIDE FL 33154


---------Lienholder----------              -------------Lienor----------
NONE                                       CITY OF MIAMI
                                           DINNER KEY MARINA
                                           3400 PAN AMERICAN DR
                                           MIAMI FL 33133
                                           305-579-6950
```

Year:  1986              Manufacturer: BEY              Reg #:  FL5679MN

Hull ID #:  BEY01781A686        DO#:                    Prop: INBOARD

Use: EXEMPT              Fuel: DIESEL

Hull: FIBERGLASS                                        Length:  36    ft

Each of you are hereby notified that the above mentioned vessel was brought in for storage/repairs at the request of
EVANGELOS SKEVOFILAX          on 10/01/24  and the above mentioned marina is in possession of and claims a lien on the vessel.

The lien claimed by the above named lienor is a result of the default of payment and is subject to enforcement pursuant to
F.S. 328.17 and unless said vessel is redeemed by payment as allowed by law.  Otherwise, the above described vessel will be
sold after 60 days to satisfy the lien.

The above mentioned vessel will be sold at public auction on 11/21/25      at 10:00 am  at the premises of United American Lien
& Recovery 3411 NW 9th Ave Suite 707 Ft Lauderdale, Florida.

Itemized Charges are as follows:

    REPAIRS/LABOR:                          $

    STORAGE AT TIME OF NOTICE:                            **PLAINTIFF**
    (MONTHLY          DAILY 350.00    )     $    5,302.49 **EXHIBIT 7A**
                                                          **LIEN NOT**
    PROFESSIONAL FEE:                       $      750.00 **ITEMIZED**

    TOTAL AMOUNT DUE:                       $    6,052.49

Prior to sale or other disposition of the vessel pursuant to this section, any interested party may pay the amount necessary to
satisfy the lien and thereby redeem and take possession of the vessel.  Upon receipt of such payment the marina shall return the
vessel to the interested party making such payment and thereafter shall have no liability to any person with respect to such vessel.

In the event of a sale, the marina may satisfy its lien from the proceeds of the sale, provided the marina's lien has priority over
all other liens on the vessel other than a prior lien perfected under the state or federal law. The lien rights of secured lienholders
are automatically transferred to the remaining proceeds of the sale.  A notice of the balance of the proceeds shall be delivered by
the marina to the owner and secured lienholder in person or by certified mail to the owners' and lienholders'last known address. If
the owner or lienholder does not claim the balance of the proceeds within 1 year after the date of sale, the proceeds shall be deemed
abandoned, and the owner or lienholder shall have no further obligation with regard to the payment of the proceeds.


*Victor Suul*
_____
Signature of Authorized Agent for Marina
Date of Notice: 09/11/25

                                          UNITED AMERICAN LIEN & RECOVERY
                                                   P.O. BOX 5823
                                             FT LAUDERDALE FLORIDA 33310
                                               PH:  (954) 563-1999
                                               FX:  (954) 563-1393

                                             LICENSED AUCTIONEERS
                                             FLAB 422, FLAU 765 & 1911

# UNITED AMERICAN LIEN & RECOVERY

PLAINTIFF

# EXHIBIT 8
# TOTAL FINES
# NOULA AND
# TINDER

DATE: _11/21/25_

RE: _V13257_

Below is the requested breakdown of charges until _11/21/25_ .

Repairs/Labor: _Ø_

Storage/Dockage: _30152.49_

Lien Fee: _750.00_

TOTAL: _30,902.49_

The above figures are good until _11/21_ after that date the charges will increase by _N/A_ per month or _N/A_ per day.

ALL PAYMENTS MUST BE PAID IN CASH OR CASHIER CHECK ONLY IN OUR OFFICE.  CASHIER CHECK MUST BE MADE PAYABLE TO UNITED AMERICAN LIEN & RECOVERY.  OUR TAX ID# IS 592785008.

***ANY LOAD CHARGES ARE NOT INCLUDED IN THE ABOVE TOTALS, THEY MUST BE PAID DIRECTLY TO THE MARINA AT THE TIME THE VESSEL IS PICKED UP

*"Established in 1984"*

(954) 563-1999

UNITED AMERICAN LIEN    P.O. BOX 5823    FT. LAUDERDALE, FL 33310
BRANCHES: FLORIDA & NEW JERSEY

EXHIBIT A

PLAINTIFF
EXHIBIT 9 TENDER REMOVED FROM WATER, DISASSEMBLED, AND TRASHED





**evan skev <evantech@gmail.com>**

---

## Dinner Key Marina: Payment Overdue

**Pino, Pablo** <PPino@miamigov.com>                                    Thu, Sep 19, 2024 at 10:44 AM
To: "evantech@gmail.com" <evantech@gmail.com>
Cc: "Bustamante, Alex" <AlexBustamante@miamigov.com>, "Nesbitt, Thomas" <TNesbitt@miamigov.com>, "Quinones, Guillermo" <GQuinones@miamigov.com>

PLAINTIFF EXHIBIT 10
ACCESS TO PROPERTY DENIED
WITHOUT LEGAL BASIS
9/19/2024

Good morning Skev,

Due to payment not being received for your September dockage, we can not activate your key until payment has been made. In reviewing your account, the outstanding balance of $1662.78 has nit been met.

We do apologize for any inconvenience though until this payment has been received we cannot active your access card.


Thank you



**Thank you,**


**Pablo Pino**

**Marinas Supervisor**

**3400 Pan American Drive**

**Miami, FL 33133**

**305-329-4755**

ppino@miamigov.com


**From:** Evan Skev <evantech@gmail.com>
**Sent:** Thursday, September 19, 2024 10:38 AM
**To:** Bustamante, Alex <AlexBustamante@miamigov.com>
**Cc:** E Skev <skev.evan@gmail.com>; Quinones, Guillermo <GQuinones@miamigov.com>; Nesbitt, Thomas <TNesbitt@miamigov.com>; Pino, Pablo <PPino@miamigov.com>; Lutton, Donald <dlutton@miamigov.com>
**Subject:** Re: Dinner Key Marina: Payment Overdue

---

**CAUTION:** This is an email from an external source. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good morning, may I have my key card activated again please

Thank you

Evan Skev

[Quoted text hidden]

 **Gmail**

evan skev <evantech@gmail.com>

---

## Written Permission Requested to Retrieve Personal Items

**VICKI HURD** <unitamer@bellsouth.net>                                   Mon, Nov 24, 2025 at 9:48 AM
To: Evan Skev <evantech@gmail.com>

The public sale was completed at 10:15 on 11/21.

Thank you!

Vicki Hurd
Office Manager

United American Lien & Recovery
3411 NW 9th Ave #707
Ft Lauderdale, FL 33309
954-563-1999

PLAINTIFF
EXHIBIT 11
SALE OF NOULA
COMPLETED

[Quoted text hidden]



## Statement Of Account

PLAINTIFF
# EXHIBIT 13
# LATE FEES
# ASSESSED

**ALL Billing Agents**

UAL Skevofilax Evangelos
3400 Pan American dr.
Miami  Fl  33133

| | |
|---|---|
| Customer: | UAL Skevofilax Evangelos |
| Customer ID: | 141027 |
| From Date: | 11/6/2023 |
| To Date: | 10/29/2025 |

| Opening Balance: | 0.00 |
|---|---|

| Date | Detail | Reference | Debit | Credit | Amount |
|---|---|---|---|---|---|
| 10/29/2025 | RR 06_075 8/26/2025-9/15/2025 Skev Dinghy - 10ft +... | 44660 | | 1,981.22 | -1,981.22 |
| | Dockage (DKM) - Monthly 09 - Tax:  ST-DK @ 7% 06_075 | | | | |
| | Dockage (DKM) - Monthly 09 - Tax:  ST-DK @ 7% 06_075 | | | | |
| 10/29/2025 | RR 06_075 9/30/2025-10/29/2025 Noula - 37ft | 401585 | 5,938.50 | | 3,957.28 |
| | Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7% 06_075 | | | | |
| 10/11/2025 | Finance Charge | 399807 | 709.15 | | 4,666.43 |
| 10/11/2025 | Finance Charge | 400179 | 26.74 | | 4,693.17 |
| 10/1/2025 | RR Dinghy Impound 9/21/2025-9/29/2025 Skev Dinghy - 10ft +... | 398712 | 3,226.05 | | 7,919.22 |
| | Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7% Dinghy Impound | | | | |
| | Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7% 06_075 | | | | |
| 9/20/2025 | RR 06_075 8/26/2025-9/15/2025 Skev Dinghy - 10ft +... | 398537 | 3,415.02 | | 11,334.24 |
| | Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7% Dinghy Impound | | | | |
| | Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7% 06_075 | | | | |
| | Dockage (DKM) - Monthly 09 - Tax: ST-DK @ 7% 06_075 | | | | |
| 9/16/2025 | RR Dinghy Impound 9/10/2025-9/16/2025 Skev Dinghy - 10ft +... | 398488 | 2,509.15 | | 13,843.39 |
| | Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7% Dinghy Impound | | | | |
| | Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7% 06_075 | | | | |
| 9/14/2025 | Finance Charge | 397901 | 239.66 | | 14,083.05 |
| 9/14/2025 | Finance Charge | 398249 | 25.47 | | 14,108.52 |
| 9/6/2025 | RR Dinghy Impound 9/6/2025-9/9/2025 Skev Dinghy - 10ft +... | 397788 | 1,433.80 | | 15,542.32 |
| | Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7% Dinghy Impound | | | | |
| | Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7% 06_075 | | | | |
| 9/5/2025 | RR Dinghy Impound 9/5/2025-9/5/2025 Skev Dinghy - 10ft +... | 397770 | 358.45 | | 15,900.77 |
| | Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7% Dinghy Impound | | | | |
| | Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7% 06_075 | | | | |
| 9/4/2025 | Invoice, United American Lien Processing Fee. United American Lien Processing Fee. | 397754 | 650.00 | | 16,550.77 |

 Gmail

**evan skev <evantech@gmail.com>**

## Request for Account Statements

**Nesbitt, Thomas** <TNesbitt@miamigov.com>                                       Wed, Oct 29, 2025 at 9:23 AM
To: "evantech@gmail.com" <evantech@gmail.com>
Cc: "Quinones, Guillermo" <GQuinones@miamigov.com>, "Bustamante, Alex" <AlexBustamante@miamigov.com>, "Nesbitt, Thomas" <TNesbitt@miamigov.com>, "Pino, Pablo" <PPino@miamigov.com>

Good morning Mr. Skevofilax,


Attached is a current statement of your account.

Access to your impounded vessel and to remove unaffixed property has been denied. You were given multiple opportunities to get essential items such as medication and clothes from the vessel when it was first impounded.

PLAINTIFF

EXHIBIT 14A
ACCESS TO SEIZED
PROPERTY DENIED

Thank you,


Jocko Nesbitt

City of Miami
Marinas Manager Assistant
3400 Pan American Dr.
Miami, FL 33133
Tel: 305-329-4755



**From:** Evan Skev <evantech@gmail.com>
**Sent:** Tuesday, October 28, 2025 4:12 PM
**To:** Quinones, Guillermo <GQuinones@miamigov.com>; Nesbitt, Thomas <TNesbitt@miamigov.com>
**Subject:** Re: Request for Account Statements

 Gmail

**evan skev <evantech@gmail.com>**

---

## Request for Account Statements

---

**Evan Skev** <evantech@gmail.com>                                      Tue, Oct 28, 2025 at 4:11 PM
Reply-To: evantech@gmail.com
To: "Quinones, Guillermo" <GQuinones@miamigov.com>, "Nesbitt, Thomas" <TNesbitt@miamigov.com>

   4th and Final request for access, inspection, removal of unaffixed property, and a full,
   detailed statement of account dating to November 5, 2023


   [Quoted text hidden]


                              PLAINTIFF
                              EXHIBIT 14B
                              PREVIOUS REQUESTS IGNORED

PLAINTIFF
EXHIBIT 15

## LIEN NOTICE CERTIFIED MAIL
## EXHIBIT 15 MAILED SEPTEMBER 15 2025



*13257*

**CERTIFIED MAIL®**

**ESTD ★ 1984**

**UNITED AMERICAN LIEN**
★ ★ ★
PO BOX 5823
FT LAUDERDALE, FL 33310

7019 1640 0002 0488 2736

**CPU**

U.S. POSTAGE IM.
**$10.48**
FCML    RDC 99
Orig: 33431
Dest: 33133
09/15/25
2000052412

Evangelos Michael Skevofilax
3400 Pan American Dr
Miami   FL   33133

**RETURN RECEIPT REQUESTED**

EXHIBIT A

33133-550300

# SUGGESTED NOTICE OF NONJUDICIAL SALE FLHSMV

NOTICE OF NONJUDICIAL SALE OF A VESSEL

## PLAINTIFF EXHIBIT 17

DATE _____

TO:  REGISTERED OWNER                                           LIENHOLDER

NAME _____        NAME _____

ADDRESS _____        ADDRESS _____

CITY, STATE, ZIP _____        CITY, STATE, ZIP _____

NAMES AND ADDRESSES OF ANY OTHER PERSONS OR ANY OTHER LIENHOLDERS, CLAIMING AN INTEREST IN THE VESSEL:

Name _____

ADDRESS _____        ADDRESS _____

CITY, STATE, ZIP _____        CITY, STATE, ZIP _____

LIENOR (NAME OF MARINA)                    DESCRIPTION OF VESSEL

NAME _____        YEAR _____ MAKE _____ FT

                                          V _____ HULL # _____

ADDRESS _____        LOCATION OF VESSEL

CITY, STATE, ZIP _____        _____

TELEPHONE _____       _____

Name _____        _____

EACH OF YOU ARE HEREBY NOTIFIED THAT THE ABOVE-DESCRIBED VESSEL WAS BROUGHT IN FOR STORAGE/REPAIRS AT THE REQUEST

OF _____ ON _____ AND THE ABOVE-NAMED MARINA

IS IN POSSESSION OF AND CLAIMS A LIEN ON THE ABOVE-DESCRIBED VESSEL FOR STORAGE CHARGES ACCUMULATED IN THE AMOUNT OF:

(TOTAL) $ _____ ITEMIZED CHARGES

(REPAIR CHARGES) $ _____ (TOTAL STORAGE CHARGES) $ _____ , FOR _____ DAYS, AT $ _____

PER DAY, (RECOVERY CHARGES, IF APPLICABLE) $ _____ AND (ADMINISTRATIVE FEES) _____

THE STORAGE CHARGES WILL CONTINUE TO ACCUMULATE AT THE RATE OF $ _____ PER DAY.

THE LIEN CLAIMED ABOVE IS A RESULT OF THE DEFAULT OF PAYMENT TO THE MARINA HANDLING OF AND IS SUBJECT TO ENFORCEMENT PURSUANT TO SECTION 328.17 FLORIDA STATUTES, UNLESS SAID VESSEL IS REDEEMED FROM THE MARINA BY PAYMENT AS ALLOWED BY LAW. OTHERWISE, THE ABOVE-DESCRIBED VESSEL WILL BE SOLD AFTER CLAIMS TO SATISFY THE LIEN.

A SALE IS TO BE HELD AT _____

_____ MARINA ON THE _____ DAY OF _____ , 20_____

### STATEMENT OF OWNER(S) RIGHTS

BEFORE ANY SALE OR OTHER DISPOSITION OF THE VESSEL PURSUANT TO THIS SECTION, THE OWNER OF THE LIENHOLDER MAY PAY THE AMOUNT NECESSARY TO SATISFY THE LIEN AND THE REASONABLE EXPENSES AND LATE PAYMENT INTEREST INCURRED UNDER THIS SECTION AND THEREBY REDEEM AND TAKE POSSESSION OF THE VESSEL. UPON RECEIPT OF SUCH PAYMENT, THE MARINA SHALL RETURN THE PROPERTY TO THE OWNER OR LIEN HOLDER NOT BEING OWED SUCH PAYMENT AND THE REALTED SHALL HAVE NO LIABILITY TO ANY PERSON WITH RESPECT TO SUCH VESSEL.

IN THE EVENT OF A SALE UNDER THIS SECTION, THE MARINA MAY SATISFY ITS LIEN FROM THE PROCEEDS OF THE SALE, PROVIDED THE MARINA'S LIEN HAS PRIORITY OVER ALL OTHER LIENS ON THE VESSEL OTHER THAN A PRIOR LIEN PERFECTED UNDER THE STATE OR FEDERAL LAW. THE LIEN RIGHTS OF SECURED LIENHOLDERS ARE AUTOMATICALLY TRANSFERRED TO THE REMAINING PROCEEDS OF THE SALE. THE BALANCE, IF ANY, SHALL BE HELD BY THE MARINA FOR DELIVERY ON DEMAND TO THE OWNER. A NOTICE OF ANY BALANCE SHALL BE DELIVERED BY THE MARINA TO THE OWNER IN PERSON OR BY CERTIFIED MAIL TO THE LAST KNOWN ADDRESS OF THE OWNER. IF THE OWNER DOES NOT CLAIM THE BALANCE OF THE PROCEEDS WITHIN 1 YEAR AFTER THE DATE OF SALE, THE PROCEEDS SHALL BE DEEMED ABANDONED AND THE MARINA SHALL HAVE NO FURTHER OBLIGATION WITH REGARD TO THE PAYMENT OF THE BALANCE. IN THE EVENT THAT THE MARINA'S LIEN DOES NOT HAVE PRIORITY OVER ALL OTHER LIENS, THE SALE PROCEEDS SHALL BE HELD FOR THE BENEFIT OF THE HOLDER OF THOSE LIENS HAVING PRIORITY. A NOTICE OF THE AMOUNT OF THE SALE PROCEEDS SHALL BE DELIVERED BY THE MARINA TO THE OWNER OR SECURED LIENHOLDER IN PERSON OR BY CERTIFIED MAIL TO THE OWNER OR THE SECURED LIENHOLDER'S LAST KNOWN ADDRESS. IF THE OWNER OR THE SECURED LIENHOLDER DOES NOT CLAIM THE SALE PROCEEDS WITHIN 1 YEAR AFTER THE DATE OF SALE, THE PROCEEDS SHALL BE DEEMED ABANDONED, AND THE OWNER OR THE SECURED LIENHOLDER SHALL HAVE NO FURTHER OBLIGATION WITH REGARD TO THE PAYMENT OF THE PROCEEDS.

DATED THIS _____ DAY OF _____ , 20_____ , MARINA _____

_____ (SIGNATURE OF AUTHORIZED AGENT)

**This is a suggested not a prescribed form.**

Revision Date:  07/10/18                                        Page 10 of 13
Effective Date:  Immediately



PLAINTIFF

EXHIBIT 18
NOTICES
POSTED
INSTEAD OF
IMPOUND

Please come to the office and get your RED DINGHY TAG As the Yellow tag is no longer valid Thank you



EXHIBIT 19
NOTICES
POSTED
INSTEAD OF
IMPOUND

PLAINTIFF



EXHIBIT 20
NOTICES
POSTED
INSTEAD OF
IMPOUND

PLAINTIFF 20



PLAINTIFF

EXHIBIT 21
NOTICES
POSTED
INSTEAD OF
IMPOUND



PLAINTIFF

EXHIBIT 22
NOTICES
POSTED
INSTEAD OF
IMPOUND

EXHIBIT A



# EXHIBIT 25

## PLAINTIFF

NOTICE POSTED ON
UNLAWFULLY DOCKED
REFERENCING §  50-428



PLAINTIFF

EXHIBIT 26
PROPER
CONSPICUOUS
NOTICE



PLAINTIFF'S

EXHIBIT 27
TENDER
FUEL TANK
INVERTED

EXHIBIT A

PLAINTIFF
EXHIBIT 28
TENDER
FILLING WITH
RAIN -
ACCESS
DENIED



► **Dinner Key Boating &**

**Sailing Community Page**

Mar 15 · 👥

PLAINTIFF

EXHIBIT 30
UNLAWFULLY DOCKED
GIVEN NOTICE AND
TIME TO CURE

Heads up.  New warnings posted on dinghies:




Filing # 236939880 E-Filed 12/03/2025 02:21:20 PM
Filing # 236494968 E-Filed 11/25/2025 08:13:25 AM

IN THE CIRCUIT/COUNTY COURT OF THE __11TH__ JUDICIAL CIRCUIT
IN AND FOR __MIAMI-DADE__ COUNTY, FLORIDA

__EVANGELOS SKEVOFILAX__                      CASE NO: __2025-023258-CA-01__
Plaintiff/Petitioner or In the Interest of
__CITY OF MIAMI et al__          vs.

Defendant//Respondent

## APPLICATION FOR DETERMINATION OF CIVIL INDIGENT STATUS

**Notice to Applicant:** If you qualify for civil indigence, the filing and summons fees are waived; other costs are not waived.

**1. I have __0__ dependents.** *(Include only those persons you list on your U.S. Income tax return.)*
Are you Married?...Yes ✓No   Does your Spouse Work?...Yes No   Annual Spouse Income? $ __NA__

**2. I have a net income of $__2000__** paid ( ) weekly ( ) every two weeks ( ) semi-monthly ✓ monthly ( ) yearly ( ) other __NA__ .
*(Net income is your total income including salary, wages, bonuses, commissions, allowances, overtime, tips and similar payments, **minus** deductions required by law and other court-ordered payments such as child support.)*

**3. I have other income** paid ( ) weekly ( ) every two weeks  ( ) semi-monthly  ( ) monthly  ( ) yearly  ( ) other __NA__ .
*(Circle "Yes" and fill in the amount if you have this kind of income, otherwise circle "No")*

| | | | | | |
|---|---|---|---|---|---|
| Second Job | Yes $ | No | Veterans' benefits | Yes $ | No |
| Social Security benefits | | | Workers compensation | Yes $ | No |
| For you | Yes $ | No | Income from absent family members | Yes $ | No |
| For child(ren) | Yes $ | No | Stocks/bonds | Yes $ | No |
| Unemployment compensation | Yes $ | No | Rental income | Yes $ | No |
| Union payments | Yes $ | No | Dividends or interest | Yes $ | No |
| Retirement/pensions | Yes $ | No | Other kinds of income not on the list | Yes $ | No |
| Trusts | Yes $ | No | Gifts | Yes $ | No |

I understand that I will be required to make payments for costs to the clerk in accordance with §57.082(5), Florida Statutes, as provided by law, although I may agree to pay more if I choose to do so.

**4. I have other assets:** *(Circle "yes" and fill in the value of the property, otherwise circle "No")*

| | | | | | |
|---|---|---|---|---|---|
| Cash | Yes $ 33 | No | Savings account | Yes $0 | No |
| Bank account(s) | Yes $ 166 | No | Stocks/bonds | Yes $ 0 | No |
| Certificates of deposit or | | | Homestead Real Property* | Yes $ 0 | No |
| Money market accounts | Yes $ 0 | No | Motor Vehicle* | Yes $ 0 | No |
| Boats* | Yes $ 4500 | No | Non-homestead real property/real estate* | Yes $ 0 | No |
| Boat was seized and sold but still titled in my name | | | Other assets* | Yes $ 0 | No |

Check one: I ( ) DO (✓) DO NOT expect to receive more assets in the near future. The asset is __NA__ .

**5. I have total liabilities and debts of $__65045__** as follows: Motor Vehicle $ __0__ , Home $ __0__ , Boat
$ __0__ , Non-homestead Real Property $ __0__ , Child Support paid direct $ __0__ , Credit Cards $ __2500__ ,
Medical Bills $ __1400__ , Cost of medicines (monthly) $ __55__ , Other $ __61045__ .

**6. I have a private lawyer in this case** ......... Yes   ✓ No

A person who knowingly provides false information to the clerk or the court in seeking a determination of indigent status under s. 57.082, F.S. commits a misdemeanor of the first degree, punishable as provided in s.775.082, F.S. or s. 775.083, F.S. I attest that the information I have provided on this application is true and accurate to the best of my knowledge.

Signed on __NOVEMBER 24__ , 20 __25__ .

| __1970__ | __8000__ | Signature of Applicant for Indigent Status |
|---|---|---|
| Year of Birth | Last 4 digits of Driver License or ID Number | Print Full Legal Name EVANGELOS SKEVOFILAX |

Email address: __skev.evan@gmail.com__          Phone Number/s: __305-339-2568__

__3400 Pan American Drive, Miami, FL 33133__
Address: Street, City, State, Zip Code

This form was completed with the assistance of: _____
Clerk/Deputy Clerk/Other authorized person.

### CLERK'S DETERMINATION

Based on the information in this Application, I have determined the applicant to be (✓) Indigent ( ) Not Indigent, according to s. 57.082, F.S.
Dated on __NOV 2 5 2025__ , 20 __.

Clerk of the Circuit Court
By _____ Deputy Clerk

**APPLICANTS FOUND NOT TO BE INDIGENT MAY SEEK REVIEW BY A JUDGE BY ASKING FOR A HEARING TIME. THERE IS NO FEE FOR THIS REVIEW.**
Sign here if you want the judge to review the clerk's decision _____

Filing # 236939880 E-Filed 12/03/2025 02:21:20 PM

☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.
☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION ☒ CIVIL ☐ DISTRICTS ☐ OTHER | SUMMONS 20 DAY CORPORATE SERVICE (a) GENERAL FORMS | CASE NUMBER 2025-023-258-CA-01 |
|---|---|---|
| PLAINTIFF(S) EVANGELOS SKEVOFILAX | VS.  DEFENDANT(S) CITY OF MIAMI | SERVICE |

THE STATE OF FLORIDA:

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s): CITY OF MIAMI CLERK OF COURT

3500 PAN AMERICAN DR

MIAMI FL 33133

Each defendant is required to serve written defense to the complaint or petition on
Plaintiff's Attorney: EVANGELOS SKEVOFILAX, pro se

whose address is: 3400 PAN AMERICAN DR MIAMI FL 33133

SERVED
DATE 12/5/25
TIME
BY
BADGE #
MIAMI-DADE POLICE DEPARTMENT
OFFICE OF THE
METROPOLITAN SHERIFF
COURT SERVICES BUREAU
MIAMI-DADE COUNTY, FLORIDA

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to, 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| JUAN FERNANDEZ-BARQUIN CLERK OF THE COURT AND COMPTROLLER MIAMI-DADE COUNTY CIRCUIT AND COUNTY COURTS | BY: _____ wasoto DEPUTY CLERK | DATE 12/5/2025 |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@jud11.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314  Rev. 06/23                                                      Clerk's web address: www.miamidadeclerk.gov

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2025-023258-CA-01

SECTION: CA-08

JUDGE: Robert T. Watson

**Evangelos Skevofilax,**

      Plaintiff, pro se

vs.

**The City of Miami,**

**United American Lien And Recovery,**

      Defendants.

_____/

<u>**FIRST AMENDED COMPLAINT**</u>

## INTRODUCTION

1.      The City of Miami ("City"), via the acts of final policymakers and their staff, created, implemented, and executed a policy of harassment, intimidation, and coercion, culminating in the unconscionable: a series of ongoing, direct and proximate adverse actions that constitute violations of code and statute, and deprive Plaintiff of his constitutionally protected liberties and interests.

2.      The City impounded Plaintiff's yacht tender ("Tender"), his sole conveyance between shore and domicile, terminated Plaintiff's Moorage Agreement ("Contract"), expelled him from Dinner Key Marina ("DKM"), and impounded the sailing yacht that serves as his domicile ("Noula").

3.      The City's thirst for revenue was partial motivation for adverse action against Plaintiff; aggressive collections actions, the imposition of thousands of dollars in fines that serve no remedial purpose, and the levy of late fees disguised as "finance charges" that constitute a material breach of contract, as described herein.

4.      In its zeal to generate revenue, the City assessed more than $30,000.00 in fines disguised as "storage fees," preventing Plaintiff from reclaiming Tender, and depriving him of his most valued possessions: his home and his property, along with the liberty interests, protected speech interests, property interests, and due process interests granted by the Constitution of the State of Florida and the Constitution of the United States.

5.      To quench their thirst for plenary power, Defendants disregard law and constitution, create policy on a whim and apply it retroactively, and in this case, seized Plaintiff's property and home without legal or contractual basis, acts that shock the conscience.

6.      The City's imposition of "storage fees" prevented Plaintiff from reclaiming his lawful property. The prolonged, unlawful possession of Noula has so diminished her value as to rise to the level of a taking and Tender was removed from the water and relegated to the dumpster area, in violation of code, statute, and, again, Plaintiff's constitutionally protected liberties and interests.

7.      The subsequent filing of a lien based on fictional "storage fees," and the falsification of said lien by the third-party towing and storage company contracted by the City, United American Lien and Towing ("UAL"), led to Plaintiff's home being sold at auction on November 21, 2025.

2

**Verified Complaint**

8.      As of the date of this complaint, the City's final policymakers have been unable to provide legal or contractual bases for their actions. In response to a request for clarification from District Two Commissioner Damian Pardo's office, Guillermo Quinones ("Quinones"), the Manager of all City marina properties, was unable to cite law or contract as bases for his actions, as described in his own words herein.

9.      At the time the City commenced its campaign of retaliation against Plaintiff, Tender was lawfully docked; neither a safety hazard nor a navigation hazard, its statutorily required registration not disputed by the City. Tender was therefore not subject to punitive action by any authority.

10.     On the day the City seized her, Noula was lawfully moored; neither a safety hazard nor a navigation hazard; not abandoned; causing no harm to the environment; her statutorily required registration sticker displayed in plain view on her bow and her contractually required insurance valid without interruption since arrival at DKM two years prior.

11.     In their own words, DKM management and staff describe Plaintiff as a "liveaboard" DKM customer. Defendants are and were aware that Noula was Plaintiff's home. Defendants are and were aware that Tender was Plaintiff's sole method of conveyance from shore to his home. The acts of the City's final policymakers described herein are unconscionable.

### Parties

12.     Plaintiff Evangelos Skevofilax, of 3400 Pan American Drive, a ten-year resident of Miami-Dade County and two-year resident of Dinner Key Marina, is a DKM Mooring Facility ("DKMF") licensee and the lawful owner of the vessels described herein.

13.     Defendant City of Miami is a political subdivision of the State of Florida, therefore subject to this court's jurisdiction. The City is a government entity subject to suit under 42 U.S.C. § 1983. On all occasions relevant to the factual allegations contained in this complaint, the City owned, operated, staffed, and managed DKM and had the responsibility of ensuring legal compliance and implementation of procedures, practices, and customs at DKM and across all City marinas.

14.     Defendant United American Lien and Recovery ("UAL") is a towing and storage company located at POB 5823, Fort Lauderdale, Florida, 33310, according to their website.

3

## VENUE, JURISDICTION, AND LAW

15.     This is an action for damages of more than $50,000.00, exclusive of attorney's fees, costs and interest, and a civil rights claim pursuant to 42 U.S.C. § 1983.

16.     Pursuant to Fla. Stat. § 47.011, venue for this action lies properly in the Eleventh Judicial Circuit as the parties are located within, and the causes of action accrued and continue to accrue within Miami-Dade County.

17.     Each of the 42 U.S.C. § 1983 actions set forth in this complaint was taken pursuant to either a City custom, policy, or practice, or to a decision made or an action taken by an official or employee of the City with final policymaking authority.

## BACKGROUND

18.     Plaintiff is a two-year resident of DKM. Noula is a sailing vessel equipped with full living accommodations, including a galley. Tender is an inflatable vessel satisfying "vessel equipment requirements" of City of Miami, Florida, Municipal Code § 50-423.

19.     Plaintiff arrived at DKM in November 2023 and commenced preparations for a May 2024 research expedition to the Dodecanese Islands. From November 5, 2023, until October 1, 2024, Noula occupied Slip 44 on Pier 7.

20.     On July 7, 2024, Plaintiff suffered a leg injury and underwent surgery the following month. The implications to Plaintiff's health and finances were significant, leading Plaintiff to cancel his voyage and resume preparations for professional school.

21.     During his recovery from injury and surgery, Plaintiff accrued a past-due balance of $3,418.73, equal to two months of slip fees plus "finance charges." Negotiations for payment of the past-due balance were held, leading Defendants to agree to the creation of a payment plan that included "arrest" of Noula by "chaining" her to the dock with a bicycle lock. Impoundment was neither suggested nor discussed by the City's Marinas Manager at the time.

22.     On October 2, 2024, Plaintiff departed Slip 44 and relocated Noula to Mooring Ball 56 ("MB56") in the DKMF, approximately one and one-half nautical miles offshore. On this day, Tender became Plaintiff's sole method of conveyance between shore and Noula.

23.     Plaintiff pays $424.79 monthly as consideration for the right to moor Noula at MB56, one unassigned parking space on DKM property, the legal right to dock Tender at the DKM dinghy dock, and the option to use the mooring field charter (Shuttle) for travel between shore and DKMF.

4

**Verified Complaint**

24.     The following amenities are available to DKM customers: a public bathroom, public Wi-Fi, and access to a coin-operated laundry facility and a small, sparsely furnished community lounge.

25.     The Shuttle is piloted by DKM employees during the four-mile round trip between shore and mooring field, four times daily, beginning at 9:00 a.m. with a final charter at 4:00 p.m.

26.     Between 4:00 p.m. and 9:00 a.m., vessel owners are responsible for their own transport between shore and mooring field.

27.     It is unclear whether the Shuttle complies with statutory requirements for vessel registration. It is unclear whether Shuttle is compliant with the Code of Federal Regulations (CFR).

28.     For the reasons stated in Paragraph 28, Plaintiff abides by United States Coast Guard ("USCG") recommendation to refrain from boarding passenger vessels that are noncompliant with the CFR.

29.     Plaintiff has no history of violating policy or law during his two-year residency at DKM.

30.     Plaintiff's marina account balance was $0.00 on July 31, 2025, his $424.79 monthly payment was late on August 2, 2025, and his monthly payment was delinquent on August 11, 2025. A "finance charge" was assessed, as it has been for delinquent payments since Plaintiffs arrival at DKM in November 2003.

31.     The City is legally and contractually obligated to follow a specific timeline and clear procedure in the event a moorage fee becomes delinquent.

## FACTUAL ALLEGATIONS

32.     On August 20, 2025, at approximately 2:00 p.m., Pablo Pino ("Pino"), a City employee and DKM Supervisor, stopped Plaintiff from exiting the DKM office and attempted to coerce Plaintiff into paying the monthly moorage fee. Upon hearing Plaintiff assert his statutory right to privacy and to freedom from harassment related to his debt to the City, Pino became irate. Pino gestured and yelled loudly to City employee Hyron Figueredo ("Figueredo") to revoke Plaintiff's parking pass, and "access to amenities." Plaintiff was able to depart without further incident. This marked the commencement of the City's adverse action against Plaintiff.

33. On August 21, 2025, at 8:00 a.m., at the DKM dinghy dock, Thomas Nesbitt ("Nesbitt"), a City employee and DKM Supervisor, attempted to coerce Plaintiff regarding the monthly moorage fee. Plaintiff again asserted his right to privacy and freedom from harassment and Nesbitt responded, "Well I don't see anyone around." Nesbitt ordered Plaintiff to remove Tender from the DKM dinghy dock, stating "access to amenities" had been revoked. Plaintiff requested to remove Tender upon his return from work and Nesbitt agreed to allow Tender to remain at dock until 5:30 p.m. Plaintiff departed with the reasonable expectation that Tender would be there when he returned from work.

34. On August 21, 2025, at 1:00 p.m., Pino notified Plaintiff via email of the impound of Tender, preventing Plaintiff from reaching home from shore. Pino further stated the City would not be renewing Plaintiff's Contract and ordered him to depart DKM by August 31, 2025. Quinones, Nesbitt, and Alex Bustamante ("Bustamante") were copied on this and future emails.

35. On August 25, 2025, Nesbitt stated to Plaintiff, "we were just gonna [sic] have you come and pay and release it," indicating the seizure of Tender was also intended to coerce Plaintiff.

36. On August 29, 2025, Figueredo and an unknown DKM office staff member refused Plaintiff access to Tender during a week of heavy rain, thereby allowing Tender to fill with water.

37. On September 3, 2025, DKM impounded Noula and subsequently filed a nonjudicial sale lien, in violation of contract, code, and Florida and federal constitution.

38. Over the next two months, Plaintiff contacted District Two Commissioner Damian Pardo's office, the City Manager's office, Director of the Department of Real Estate, Andrew Frey, Nesbitt, and Quinones, attempting to assert his lawful and civil rights.

39. When contacted via email by District Two Commissioner Pardo's office, Quinones was unable to articulate a legal or contractual basis for the impound and sale of Noula and the impound and destruction of Tender.

40. Quinones bases for property seizure, excessive fines, termination of contract, and destruction of Plaintiff's property was limited to claiming Tender was seized because Noula's statutorily required yacht registration had expired. Quinones further revealed he had created policy post-seizure and applied it to Plaintiff retroactively, claiming Plaintiff's driver license was

6

expired and that Plaintiff was expelled from DKM due to "late payments," citing five payments, two of which were not delinquent, and none of which constituted a breach of contract.

41.     On or about October 31, 2025, the City removed Tender from the water, discarded Plaintiff's personal belongings, removed the motor, and discarded belongings and Tender in the dumpster corral.

42.     The City neglected to notify law enforcement of Tender's impound or destruction and neglected to notify Plaintiff of Tender's destruction.

43.     In its zeal to generate revenue, the City imposed over $30,000.00 in fines for vessels unlawfully impounded. On the day the City commenced the imposition of fines, Plaintiff was not in breach of Contract.

44.     The fines serve no remedial purpose but prevented Plaintiff from paying his marina fees and claiming his property in August 2025.

45.     On September 4, 2025, Nesbitt informed Plaintiff via email of the filing of a nonjudicial sale lien on Noula. According to Vicki Hurd ("Hurd") of UAL, the sale of Noula was completed on November 21, 2025.

46.     The seizures, Contract termination, and destruction of Tender  constitute material breaches of contract, violations of Florida statute and Miami municipal code, and deprive Plaintiff of his constitutionally protected liberties, speech interests, property interests, and due process interests.

47.     Plaintiff's vessel registration and insurance have been valid without interruption since August 2023. Relevance notwithstanding, Plaintiff's driver license expired two weeks after major surgery in August 2024, and was not renewed for several months, as Plaintiff was physically unable to operate a motor vehicle.

48.     An expired driver license is a curious response to a request for a legal basis for seizures.

49.     Nesbitt and Figueredo denied access to Tender and Noula on five separate occasions, breaching Defendants' duty of care and allowing Plaintiff's property to become partially submerged from heavy rain.

50.     UAL supplied a lien notice that did not meet statutory requirements. The notice was unreadable, printed in 8pt font and failing to provide the itemization required by statute.

7

**Verified Complaint**

51.    The lien notice sent via USPS Certified Mail was dated September 15, 2025. The "Date Notices Sent" was recorded as September 11, 2025.

52.    The City has a history of depriving Plaintiff of his constitutionally protected liberties, property interests, and due process interests, Quinones and Pino having denied Plaintiff access to his vessel in September 2024 without legal or contractual basis.

## CAUSES OF ACTION
## COUNT I

### BREACH OF CONTRACT

53.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

54.    As described in paragraph 33, Nesbitt ordered Plaintiff to remove Tender from the DKM dinghy dock. Plaintiff requested and Nesbitt agreed to allow Tender to remain at the dinghy dock until 5:30 p.m. The City breached contract when it impounded Plaintiff's Tender at 1:00 p.m.

55.    The legality of the City's removal order notwithstanding, the seizure of Tender prior to the agreed-upon time of removal constitutes a material breach of contract.

56.    As a direct result of the City's breach of contract, Plaintiff was harmed.

Plaintiff requests judgment in his favor and against the City in the form of:

    a.  damages including, but not limited to, compensatory damages, consequential damages, tangible damages, intangible damages, and loss of use, inclusive of pre- and post-judgment interest;
    b.  an order compelling the City to rescind fines and return Plaintiff's personal belongings and outboard motor;
    c.  an injunction compelling the City's final policymakers to rescind longstanding policy of unlawful property seizures;
    d.  an injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his lawful rights; and
    e.  granting any other such relief as the Court deems just and proper.

8

## COUNT II

## BREACH OF CONTRACT

### Transient Moorage Agreement, Clause 5

57.     Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

58.     As described in paragraph 34, on August 21, 2025, Defendants notified Plaintiff via email of the termination of Contract and expulsion from marina. (Exhibit 1)

59.     The Notice Provision in Clause 5 of the Contract is clear regarding the City's obligation to provide prior written notice of termination. (Exhibit 4)

60.     The City's notice of termination via email is a failure to fulfill Clause 5 of the Contract and constitutes a material breach of contract.

61.     The City's failure to provide fifteen days prior notice of termination is a failure to fulfill the contractual obligations stipulated in Clause 5 and constitutes a material breach of contract.

62.     As a direct result of the City's breach of contract, Plaintiff was harmed.

Plaintiff requests judgment in his favor and against the City in the form of:

a.   invalidation of Contract termination;

b.   an injunction barring the City from expelling Plaintiff from any City-owned marina without legitimate cause;

c.   damages including, but not limited to, compensatory damages, consequential damages, tangible damages, intangible damages, loss of use, and pre- and post-judgment interest;

d.   an order compelling the City to rescind fines and return Plaintiff's personal belongings and outboard motor;

e.   an injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his lawful rights; and

f.   granting any other such relief as the Court deems just and proper.

9

**Verified Complaint**

# COUNT III

## BREACH OF CONTRACT

### Transient Moorage Agreement, Clause 6

63.     Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

64.     Clause 6 of Plaintiff's Contract states unambiguously, "OWNER agrees that in the event this Agreement is terminated [...], OWNER will remove his/her vessel from the facility within five days of termination." (Exhibit 4)

65.     Plaintiff's Contract was terminated effective August 31, 2025.

66.     As described in paragraph 37, Defendants seized Noula on September 3, 2025. (Exhibit 2)

67.     Clause 6 of the Contract is clear regarding Plaintiff's contractual right to a five-day grace period for the removal of his vessel.

68.     The City's seizure of Noula is a failure to fulfill contractual obligations stipulated in Clause 6 of the Contract and constitutes a material breach of contract.

69.     As a direct result of the City's breach of contract, Plaintiff was harmed.

Plaintiff requests judgment in his favor and against the City in the form of:

    a.  invalidation of the lien filed against Noula;

    b.  invalidation of the nonjudicial sale of Noula;

    c.  damages including, but not limited to, compensatory damages, consequential damages, tangible damages, intangible damages, loss of use, and pre- and post-judgment interest;

    d.  an order compelling the City to rescind all fines;

    e.  an injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his lawful rights; and

    f.  granting any other such relief as the Court deems just and proper.

**Verified Complaint**

## COUNT IV

## BREACH OF CONTRACT

### Transient Moorage Agreement, Clause 7

70.  Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

71.  Clause Seven of Plaintiff's Contract states unambiguously, "IN THE EVENT OF NONPAYMENT OF MOORAGE FOR TWO (2) MONTHS, FACILITY IS AUTHORIZED TO SELL OWNER'S VESSEL AT [sic] A NONJUDICIAL SALE." (Exhibit 4)

72.  On September 4, 2025, as described in paragraph 45, the City contracted with UAL to place a lien for nonjudicial sale on Noula. (Exhibit 7)

73.  On September 4, 2025, Plaintiff was one month delinquent on moorage fees, as defined by both contract and code.

74.  The City's failure to fulfill the contractual obligations stipulated in Clause 7 of the Contract constitutes a material breach of contract.

75.  As a direct result of the City's breach of contract, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

a.  invalidation of the nonjudicial sale of Noula;

b.  invalidation of the nonjudicial sale lien;

c.  damages including, but not limited to, compensatory damages, tangible damages, intangible damages, loss of use, and pre- and post-judgment interest;

d.  an order compelling the City to rescind all fines;

e.  a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his lawful rights; and

f.  granting any other such relief as the Court deems just and proper.

11

## COUNT V

## BREACH OF CONTRACT

### Default Violations of Fla. Stat. § 83.808 (3)

### Per se Violations of FDUTPA

76.     Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

77.     Violations of Fla. Stat. § 83.808 constitute a per se violation of FDUPTA.

78.     The City has a policy, custom, or practice of assessing late fees not stipulated in contract, describing them as "finance charges." (Exhibit 13)

79.     As a direct result of the City's noncompliance with statute, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

   a.   damages including, but not limited to, compensatory damages, statutory damages, tangible damages, intangible damages, and pre- and post-judgment interest;

   b.   an order compelling the City to rescind and refund late fees, with interest;

   c.   a permanent injunction compelling the City to cease deceptive practices;

   d.   a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his lawful rights; and

   e.   granting any other such relief as the Court deems just and proper.

## COUNT VI

## VIOLATION OF MUNICIPAL CODE § 50-338

80.     Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

81.     Miami, Fla. Code § 50-338 states "Monthly dockage and mooring fees [...] shall be considered delinquent if not paid on or before the tenth of the month."

82.     Miami, Fla. Code § 50-338 continues by stating, "A licensee who is delinquent for a period of 20 days shall be considered to be in breach of and have defaulted on his or her license agreement, and shall have 30 days to pay in full all outstanding dockage and mooring payments and late fees owed to the city."

12

**Verified Complaint**

83.    Miami, Fla. Code § 50-338 goes on to state, "If payment in full is not made after this period, the city shall revoke his/her license agreement and reassign the berth."

84.    On August 11, 2025, Plaintiff's monthly payment became delinquent, and the legally mandated twenty-day period of delinquency commenced.

85.    The City's seizure of Tender on August 21, 2025, was a violation of law.

86.    As a result of the City's violation of Miami, Fla. Code § 50-338, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

a.    damages including, but not limited to, compensatory damages, consequential damages, tangible damages, intangible damages, loss of use, and pre- and post-judgment interest;

b.    a permanent injunction compelling the City to rescind fines;

c.    a permanent injunction compelling the City to cease the present and future practice of using "late payments" as pretext for adverse actions;

d.    a permanent injunction barring the City from taking further retaliatory action, including further legal action, to deprive Plaintiff of his lawful rights; and

e.    granting any other such relief as the Court deems just.

## COUNT VII

### VIOLATION OF MUNICIPAL CODE § 50-338

87.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

88.    Miami, Fla. Code § 50-338 states "Monthly dockage and mooring fees [...] shall be considered delinquent if not paid on or before the tenth of the month."

89.    Miami, Fla. Code § 50-338 continues by stating, "A licensee who is delinquent for a period of 20 days shall be considered to be in breach of and have defaulted on his or her license agreement, and shall have 30 days to pay in full all outstanding dockage and mooring payments and late fees owed to the city."

90.    Miami, Fla. Code § 50-338 goes on to state, "If payment in full is not made after this period, the city shall revoke his/her license agreement and reassign the berth."

13

**Verified Complaint**

91.     On August 11, 2025, Plaintiff's monthly payment became delinquent, and the twenty-day period of delinquency commenced.

92.     Therefore, the City's termination of Plaintiff's Contract on August 21, 2025, was unlawful. (Exhibit 1)

93.     As a result of the City's violation of Miami, Fla. Code § 50-338, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

      a.  invalidation of the Contract termination;

      b.  damages including, but not limited to, compensatory damages, consequential damages, tangible damages, intangible damages, and pre- and post-judgment interest;

      c.  a permanent injunction compelling the City to take affirmative action to cure the long-term and ongoing violations of its own ordinance;

      d.  entering a permanent injunction barring the City from taking further retaliatory action including in its governmental capacity to deprive Plaintiff of his lawful rights; and

      e.  granting any other such relief as the Court deems just.

## COUNT VIII

### VIOLATION OF MUNICIPAL CODE § 50-338

94.     Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

95.     Miami, Fla. Code § 50-338 states "Monthly dockage and mooring fees [...] shall be considered delinquent if not paid on or before the tenth of the month."

96.     Miami, Fla. Code § 50-338 continues by stating, "A licensee who is delinquent for a period of 20 days shall be considered to be in breach of and have defaulted on his or her license agreement, and shall have 30 days to pay in full all outstanding dockage and mooring payments and late fees owed to the city."

97.     Miami, Fla. Code § 50-338 goes on to state, "If payment in full is not made after this period, the city shall revoke his/her license agreement and reassign the berth."

14

98.     On August 11, 2025, Plaintiff's monthly payment became delinquent, and the twenty-day period of delinquency commenced.

99.     On August 31, 2025, Plaintiff was in breach of contract and the legally mandated thirty-day period to make payment commenced.

100.    On September 3, 2025, Plaintiff was on day three of the legally mandated thirty-day period to make payment in full, as defined by code.

101.    Therefore, the City's seizure of Noula on September 3, 2025, was unlawful. (Exhibit 2)

102.    As a result of the City's violation of Miami, Florida Code § 50-338, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

   a. Invalidation of the nonjudicial lien;
   b. damages including, but not limited to, compensatory damages, consequential damages, tangible damages, intangible damages, loss of use, and pre- and post-judgment interest;
   c. an injunction compelling the City to take affirmative action to cure the historical and ongoing violations of its own laws;
   d. a permanent injunction barring the City from taking further retaliatory action, including further legal action, to deprive Plaintiff of his lawful rights; and
   e. granting any other such relief as the Court deems just.

## COUNT IX

### VIOLATION OF MUNICIPAL CODE § 50-428

103.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

104.    Miami, Fla. Code § 50-428 states unambiguously, "The city shall provide a dinghy dock for the accommodation of dinghies [...] of the Dinner Key mooring facility customers [...]."

105.    The law is clear regarding the City's legal responsibility to provide a dinghy dock for mooring facility customers.

15

**Verified Complaint**

106. As described in paragraph 33, Defendants violated Plaintiff's lawful rights by characterizing the dinghy dock as an "amenity," and an order compelling him to remove Tender.

107. As a result of the City's violation of Miami, Fla. Code § 50-428, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

    a. declaring the City's characterization of the DKM dinghy dock as an "amenity" unlawful;

    b. declaring the use of the DKM dinghy dock a legal right of DKMF customers;

    c. damages including, but not limited to, compensatory damages, consequential damages, tangible damages, intangible damages, loss of use, and pre- and post-judgment interest;

    d. a permanent injunction compelling the City to take affirmative action to cure the long-term, ongoing violations of its own laws;

    e. a permanent injunction barring the City from taking further retaliatory action, including further legal action, to deprive Plaintiff of his lawful rights; and

    f. granting any other such relief as the Court deems just.

## COUNT X

## FLORIDA STATUTE § 328.17

### Failure to Itemize Lien Notice

### United American Lien and Recovery

108. Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

109. Fla. Stat. § 328.17 (5)(a)(1) states unambiguously, "The marina shall provide written notice to the vessel's owner…"

110. Fla. Stat. § 328.17 (5)(b)(1) states unambiguously, the notice shall include "an itemized statement of the marina's claim, showing the sum due at the time of the notice and the date upon which the sum became due.

111. UAL provided an invoice showing subtotal, a lien fee, and a total due for Noula, omitting the itemization required by statute.

16

**Verified Complaint**

112.   UAL further omitted mention of fines for Tender, which were included in the total but not itemized. (Exhibit 7)

Plaintiff requests judgement in his favor and against the City in the form of:

    a.   invalidation of the nonjudicial lien;

    b.   damages including, but not limited to, compensatory damages, consequential damages, tangible damages, intangible damages,  and pre- and post-judgment interest;

    c.   a permanent injunction barring UAL from issuing further liens against Plaintiff's property; and

    d.   granting any other such relief as the Court deems just.

## COUNT XI

### Florida Statute § 713.78

### United American Lien and Recovery

113.   Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

114.   Fla. Stat. § 713.78 (4) (c) states "The notice of lien must be sent by an approved third-party service by certified mail to the registered owner [...] within 5 business days, excluding a Saturday, Sunday, or federal legal holiday.

115.   As described in Paragraph 37, Noula was seized on September 3, 2025, and notice was sent on September 15, 2025. (Exhibit 15)

116.   UAL's failure to meet the statutory deadline for notification is a default violation of statute.

117.   As a result of UAL's failure to meet the statutory deadline for notification, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

    a.   invalidation of the nonjudicial lien;

    b.   damages including, but not limited to, compensatory damages, consequential damages, tangible damages, intangible damages, and pre- and post-judgment interest;

17

**Verified Complaint**

    c.   a permanent injunction barring UAL from issuing further liens against Plaintiff's
property; and

    d.   granting any other such relief as the Court deems just.

**COUNT XII**

**Florida Statute § 715.07**

118.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

119.    Fla. Stat. § 715.07 (2) (a) (2) states "The person or firm towing or removing the
vehicle or vessel shall, within 30 minutes after completion of such towing or removal, notify the
municipal police department [...]."

120.    As described in Paragraph 37, Tender was seized on August 21, 2025, at
approximately 1:00 p.m.

121.    The City's failure to notify law enforcement within thirty minutes of the seizure
of Tender is a violation of statute.

122.    As a result of the City's failure to meet the statutory deadline for notification,
Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

    a.   damages including, but not limited to, compensatory damages, consequential
damages, tangible damages, intangible damages, loss of use, and pre- and post-
judgment interest;

    b.   a permanent injunction compelling the City to cure its history of frequent
violations of Fla. Stat. § 715.07;

    c.   a permanent injunction barring the City from taking further retaliatory action,
including further legal action, to deprive Plaintiff of his lawful rights; and

    d.   granting any other such relief as the Court deems just.

**Verified Complaint**

## COUNT XIII

### Florida Statute § 715.07

123.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

124.    Fla. Stat. § 715.07 (2) (a) (2) states "The person or firm towing or removing the vehicle or vessel shall, within 30 minutes after completion of such towing or removal, notify the municipal police department [...]."

125.    As described in paragraph 37, Noula was seized on September 3, 2025, at approximately 11:00 a.m.

126.    The City's failure to notify law enforcement within thirty minutes of the seizure of Noula is a violation of statute.

127.    As a result of the City's failure to meet the statutory deadline for notification, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

    a.  damages including, but not limited to, compensatory damages, consequential damages, tangible damages, intangible damages, loss of use, and pre- and post-judgment interest;

    b.  a permanent injunction compelling the City to cure its history of frequent violations of Fla. Stat. § 715.07;

    c.  a permanent injunction barring the City from taking further retaliatory action, including further legal action, to deprive Plaintiff of his lawful rights; and

    d.  granting any other such relief as the Court deems just.

19

**Verified Complaint**

## COUNT XIV

### PROTECTED EXPRESSION -- 42 U.S.C. § 1983
### Defendants revoke Plaintiff's "access to amenities."

128.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

129.    The First Amendment to the United States Constitution prohibits the Defendants from depriving Plaintiff of protected speech interests.

130.    State actors with final policymaking authority created, implemented, and executed, personally and/or by and through their employees, a policy of public harassment, intimidation, and coercion as collections action related to Plaintiff's debt to the City. In each instance, Plaintiff asserted his right to privacy and his right to freedom from harassment.

131.    As described in paragraph 32, the City violated a core First Amendment principle via direct and immediate adverse action driven by retaliatory animus in response to Plaintiff's exercise of constitutionally protected speech.

132.    Defendants acted herein under color of state law.

133.    There is an immediate causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

134.    As a direct result of the City's adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

    a.    damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

    b.    an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

    c.    a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

    d.    granting any other such relief as the Court deems just and proper.

20

**Verified Complaint**

## COUNT XV

### PROTECTED EXPRESSION -- 42 U.S.C. § 1983
### Defendants revoke Plaintiff's lawful right to the dinghy dock.

135.   Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

136.   The First Amendment to the United States Constitution prohibits the City from depriving Plaintiff of protected speech interests.

137.   State actors with final policymaking authority created, implemented, and executed, personally and/or by and through their employees, a policy of public harassment, intimidation, and coercion as collections action related to Plaintiff's debt to the City. In each instance, Plaintiff asserted his statutory rights to privacy and to freedom from harassment.

138.   As alleged in paragraph 33, Defendants violated a core First Amendment principle via direct and proximate adverse action driven by retaliatory animus in response to Plaintiff's exercise of constitutionally protected speech.

139.   The Defendants acted herein under color of state law.

140.   There is a direct, proximate, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

141.   As a direct result of the Defendants' adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

a.   damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

b.   an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

c.   a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

d.   granting any other such relief as the Court deems just and proper.

21

## COUNT XVI

## PROTECTED EXPRESSION -- 42 U.S.C. § 1983

**Defendants terminate contract and expel Plaintiff from marina.**

142.     Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

143.     The First Amendment to the United States Constitution prohibits the City from depriving Plaintiff of protected speech interests.

144.     State actors with final policymaking authority created, implemented, and executed, personally and/or by and/or through their employees, a policy of public harassment, intimidation, and coercion as collections action related to Plaintiff's debt to the City. In each instance, Plaintiff asserted his statutory rights to privacy and to freedom from harassment.

145.     As alleged in paragraph 34, Defendants violated a core First Amendment principle via direct and proximate adverse action driven by retaliatory animus in response to Plaintiff's exercise of constitutionally protected speech.

146.     Defendants acted herein under color of state law.

147.     There is a direct, proximate, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

148.     As a direct result of Defendant's adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

a.     damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

b.     an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

c.     a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

d.     granting any other such relief as the Court deems just and proper.

22

**Verified Complaint**

## COUNT XVII

## PROTECTED EXPRESSION -- 42 U.S.C. § 1983

### Defendants seize Tender

149.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

150.    The First Amendment to the United States Constitution prohibits the City from retaliatory acts related to Plaintiff's assertion of lawful rights.

151.    State actors with final policymaking authority created, implemented, and executed, personally and/or by and/or through their employees, a policy of public harassment, intimidation, and coercion as collections action related to Plaintiff's debt to the City. In each instance, Plaintiff asserted his statutory right to privacy and his right to freedom from harassment.

152.    As alleged in paragraph 34 (Exhibit 1), Defendants violated a core First Amendment principle via direct and proximate adverse action driven by retaliatory animus in response to Plaintiff's exercise of constitutionally protected speech.

153.    The Defendants acted herein under color of state law.

154.    There is a direct, proximal, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

155.    As a direct result of the Defendants' adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

      a.    damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

      b.    an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

      c.    a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

**Verified Complaint**

      d.     granting any other such relief as the Court deems just and proper.

**COUNT XVIII**

**PROTECTED EXPRESSION -- 42 U.S.C. § 1983**

**Noula seized.**

156.   Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

157.   The First Amendment to the United States Constitution prohibits the City from retaliatory acts related to Plaintiff's assertion of lawful rights.

158.   State actors with final policymaking authority created, implemented, and executed, personally and/or by and through their employees, a policy of public harassment, intimidation, and coercion as collections action related to Plaintiff's debt to the City. In each instance, Plaintiff asserted his statutory right to privacy and his right to freedom from harassment.

159.   As alleged in paragraph 37, Defendants violated a core First Amendment principle via direct and proximate adverse action driven by retaliatory animus in response to Plaintiff's exercise of constitutionally protected speech.

160.   Defendants requested updated registration and insurance documentation for Noula neither before nor after seizure.

161.   The City acted herein under color of state law.

162.   There is a direct, proximal, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

163.   As a direct result of the Defendants' adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

      a.     damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

      b.     an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

24

**Verified Complaint**

c.      a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

d.      granting any other such relief as the Court deems just and proper.

## COUNT XIX

## UNREASONABLE SEIZURE – 42 U.S.C. § 1983

### Seizure of Tender

164.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

165.    The Fourth Amendment to the Constitution as incorporated by the Fourteenth Amendment to the Constitution protects Plaintiff's right to be secure against "unreasonable seizure." The Fourteenth Amendment guarantees Plaintiff's right to due process.

166.    State actors with final policymaking authority created, implemented, and executed, personally and/or by and through their employees, a policy of unlawful impoundment to harass, intimidate, and coerce DKM clientele, thereby depriving Plaintiff of his constitutionally protected rights.

167.    As described in paragraph 34 (Exhibit 1), Defendants violated Plaintiff's property interests and via direct and proximate adverse action driven by retaliatory animus in response to Plaintiff's exercise of constitutionally protected speech.

168.    Courts have found that prolonged, unlawful possession of property equates to seizure.

169.    Defendants requested updated registration and insurance documentation neither before nor after seizure.

170.    The Defendants acted herein under color of state law.

171.    There is a direct, proximate, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

172.    As a direct result of Defendant's adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

a.      damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost

25

earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

b.    an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

c.    a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

d.    granting any other such relief as the Court deems just and proper.

## COUNT XX

### UNREASONABLE SEIZURE – 42 U.S.C. § 1983

#### Seizure of Noula

173.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

174.    The Fourth Amendment to the Constitution as incorporated by the Fourteenth Amendment to the Constitution protects Plaintiff's right to be secure against "unreasonable seizure." The Fourteenth Amendment protects Plaintiff's due process interests.

175.    State actors with final policymaking authority created, implemented, and executed, personally and/or by and through their employees, a policy of unlawful impoundment to harass, intimidate, and coerce DKM clientele, thereby depriving Plaintiff of his constitutionally protected rights.

176.    As described in paragraph 37, Defendants violated Plaintiff's property interests and due process interests via direct and proximate adverse action driven by retaliatory animus in response to Plaintiff's exercise of constitutionally protected speech.

177.    Courts have found the prolonged, unlawful possession of property equates to seizure.

178.    Defendants requested updated registration and insurance documentation neither before nor after seizure.

179.    The Defendants acted herein under color of state law.

180.    There is a direct, proximate, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

**Verified Complaint**

181.   As a direct result of Defendant's adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

    a.    damages including, but not limited to, compensatory damages for
emotional and psychological distress, humiliation, harm to reputation, lost
earnings, physical injury, and consequential damages associated with the
deprivation of Plaintiff's constitutional rights, including pre- and post-
judgment interest;

    b.    an order compelling the City to cease the practice of characterizing the
DKM dinghy dock as an amenity;

    c.    a permanent injunction barring the City from taking further retaliatory
action, including any further legal action, to deprive Plaintiff of his
constitutionally protected rights; and

    d.    granting any other such relief as the Court deems just and proper.

## COUNT XXI

### EXCESSIVE FINES -- 42 U.S.C. § 1983

#### Defendants impose "storage fees" on Tender.

182.   Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

183.   The Eighth Amendment to the U.S. Constitution, as incorporated by the
Fourteenth Amendment to the U.S. Constitution, prohibits the Defendant from imposing
"excessive fines."

184.   State actors with final policymaking authority created, implemented, and
executed, personally and/or by and through their employees, a policy oof imposing excessive
fines to generate revenue and to harass, intimidate, and coerce DKM clientele, thereby depriving
Plaintiff of his constitutionally protected liberties.

185.   As described in paragraph 43 (Exhibit 8), Defendants deprived Plaintiff of his
constitutionally protected Eighth Amendment rights to freedom from excessive fines.

186.   Defendant imposed excessive, punitive, revenue-generating fines; serving no
remedial purpose and intended to punish Plaintiff, in violation of his constitutionally protected
liberties.

27

**Verified Complaint**

187.    Defendant imposed fines that far exceed Plaintiff's ability to pay.

188.    The City adopted the actions of its final policymakers via its deliberate indifference to the deprivation of Plaintiff's constitutional rights.

189.    The City acted herein under color of state law.

190.    There is a direct, proximate, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

191.    As a direct result of the Defendants' adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

> a.    damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;
>
> b.    an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;
>
> c.    a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and
>
> d.    granting any other such relief as the Court deems just and proper.

## COUNT XXII

### EXCESSIVE FINES -- 42 U.S.C. § 1983

### Defendants impose "storage fees" on Noula.

192.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

193.    The Eighth Amendment to the U.S. Constitution, as incorporated by the Fourteenth Amendment to the U.S. Constitution, prohibits the Defendant from imposing "excessive fines."

194.    State actors with final policymaking authority created, implemented, and executed, personally and/or by and through their employees, a policy of imposing excessive fines

28

**Verified Complaint**

to generate revenue and to harass, intimidate, and coerce DKM clientele, thereby depriving Plaintiff of his constitutionally protected rights.

195.    As described in paragraph 43 (Exhibit 8), Defendants deprived Plaintiff of his constitutionally protected Eighth Amendment liberties.

196.    Defendant imposed excessive, punitive, revenue-generating fines; serving no remedial purpose and intended to punish Plaintiff, in violation of his constitutionally protected liberties.

197.    Defendant imposed fines that far exceed Plaintiff's ability to pay.

198.    The City adopted the actions of its final policymakers via its deliberate indifference to the deprivation of Plaintiff's constitutional rights.

199.    The City acted herein under color of state law.

200.    There is a direct, proximate, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

201.    As a direct result of the Defendants' adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

   a.    damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

   b.    an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

   c.    a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

   d.    granting any other such relief as the Court deems just and proper.

29

**Verified Complaint**

## COUNT XXIII

## PROCEDURAL DUE PROCESS – 42 U.S.C. § 1983

### The City seizes Plaintiff's Tender

202.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

203.    The Fourth Amendment to the United States Constitution protects Plaintiff from unreasonable seizures. The Fourteenth Amendment guarantees Plaintiff's right to due process.

204.    Plaintiff's rights to his property are protected by the U.S. Constitution.

205.    As described in paragraph 34, Tender was seized while lawfully docked; neither a safety hazard nor a navigation hazard, the statutorily required registration not disputed by the City. Tender was therefore not subject to punitive action by any authority.

206.    The City failed to give Plaintiff a "time to cure" any outstanding issues and failed to notify law enforcement, thereby depriving Plaintiff of his constitutionally protected due process interests.

207.    The City acted herein under color of state law.

208.    There is a direct, proximal, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

209.    As a direct result of the City's adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

     a.  damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

     b.  an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

     c.  a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

     d.  granting any other such relief as the Court deems just and proper.

30

## COUNT XXIV

### PROCEDURAL DUE PROCESS – 42 U.S.C. § 1983

#### The City seizes Noula

210.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

211.    The Fourth Amendment to the United States Constitution protects Plaintiff from unreasonable seizures. The Fourteenth Amendment guarantees Plaintiff's right to due process.

212.    Plaintiff's rights to his property are protected by the U.S. Constitution.

213.    As described in paragraph 10, Noula was seized while lawfully moored; neither a safety hazard nor a navigation hazard, her statutorily required registration sticker displayed on her bow.

214.    The City failed to provide a legitimate cause for terminating and expelling Plaintiff from the marina. The City failed again by seizing Noula during the contractually stipulated five-day period to vacate after termination of Contract. The City failed a third time by dishonoring the covenant of good faith and fair dealing inherent to every contract, wherein Plaintiff would have happily provided proof of registration, proof of insurance, and proof of a valid driver license, relevance notwithstanding, within the "time to cure" the City was obligated to give for cure of outstanding issues.

215.    The City failed to notify law enforcement of the impound of a vessel.

216.    The City acted herein under color of state law.

217.    There is a direct, proximal, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

218.    As a direct result of the City's adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

        a.    damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

31

  b. an order compelling the City to cease the practice of characterizing the
    DKM dinghy dock as an amenity;

  c. a permanent injunction barring the City from taking further retaliatory
    action, including any further legal action, to deprive Plaintiff of his
    constitutionally protected rights; and

  d. granting any other such relief as the Court deems just and proper.

## COUNT XXV

## PROCEDURAL DUE PROCESS – 42 U.S.C. § 1983

### The City discards Tender

219. Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

220. The Fourth Amendment to the United States Constitution protects Plaintiff from
unreasonable seizures. The Fourteenth Amendment guarantees Plaintiff's right to due process.

221. Plaintiff's possessory rights to his property are protected by the United States
Constitution.

222. As described in paragraph 41, Defendants removed Tender from the water,
discarded Plaintiff's personal belongings, removed the motor,  and discarded Tender in the
dumpster corral.

223. The City failed to notify law enforcement and breached its duty of care, thereby
depriving Plaintiff of his constitutionally protected due process interests.

224. The City acted herein under color of state law.

225. There is a direct, proximal, and causal link between official decisions of the City's
final policymakers and Plaintiff's constitutional rights being violated.

226. As a direct result of the City's adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

  a. damages including, but not limited to, compensatory damages for emotional
    and psychological distress, humiliation, harm to reputation, lost earnings,
    physical injury, and consequential damages associated with the deprivation of
    Plaintiff's constitutional rights, including pre- and post-judgment interest;

**Verified Complaint**

    b.   an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

    c.   a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

    d.   granting any other such relief as the Court deems just and proper.

## COUNT XXVI

### PROCEDURAL DUE PROCESS – 42 U.S.C. § 1983

#### The City terminates Contract.

227.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

228.    The Fourth Amendment to the United States Constitution protects Plaintiff from unreasonable seizures. The Fourteenth Amendment guarantees Plaintiff's right to due process.

229.    As described in paragraph 34, the City terminated Plaintiff's Contract without cause.

230.    The City has failed to provide a legitimate legal or contractual basis for the termination of Plaintiff's contract, resorting to fiction and pretext.

231.    The City acted herein under color of state law.

232.    There is a direct, proximal, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

233.    As a direct result of the City's adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

    a.   invalidation of the termination of Contract;

    b.   damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

**Verified Complaint**

  c. an order compelling the City to cease the practice of characterizing the DKM
   dinghy dock as an amenity;

  d. a permanent injunction barring the City from taking further retaliatory action,
   including any further legal action, to deprive Plaintiff of his constitutionally
   protected rights; and

  e. granting any other such relief as the Court deems just and proper.

**COUNT XXVII**

**PROCEDURAL DUE PROCESS – 42 U.S.C. § 1983**

**The City expels Plaintiff from public marina**

234. Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

235. The Fourth Amendment to the United States Constitution protects Plaintiff from
unreasonable seizures. The Fourteenth Amendment guarantees Plaintiff's right to due process.

236. As described in paragraph 2, the City expelled Plaintiff from DKM without cause.

237. The City acted herein under color of state law.

238. There is a direct, proximal, and causal link between official decisions of the City's
final policymakers and Plaintiff's constitutional rights being violated.

239. As a direct result of the City's adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

  a. invalidation of the termination of Contract;

  b. damages including, but not limited to, compensatory damages for emotional
   and psychological distress, humiliation, harm to reputation, lost earnings,
   physical injury, and consequential damages associated with the deprivation of
   Plaintiff's constitutional rights, including pre- and post-judgment interest;

  c. an order compelling the City to cease the practice of characterizing the DKM
   dinghy dock as an amenity;

  d. a permanent injunction barring the City from taking further retaliatory action,
   including any further legal action, to deprive Plaintiff of his constitutionally
   protected rights; and

  e. granting any other such relief as the Court deems just and proper.

34

## COUNT XXVIII

### EQUAL PROTECTION – CLASS OF ONE – 42 U.S.C. § 1983

240.    Plaintiff incorporates and reasserts each factual allegation as if fully restated here.

241.    The Fourteenth Amendment guarantees Plaintiff's right to equal protection.

242.    As shown in Exhibits 18, 19, 20, 21, 20, 21, and 22, the City typically posts notices ordering vessel owners to "cure" outstanding issues, with one example containing a reference to Miami, Fla. Code § 50-428.

243.    The City is familiar with, and has a demonstrated history of, providing vessel owners with a "time to cure" outstanding issues. A reasonable person can see the City's treatment of Plaintiff's property differs dramatically from the examples provided in the exhibits described in paragraph 182.

244.    In one example, a vessel of unknown provenance and unknown registration and insurance status is given a warning notice, as opposed to being impounded. This action is compliant with Miami, Fla. Code § 50-9, which provides specific guidelines and penalties for unknown vessels docked at DKM dinghy dock.

245.    These examples indicate the City, throughout the campaign deployed against Plaintiff described herein, a unique ruleset and applied it to Plaintiff in a discriminatory manner. .

246.    The City acted herein under color of state law.

247.    There is a direct, proximal, and causal link between official decisions of the City's final policymakers and Plaintiff's constitutional rights being violated.

248.    As a direct result of the City's adverse action, Plaintiff was harmed.

Plaintiff requests judgement in his favor and against the City in the form of:

    a.   invalidation of the termination of Contract;

    b.   damages including, but not limited to, compensatory damages for emotional and psychological distress, humiliation, harm to reputation, lost earnings, physical injury, and consequential damages associated with the deprivation of Plaintiff's constitutional rights, including pre- and post-judgment interest;

    c.   an order compelling the City to cease the practice of characterizing the DKM dinghy dock as an amenity;

35

**Verified Complaint**

d.   a permanent injunction barring the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his constitutionally protected rights; and

e.   granting any other such relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

**Plaintiff requests a trial by jury on all claims so triable.**

36

**Verified Complaint**

**Index of Exhibits**

| | | |
|---|---|---|
| Email Termination and Expulsion | August 21, 2025 | (Exhibit 1) |
| Email re: Tender Seized | August 21, 2025 | (Exhibit 1) |
| Email re: Noula Seized | September 3, 2025 | (Exhibit 2) |
| Quinones Email to City Hall | August 22, 2025 | (Exhibit 3A) |
| Quinones pretext for seizure and term | August 22, 2025 | (Exhibit 3B) |
| Moorage Agreement | October 1, 2024 | (Exhibit 4) |
| Noula & Tender Registrations | June 2023 | (Exhibit 5) |
| Noula Vessel Insurance | | (Exhibit 6) |
| Lien Notice not itemized | September 15, 2025 | (Exhibit 7) |
| Email Lien Invoice | November 21, 2025 | (Exhibit 8) |
| Photos of Trashed Tender | November 1, 2025 | (Exhibit 9) |
| Deprived Access to Noula in 2024 | September 19, 2024 | (Exhibit 10) |
| Sale of Noula confirmed | November 24, 2025 | (Exhibit 11) |
| Property Access Denied | October 29, 2025 | (Exhibit 14A) |
| Requests for Access to Property | October 2025 | (Exhibit 14B) |
| Lien envelope dated 9/15 | September 15, 2025 | (Exhibit 15) |
| FLHSMV recommended lien notice | | (Exhibit 17) |
| Warning Notices on Vessels at Dinghy Dock | | (Exhibits 18 – 22) |
| Notice Posted on unlawfully docked tender | | (Exhibit 25) |
| Example Conspicuous Lien Notice on Vessel | | (Exhibit 26) |

**Verified Complaint**

Tender Fuel Tank Inverted                                    (Exhibit 27)

Tender Partially Submerged                                   (Exhibit 28)

Trespassing Dinghy Given Time to Cure                        (Exhibit 30)

**Verified Complaint**

Dated: December 2, 2025

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

Evangelos Skevofilax, pro se

3400 Pan American Dr

Miami FL 33133

Telephone: 305-339-2568

39

**Verified Complaint**

11/18/25, 7:12 PM                Gmail - RE: Dinner Key Marina: Payment Overdue / Mooring ball payment pass due / non-compliance / Notice of Non renewal

 **Gmail**                                                                  evan skev <evantech@gmail.com>

## RE: Dinner Key Marina: Payment Overdue / Mooring ball payment pass due / non-compliance / Notice of Non renewal

**Pino, Pablo** <PPino@miamigov.com>                                           Thu, Aug 21, 2025 at 1:19 PM
To: "evantech@gmail.com" <evantech@gmail.com>
Cc: E Skev <skev.evan@gmail.com>, "Quinones, Guillermo" <GQuinones@miamigov.com>, "Nesbitt, Thomas"
<TNesbitt@miamigov.com>, "Bustamante, Alex" <AlexBustamante@miamigov.com>

Mr. Skevofilax,                                      PLAINTIFF EXHIBIT 1

The City of Miami will not be renewing your Mooring Dockage Agreement as of today August 21,2025.
Please have your vessel removed from the Mooring ball no later than August 31st, 2025. In reviewing your
customer file, your vessel registration has expired as of August 19, 2025. Driver's license is also expired as
of August 19th, 2024, and your vessel insurance has expired as of June 20th, 2025.

Due to non-compliance, all amenities have been deactivated which include dinghy dock privileges, vehicle
parking lot access and building key access until all past due balance is received. Please visit the 2nd floor
office to make payments so we can release your dinghy once your payment has been received.



**Thank you,**                          TERMINATION AND
                                        EXPULSION FROM MARINA

Pablo Pino

Marinas Supervisor

3400 Pan American Drive

Miami, FL 33133

305-329-4755

ppino@miamigov.com

**From:** Evan Skev <evantech@gmail.com>
**Sent:** Thursday, September 19, 2024 10:38 AM
**To:** Bustamante, Alex <AlexBustamante@miamigov.com>
**Cc:** E Skev <skev.evan@gmail.com>; Quinones, Guillermo <GQuinones@miamigov.com>; Nesbitt, Thomas
<TNesbitt@miamigov.com>; Pino, Pablo <PPino@miamigov.com>; Lutton, Donald <dlutton@miamigov.com>
**Subject:** Re: Dinner Key Marina: Payment Overdue

11/18/25, 2:29 PM                    Gmail - RE: Dinner Key Marina: Payment Overdue / Mooring ball payment pass due / non-compliance / Notice of Non renewal

 Gmail                                                                evan skev <evantech@gmail.com>

## RE: Dinner Key Marina: Payment Overdue / Mooring ball payment pass due / non-compliance / Notice of Non renewal

**Nesbitt, Thomas** <TNesbitt@miamigov.com>                              Wed, Sep 3, 2025 at 1:04 PM
To: "evantech@gmail.com" <evantech@gmail.com>, E Skev <skev.evan@gmail.com>
Cc: "Quinones, Guillermo" <GQuinones@miamigov.com>, "Bustamante, Alex" <AlexBustamante@miamigov.com>, "Pino, Pablo" <PPino@miamigov.com>, "Nesbitt, Thomas" <TNesbitt@miamigov.com>

Good afternoon Mr. Skevofilax,

Due to your refusal to pay your outstanding balance or submit the required documents for your vessel "Noula", the City of Miami has impounded your vessel. If you need to collect any personal belongings, such as medication and clothes, please let us know in advance, so we can arrange for an officer to escort you to the vessel.

**PLAINTIFF
EXHIBIT 2
NOULA SEIZED**

Thank you,

Jocko Nesbitt

**City of Miami
Marinas Manager Assistant**
3400 Pan American Dr.
Miami, FL 33133
Tel: 305-329-4755



[Quoted text hidden]

11/18/25, 3:56 PM          FW: Dinner Key Marina: Payment Overdue / Mooring ball payment pass due / non-compliance / Notice of Non renewal/RE: Urgent...

## Subject: FW: Dinner Key Marina: Payment Overdue / Mooring ball payme
## Urgent - From Evan in D2 - we met at Brickell Zoning meeting

**?**      **Quinones, Guillermo** <GQuinones@miamigov.com>          **PLAINTIFF 3A**
           to Gonzalez, Javier, Frey, Andrew, Balzebre, Anthony, Pardo, Damian (Commissioner), Pino, Pablo, Nesbitt, Thomas, Busta

Javier, please see additional briefing on Mr. Skevofilax.  Thank you



Guillermo Quiñones          **EXHIBIT 3A**
**Marinas Manager**          **QUINONES**
**3400 Pan American Drive**   **RESPONSE TO**
**Miami, FL 33133**          **CITY HALL**
**305-329-4764**
gquinones@miamigov.com

**From:** Nesbitt, Thomas <TNesbitt@miamigov.com>
**Sent:** Friday, August 22, 2025 9:26 AM
**To:** Quinones, Guillermo <GQuinones@miamigov.com>
**Cc:** Bustamante, Alex <AlexBustamante@miamigov.com>; Nesbitt, Thomas <TNesbitt@miamigov.com>; Pino, I
**Subject:** RE: Dinner Key Marina: Payment Overdue / Mooring ball payment pass due / non-compliance / Notic

Currently Mr. Skevoflex has multiple expired documents in his file and has failed to provide the marin
Mr. Skevoflex has been habitually  late with payments since his arrival in the marina.  Due to the diffic
with the agreement that he would keep up with his payments in a timely manner as they would now b
timely payments and has an outstanding balance of $472.28. Below I have highlighted the consistenc

| Skevofilax Evangelos | | | | Criteria for Search: All | | |
|---|---|---|---|---|---|---|
| 3400 Pan American dr. | | Account#: | 141027 | | | |
| | | Phone: | | | | |
| Miami | | Mobile: | (786)253-3421 | | | |
| Double-click to drill down to Transaction Detail | | | 22-Aug-25 | | | Ac |
| | | | | | | Fil |

| Select | Date | Type | Description | Trans | B/A Code | Debit | Credit |
|---|---|---|---|---|---|---|---|
| ☐ | 9/1/2025 | DSI | RR MB056 9/1/2025-9/30/2025 Noula  37ft + | 396527 | DKMF | 424.79 | |
| ☐ | 8/11/2025 | DSI | Finance Charge | 396105 | DKMF | 22.49 | |
| ☐ | 8/1/2025 | DSI | RR MB056 8/1/2025-8/31/2025 Noula - 37ft +... | 394497 | DKMF | 449.79 | |
| ☐ | 7/6/2025 | DMR | Check Receipt#28803 | 337798 | DKMF | 0.00 | 44 |
| ☐ | 7/1/2025 | DSI | RR MB056 7/1/2025-7/31/2025 Noula - 37ft +... | 392970 | DKMF | 449.79 | |
| ☐ | 6/16/2025 | DMR | Master Card Receipt Receipt 28883 | 336828 | DKMF | 0.00 | 47 |
| ☐ | 6/11/2025 | DSI | Finance Charge | 392409 | DKMF | 22.49 | |
| ☐ | 6/1/2025 | DSI | RR MB056 6/1/2025-6/30/2025 Noula - 37ft +... | 390696 | DKMF | 449.79 | |
| ☐ | 5/10/2025 | DMR | Visa Receipt Receipt#28509 | 335190 | DKMF | 0.00 | 44 |
| ☐ | 5/1/2025 | DSI | RR MB056 5/1/2025-5/31/2025 Noula - 37ft +... | 388380 | DKMF | 449.79 | |
| ☐ | 4/15/2025 | DMR | Visa Receipt Receipt # 28351 | 333660 | DKMF | 0.00 | 47 |

11/18/25, 4:47 PM   PLAINTIFF EXHIBIT 3B

| Skevofilax Evangelos | | | | | |
| 3400 Pan American dr. | | Account#: | 141027 | | |
| | | Phone: | | | |
| Miami | | Mobile: | (786)253-3421 | | |

Double-click to drill down to Transaction Detail

Criteria for Search: All

DKM BASIS FOR SEIZURES AND TERM

22-Aug-25

Account Balance:  $897.07
Filter Balance:  $897.07

| Select | Date | Type | Description | Trans | B/A Code | Debit | Credit | Outstanding | Balance |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | 9/1/2025 | DSI | RR MB056 9/1/2025-9/30/2025 Noula - 37t + | 396527 | DKMF | 424.79 | 0.00 | 424.79 | $897.07 |
| ☐ | 8/11/2025 | DSI | Finance Charge | 396105 | DKMF | 22.49 | 0.00 | 22.49 | $472.28 |
| ☐ | 8/1/2025 | DSI | RR MB056 8/1/2025-8/31/2025 Noula - 37t +... | 394497 | DKMF | 449.79 | 0.00 | 449.79 | $449.79 |
| ☐ | 7/6/2025 | DMR | Check Receipt#28803 | 337798 | DKMF | 0.00 | 449.79 | 0.00 | $0.00 |
| ☐ | 7/1/2025 | DSI | RR MB056 7/1/2025-7/31/2025 Noula - 37t +... | 392970 | DKMF | 449.79 | 0.00 | 0.00 | $449.79 |
| ☐ | 6/16/2025 | DMR | Master Card Receipt Receipt 28683 | 336828 | DKMF | 0.00 | 472.28 | 0.00 | $0.00 |
| ☐ | 6/11/2025 | DSI | Finance Charge | 392409 | DKMF | 22.49 | 0.00 | 0.00 | $472.28 |
| ☐ | 6/1/2025 | DSI | RR MB056 6/1/2025-6/30/2025 Noula - 37t +... | 390696 | DKMF | 449.79 | 0.00 | 0.00 | $449.79 |
| ☐ | 5/16/2025 | DMR | Visa Receipt Receipt#28509 | 335190 | DKMF | 0.00 | 449.79 | 0.00 | $0.00 |
| ☐ | 5/1/2025 | DSI | RR MB056 5/1/2025-5/31/2025 Noula - 37t +... | 388380 | DKMF | 449.79 | 0.00 | 0.00 | $449.79 |
| ☐ | 4/15/2025 | DMR | Visa Receipt Receipt # 28351 | 333660 | DKMF | 0.00 | 472.28 | 0.00 | $0.00 |
| ☐ | 4/11/2025 | DSI | Finance Charge | 387978 | DKMF | 22.49 | 0.00 | 0.00 | $472.28 |
| ☐ | 4/11/2025 | DSI | Finance Charge | 387559 | DKM | 1.25 | 0.00 | 0.00 | $449.79 |
| ☐ | 4/1/2025 | DMC | Credit Note, Customer was invoiced and receipte... | 42409 | DKM | 0.00 | 26.25 | 0.00 | $448.54 |
| ☐ | 4/1/2025 | DMC | Credit Note, DKM Dockage Correction - Tax: Exe... | 42103 | DKM | 0.00 | 25.00 | 0.00 | $474.79 |
| ☐ | 4/1/2025 | DMF | Master Card Receipt Refund#61558 | 13758 | DKM | 25.00 | 0.00 | 0.00 | $499.79 |
| ☐ | 4/1/2025 | DMR | Data Entry Error Reversal for DMR 332742 | 332743 | DKM | 25.00 | 0.00 | 0.00 | $474.79 |
| ☐ | 4/1/2025 | DMR | AMEX Receipt Receipt#61558 | 332742 | DKM | 0.00 | 25.00 | 0.00 | $449.79 |
| ☐ | 4/1/2025 | DMI | Invoice, Miscellaneous (DKM) - Tax: ST-DK @ 7... | 387375 | DKM | 25.00 | 0.00 | 0.00 | $474.79 |
| ☐ | 4/1/2025 | DSI | RR MB056 4/1/2025-4/30/2025 Noula - 37t +... | 386194 | DKMF | 449.79 | 0.00 | 0.00 | $449.79 |
| ☐ | 3/30/2025 | DMF | Visa Receipt Refund28211 | 13746 | DKMF | 45.72 | 0.00 | 0.00 | $0.00 |
| ☐ | 3/9/2025 | DMR | Visa Receipt Receipt#28146 | 331992 | DKMF | 0.00 | 491.75 | 0.00 | ($45.72) |
| ☐ | 3/5/2025 | DMR | Master Card | 331807 | DKM | 0.00 | 25.00 | 0.00 | $446.03 |
| ☐ | 3/5/2025 | DMI | Invoice#61261, Miscellaneous (DKM) - parking | 385405 | DKM | 25.00 | 0.00 | 0.00 | $471.03 |
| ☐ | 3/5/2025 | DMC | Credit Note, Miscellaneous (DKMF) - parking invoi... | 41791 | DKMF | 0.00 | 25.00 | 0.00 | $446.03 |
| ☐ | 3/5/2025 | DSI | RR Parking - DKMF 3/5/2025-3/31/2025 Noula -... | 385404 | DKMF | 25.00 | 0.00 | 0.00 | $471.03 |
| ☐ | 3/1/2025 | DSI | RR MB056 3/1/2025-3/31/2025 Noula - 37t | 384766 | DKMF | 424.79 | 0.00 | 0.00 | $446.03 |
| ☐ | 2/12/2025 | DMC | Credit Note, DKMF Dkge Correction - Tax: Exemp... | 41585 | DKMF | 0.00 | 25.00 | 0.00 | $21.24 |
| ☐ | 2/12/2025 | DMR | Dishonour Reversal Not Receipted Under DKMF ... | 331084 | DKMF | 25.00 | 0.00 | 0.00 | $46.24 |
| ☐ | 2/12/2025 | DMR | Visa | 330632 | DKMF | 0.00 | 25.00 | 0.00 | $21.24 |
| ☐ | 2/12/2025 | DSI | RR  2/12/2025-2/12/2025 | 384065 | DKMF | 25.00 | 0.00 | 0.00 | $46.24 |
| ☐ | 2/12/2025 | DMR | Visa Receipt Receipt27987 | 330631 | DKMF | 0.00 | 424.79 | 0.00 | $21.24 |
| ☐ | 2/11/2025 | DMC | Credit Note, BA Error - Late Fee Ran 3 Times Inst... | 42015 | DKMF | 0.00 | 45.72 | 0.00 | $446.03 |
| ☐ | 2/11/2025 | DSI | Finance Charge | 384043 | DKMF | 23.42 | 0.00 | 0.00 | $491.75 |
| ☐ | 2/11/2025 | DSI | Finance Charge | 383653 | DKMF | 22.30 | 0.00 | 0.00 | $468.33 |
| ☐ | 2/11/2025 | DSI | Finance Charge | 383262 | DKMF | 21.24 | 0.00 | 0.00 | $446.03 |

City of Miami

## TRANSIENT MOORAGE AGREEMENT     MB-56

**PLAINTIFF**

**EXHIBIT 4**

**CONTRACT**

| Vessel Owner's Name: EVANGELOS SKEVOLHLA | Dinner Key Mooring Facility | Buoy No: 56 |
| Vessel Owner's Mailing Address: 2500 SW AFRICAN | Vessel Name: NOLA | Home Port: |
| City: MIAMI | State: FL | Zip: 33 | State Reg. No. or Fed. Doc.No. | |
| Vessel Physical Address: | | | LOA 37 | BEAM | DRAFT 5 |
| City: | State: | Zip: | Vessel Type:  P  (S)  MS   Gas  (Diesel) | | |
| | | | Vessel Model: | | |
| Work Telephone: | Home Telephone: | Dinghy Reg No: | Dinghy Length | Hard/Soft |
| EMAIL: | | | | |

Agreement is made this ___1___ day of __OCTOBER 2024__ , 20___ between the City of Miami (CITY) and vessel owner (OWNER) of the above-described vessel for the lawful use of mooring space at the Dinner Key Municipal Mooring Facility (FACILITY) on a transient basis.

1. The OWNER agrees to pay the CITY for transient OVERNIGHT / MONTHLY (circle one) at the rate of $_____ per DAY / MONTH, plus tax.

2. Transient vessel moorage fees are due and payable in advance. Payments shall be made to the City of Miami, c/o the Marina Facility where the vessel is moored.

3. This agreement is only for the use of mooring space on a transient basis. The OWNER agrees to move the above-described mooring space if requested to do so by the CITY. Mooring space is to be used at the sole risk of the OWNER: the CITY shall not be liable for the care or protection, or security of the vessel, her appurtenances, or contents, or for any loss or damage of any kind or nature to the vessel, her appurtenances, or contents however caused. There is no warranty of any kind as to the condition of the moorings and related equipment and tackle, piers, docks, gangways, ramps, etc. and the CITY shall not be responsible for injuries to persons or property occurring upon CITY property for any reason.

4. OWNER agrees to comply with all federal, state, and local laws pertaining to marina facilities and boating, and with all of the terms of this agreement and CITY rules and regulations governing CITY marinas and mooring facilities. Copies of the Mooring Facilities Rules & Regulations are available at the Harbormaster's Office.

5. TERMINATION: This Agreement may be terminated by either party, with or without cause, by giving fifteen (15) days prior written notice to the other party. Upon termination of this Agreement, whether caused by lapse of time or otherwise, OWNER shall at once vacate the PREMISES and remove the VESSEL from the assigned facility. Should the OWNER fail to vacate the premises upon termination, the CITY may utilize any and all remedies provided by law, and as provided herein, to remove the OWNER and/or the VESSEL from the PREMISES, including, but not limited to Chapter 82, Fla. Stat., Chapter 83, Part I, Fla. Stat., and the general maritime law.

6. Upon failure of the OWNER to comply with the terms of this Agreement or the Mooring Facilities Rules & Regulations or to pay the moorage fee hereinabove provided, this Agreement may be terminated by the CITY. OWNER agrees that in the event that this Agreement is terminated or expires, OWNER will remove his/her vessel from the FACILITY. If the vessel is not removed from the FACILITY within five (5) days of termination or expiration of this Agreement, OWNER hereby agrees and consents to have the vessel towed from the FACILITY at his/her sole risk and expense. To the extent that the vessel remains and is stored at the FACILITY after termination or expiration of this Agreement, OWNER will be responsible and liable for payment of all moorage and late charges, and any lien processing fees that may be applicable.

7. OWNER and CITY agree that the mooring space provided for herein is a "necessary" within the meaning of the federal Maritime Lien Act, 46 U.S.C. B§971-973, and that the CITY, in addition to relying on the credit of the OWNER, shall retain a maritime lien against the vessel, her appurtenances and contents, for all mooring fees, delinquency charges, and for any damage caused to any mooring or related equipment, dock, piling, or any other property of the CITY

   FOR UNDOCUMENTED VESSELS, PURSUANT TO FLORIDA STATUTES SECTION 328.17, IN THE EVENT OF NON-PAYMENT OF MOORAGE FOR A PERIOD OF TWO (2) MONTHS, FACILITY IS AUTHORIZED TO SELL OWNER'S VESSEL AT A NONJUDICIAL SALE.

8. OWNER agrees to release, indemnify, defend, and hold harmless the CITY from any and all liability, claims, demands, damages, losses, or causes of action of any nature whatsoever which may arise from the OWNER's use of mooring space at the herein named facility occasioned wholly or in part by any act or omission of anyone whomsoever including the CITY. OWNER CLEARLY UNDERSTANDS THAT THIS AGREEMENT TO INDEMNIFY THE CITY SHALL INCLUDE CLAIMS IN WHICH IT IS ALLEGED THAT THE CITY WAS NEGLIGENT. Upon receipt of notice from CITY of any such claim, OWNER shall, at his/her expense, appear, defend, and pay all charges of attorneys and all costs and other expenses arising therefrom or incurred in connection therewith including any judgment rendered against the CITY in any such action.

9. The CITY may at any time, in its absolute discretion, require the OWNER to move the vessel from its assigned mooring to another mooring within the facility.

It is understood that this Agreement is not assignable or otherwise transferable. The undersigned person agrees that he/she is the lawful OWNER of the vessel described herein or is authorized to subject said vessel to the provisions of this Agreement.

_____     By: _____
           WITNESS                                      OWNER (Vessel Owner)

_____     By: _____
           WITNESS                                      City of Miami

DXMF TMA Rev. 101615

PLAINTIFF
EXHIBIT 5
NOULA REGISTRATION

# FLORIDA VESSEL REGISTRATION

CO/AGY   1   / 15

T# 2150152289
B# 13272382

FL/DO #  **FL5679MN**    DECAL  **02228513**    Expires  **Midnight Thu 8/19/2027**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| YR/MK | **1986/BEY** | BODY | VS | | | Reg. Tax | | Class Code  104 |
| HIN | BEY01781A686 | | | | | Init Reg.  7.50 | | Tax Months  24 |
| HULL | **FBGLSS** | PROPUL | INBRD | TITLE | 90400888 | County Fee | | Back Tax Mos  0 |
| USE | **EX AV** | TYPE | **AXSAIL** | FUEL | DIESL | Mail Fee  1.00 | | Credit Class |
| DL/FEID | S237006060000 | | | LENGTH | 36'8" | Sales Tax  0.95 | | Credit Months  0 |
| Date Issued | 7/2/2025 | ENG DRIVE | | | | Voluntary Fees | | |
| | | ST OPER | | | | Grand Total  9.45 | | |

**EVANGELOS MICHAEL SKEVOFILAX**
**3400 PAN AMERICAN DR**
**MIAMI, FL 33133-5503**

IMPORTANT INFORMATION
1. Your registration must be updated to your new address within 30 days of moving.
2. Registration renewals are the responsibility of the registrant and shall occur during the 30-day period prior to the expiration date shown on this registration  Renewal notices are provided as a courtesy and are not required for renewal purposes.

# PLAINTIFF

PROGRESSIVE
P.O. BOX 31260
TAMPA, FL 33631

## EXHIBIT 6
## NOULA INSURANCE
## DEC PAGE



EVANGELOS SKEVOFILAX
3191 GRAND AVE # 273
MIAMI, FL 33133

**Policy number: 993735553**
Underwritten by:
Progressive Select Insurance Co
November 28, 2025
Policy Period: Feb 27, 2025 - Feb 27, 2026
Page 1 of  2

**progressive.com**
**Online Service**
Make payments, check billing activity, update
policy information or check status of a claim.

**1-800-PROGRESSIVE   (1-800-776-4737)**
For customer service and claims service,
24 hours a day, 7 days a week.

# Boat Insurance
# Coverage Summary
## This is a copy of your
## Declarations Page

Your coverage began on February 27, 2025 at the later of 12:01 a.m. or the effective time shown on your application. This policy period ends on February 27, 2026 at 12:01 a.m.

This coverage summary replaces your prior one. Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for a watercraft may not be combined with the limits for the same coverage on another watercraft, unless the policy contract or endorsements indicate otherwise. The policy contract is form 2749 FL (07/19). The contract is modified by forms Z820 (12/16), A314 (09/21) and A359 FL (08/22).

## Drivers and household residents

**Evangelos Skevofilax**
Additional information: Named insured

## Outline of coverage

**1986 Beneteau 34 Sail**
Hull ID #:  BEY01781A686
Propulsion type: NonPower

| | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $915 |
| Bodily Injury and Property Damage Liability | $300,000 combined single limit each accident | | |
| Fuel and Oil Spill Coverage | $1,076,000 per occurrence | | 2 |
| Coastal Navigation | 75 Nautical Miles | | included |
| **Subtotal policy premium** | | | **$917.00** |
| 2023-10 FIGA Assessment | | | 9.17 |
| **Total 12 month policy premium and fees** | | | **$926.17** |

## Premium discounts

| Policy | |
|---|---|
| 993735553 | Home Owner, Prompt Payment and Transfer |
| Driver | |
| Evangelos Skevofilax | Safety Course and Responsible Driver |

Form 6489 FL (06/23)


Continued

```
****************************UNITED AMERICAN LIEN & RECOVERY************************
```

PLAINTIFF

EXHIBIT 7

LIEN

NOTICE

CITY OF MIAMI
DINNER KEY MARINA
3400 PAN AMERICAN DR

MIAMI FL 33133


RE:  Year:           1986
     Manuf:          BEY
     Hull ID:        BEY01781A686
     Customer Name:  EVANGELOS SKEVOFILAX


Date Notices Sent:     09/11/25
Case Number:           V13257
Last Day of Payment:   11/21/25


**ATTACHED ARE 2 COPIES OF THE NOTICE OF SALE OF VESSEL**

           1.          **POST IN MARINA OFFICE**
           2.          **POST ON VESSEL**

This is your confirmation letter that a lien has started on the above mentioned
vessel.

As of  09/11/25  , the balance owed is $   6,052.49  which includes our
fee of $ 725.00. The monthly and/or daily storage will continue to accrue thru
last day of payment.

If no interested parties contact our office by the last day of payment,
we will apply for the title in the marina's name.  Title will be received
by our office...within 7-10 business days from application.


JUST SOME FACTS:

1.  If any parties contact you, please refer them to our office.

## "NOTICE OF NONJUDICIAL SALE OF VESSEL"
### CASE #: V13257

```
------Registered Owner------              -----Customer------
EVANGELOS MICHAEL SKEVOFILAX
3400 PAN AMERICAN DR
                                          EVANGELOS SKEVOFILAX
MIAMI FL 33133                            250 95TH ST
                                          SURFSIDE FL 33154


--------Lienholder----------              -------------Lienor----------
NONE                                      CITY OF MIAMI
                                          DINNER KEY MARINA
                                          3400 PAN AMERICAN DR
                                          MIAMI FL 33133
                                          305-579-6950
```

Year:  1986          Manufacturer: BEY              Reg #:  FL5679MN

Hull ID #:  BEY01781A686      DO#:              Prop:  INBOARD

Use: EXEMPT          Fuel: DIESEL

Hull: FIBERGLASS                                  Length:  36    ft

Each of you are hereby notified that the above mentioned vessel was brought in for storage/repairs at the request of
EVANGELOS SKEVOFILAX      on 10/01/24  and the above mentioned marina is in possession of and claims a lien on the vessel.

The lien claimed by the above named lienor is a result of the default of payment and is subject to enforcement pursuant to
F.S. 328.17 and unless said vessel is redeemed by payment as allowed by law  Otherwise, the above described vessel will be
sold after 60 days to satisfy the lien.

The above mentioned vessel will be sold at public auction on 11/21/25      at 10:00 am  at the premises of United American Lien
& Recovery 3411 NW 9th Ave Suite 707 Ft Lauderdale, Florida.

Itemized Charges are as follows:

**PLAINTIFF EXHIBIT 7A LIEN NOT ITEMIZED**

| | | |
|---|---|---|
| REPAIRS/LABOR: | $ | |
| STORAGE AT TIME OF NOTICE: (MONTHLY      DAILY 350.00    ) | $ | 5,302.49 |
| PROFESSIONAL FEE: | $ | 750.00 |
| TOTAL AMOUNT DUE: | $ | 6,052.49 |

Prior to sale or other disposition of the vessel pursuant to this section, any interested party may pay the amount necessary to
satisfy the lien and thereby redeem and take possession of the vessel.  Upon receipt of such payment the marina shall return the
vessel to the interested party making such payment and thereafter shall have no liability to any person with respect to such vessel.

In the event of a sale, the marina may satisfy its lien from the proceeds of the sale, provided the marina's lien has priority over
all other liens on the vessel other than a prior lien perfected under the state or federal law. The lien rights of secured lienholders
are automatically transferred to the remaining proceeds of the sale.  A notice of the balance of the proceeds shall be delivered by
the marina to the owner and secured lienholder in person or by certified mail to the owners' and lienholders'last known address. If
the owner or lienholder does not claim the balance of the proceeds within 1 year after the date of sale, the proceeds shall be deemed
abandoned, and the owner or lienholder shall have no further obligation with regard to the payment of the proceeds.

_Victo L Surul_
Signature of Authorized Agent for Marina
Date of Notice: 09/11/25

UNITED AMERICAN LIEN & RECOVERY
P.O. BOX 5823
FT LAUDERDALE FLORIDA 33310
PH: (954) 563-1999
FX: (954) 563-1393

LICENSED AUCTIONEERS
FLAB 422, FLAB 765 & 1911

# UNITED AMERICAN LIEN & RECOVERY

PLAINTIFF

# EXHIBIT 8
TOTAL FINES
NOULA AND
TINDER

DATE: _11/21/25_

RE: _V13257_

Below is the requested breakdown of charges until _11/21/25_.

Repairs/Labor: _∅_

Storage/Dockage: _30152.49_

Lien Fee: _750.00_

TOTAL: _30,902.49_

The above figures are good until _11/21_ after that date the charges will increase by _N/A_ per month or _N/A_ per day.

ALL PAYMENTS MUST BE PAID IN CASH OR CASHIER CHECK ONLY IN OUR OFFICE. CASHIER CHECK MUST BE MADE PAYABLE TO UNITED AMERICAN LIEN & RECOVERY. OUR TAX ID# IS 592785008.

***ANY LOAD CHARGES ARE NOT INCLUDED IN THE ABOVE TOTALS, THEY MUST BE PAID DIRECTLY TO THE MARINA AT THE TIME THE VESSEL IS PICKED UP

*"Established in 1984"*
(954) 563-1999
UNITED AMERICAN LIEN   P.O. BOX 5823   FT. LAUDERDALE, FL 33310
BRANCHES: FLORIDA & NEW JERSEY



EXHIBIT 9 TENDER REMOVED FROM WATER, DISASSEMBLED, AND TRASHED

11/26/25, 4:15 PM                                    Gmail - Dinner Key Marina: Payment Overdue

 Gmail                                     **evan skev <evantech@gmail.com>**

## Dinner Key Marina: Payment Overdue

**Pino, Pablo** <PPino@miamigov.com>                          Thu, Sep 19, 2024 at 10:44 AM
To: "evantech@gmail.com" <evantech@gmail.com>
Cc: "Bustamante, Alex" <AlexBustamante@miamigov.com>, "Nesbitt, Thomas" <TNesbitt@miamigov.com>, "Quinones, Guillermo" <GQuinones@miamigov.com>

                                    PLAINTIFF  EXHIBIT 10
                                    ACCESS TO PROPERTY DENIED
Good morning Skev,                  WITHOUT LEGAL BASIS
                                    9/19/2024

Due to payment not being received for your September dockage, we can not activate your key until payment has been made. In reviewing your account, the outstanding balance of $1662.78 has nit been met.

We do apologize for any inconvenience though until this payment has been received we cannot active your access card.


Thank you



**Thank you.**

Pablo Pino

Marinas Supervisor

3400 Pan American Drive

Miami, FL 33133

305-329-4755

ppino@miamigov.com


**From:** Evan Skev <evantech@gmail.com>
**Sent:** Thursday, September 19, 2024 10:38 AM
**To:** Bustamante, Alex <AlexBustamante@miamigov.com>
**Cc:** E Skev <skev.evan@gmail.com>; Quinones, Guillermo <GQuinones@miamigov.com>; Nesbitt, Thomas <TNesbitt@miamigov.com>; Pino, Pablo <PPino@miamigov.com>; Lutton, Donald <dlutton@miamigov.com>
**Subject:** Re: Dinner Key Marina: Payment Overdue

---

**CAUTION:** This is an email from an external source. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good morning, may I have my key card activated again please


Thank you


Evan Skev

[Quoted text hidden]

11/24/25, 10:08 AM                                Gmail - Written Permission Requested to Retrieve Personal Items

 Gmail                                                     evan skev <evantech@gmail.com>

## Written Permission Requested to Retrieve Personal Items

**VICKI HURD** <unitamer@bellsouth.net>                          Mon, Nov 24, 2025 at 9:48 AM
To: Evan Skev <evantech@gmail.com>

The public sale was completed at 10:15 on 11/21.

Thank you!                           PLAINTIFF
                                     EXHIBIT 11
Vicki Hurd                           SALE OF NOULA
Office Manager                       COMPLETED

United American Lien & Recovery
3411 NW 9th Ave #707
Ft Lauderdale, FL 33309
954-563-1999

[Quoted text hidden]



## Statement Of Account

**ALL Billing Agents**

UAL Skevofilax Evangelos
3400 Pan American dr.
Miami  Fl  33133

### PLAINTIFF
### EXHIBIT 13
### LATE FEES
### ASSESSED

| | |
|---|---|
| Customer: | UAL Skevofilax Evangelos |
| Customer ID: | 141027 |
| From Date: | 11/6/2023 |
| To Date: | 10/29/2025 |

| | | | Opening Balance: | | 0.00 |
|---|---|---|---|---|---|

| Date | Detail | Reference | Debit | Credit | Amount |
|---|---|---|---|---|---|
| 10/29/2025 | RR 06_075 8/26/2025-9/15/2025 Skev Dinghy - 10ft +...<br>Dockage (DKM) - Monthly 09 - Tax:  ST-DK @ 7% 06_075<br>Dockage (DKM) - Monthly 09 - Tax:  ST-DK @ 7% 06_075 | 44660 | | 1,981.22 | -1,981.22 |
| 10/29/2025 | RR 06_075 9/30/2025-10/29/2025 Noula - 37ft<br>Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7% | 401585 | 5,938.50 | | 3,957.28 |
| 10/11/2025 | Finance Charge | 399807 | 709.15 | | 4,666.43 |
| 10/11/2025 | Finance Charge | 400179 | 26.74 | | 4,693.17 |
| 10/1/2025 | RR Dinghy Impound 9/21/2025-9/29/2025 Skev Dinghy - 10ft +...<br>Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7%<br>Dinghy Impound<br>Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7%<br>06_075 | 398712 | 3,226.05 | | 7,919.22 |
| 9/20/2025 | RR 06_075 8/26/2025-9/15/2025 Skev Dinghy - 10ft +...<br>Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7%<br>Dinghy impound<br>Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7%<br>06_075<br>Dockage (DKM) - Monthly 09 - Tax: ST-DK @ 7% 06_075<br>Dockage (DKM) - Monthly 09 - Tax: ST-DK @ 7% 06_075 | 398537 | 3,415.02 | | 11,334.24 |
| 9/16/2025 | RR Dinghy Impound 9/10/2025-9/16/2025 Skev Dinghy - 10ft +...<br>Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7%<br>Dinghy Impound<br>Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7%<br>06_075 | 398488 | 2,509.15 | | 13,843.39 |
| 9/14/2025 | Finance Charge | 397801 | 239.66 | | 14,083.05 |
| 9/14/2025 | Finance Charge | 398249 | 25.47 | | 14,108.52 |
| 9/6/2025 | RR Dinghy Impound 9/8/2025-9/9/2025 Skev Dinghy - 10ft +...<br>Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7%<br>Dinghy Impound<br>Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7%<br>06_075 | 397788 | 1,433.80 | | 15,542.32 |
| 9/5/2025 | RR Dinghy Impound 9/5/2025-9/5/2025 Skev Dinghy - 10ft +...<br>Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7%<br>Dinghy Impound<br>Dockage (DKM) - Transient Overnight  09 - Tax: ST-DK @ 7%<br>06_075 | 397770 | 358.45 | | 15,900.77 |
| 9/4/2025 | Invoice, United American Lien Processing Fee.<br>United American Lien Processing Fee. | 397754 | 650.00 | | 16,550.77 |

 Gmail

evan skev <evantech@gmail.com>

---

## Request for Account Statements

---

**Nesbitt, Thomas** <TNesbitt@miamigov.com>                              Wed, Oct 29, 2025 at 9:23 AM
To: "evantech@gmail.com" <evantech@gmail.com>
Cc: "Quinones, Guillermo" <GQuinones@miamigov.com>, "Bustamante, Alex" <AlexBustamante@miamigov.com>, "Nesbitt, Thomas" <TNesbitt@miamigov.com>, "Pino, Pablo" <PPino@miamigov.com>

Good morning Mr. Skevofilax,

Attached is a current statement of your account.

Access to your impounded vessel and to remove unaffixed property has been denied. You were given multiple opportunities to get essential items such as medication and clothes from the vessel when it was first impounded.

PLAINTIFF

Thank you,

EXHIBIT 14A
ACCESS TO SEIZED
PROPERTY DENIED

**Jocko Nesbitt**

**City of Miami**
**Marinas Manager Assistant**
3400 Pan American Dr.
Miami, FL 33133
**Tel: 305-329-4755**



**From:** Evan Skev <evantech@gmail.com>
**Sent:** Tuesday, October 28, 2025 4:12 PM
**To:** Quinones, Guillermo <GQuinones@miamigov.com>; Nesbitt, Thomas <TNesbitt@miamigov.com>
**Subject:** Re: Request for Account Statements

11/24/25, 7:09 PM                          Gmail - Request for Account Statements

 Gmail                                        evan skev <evantech@gmail.com>

## Request for Account Statements

**Evan Skev** <evantech@gmail.com>                          Tue, Oct 28, 2025 at 4:11 PM
Reply-To: evantech@gmail.com
To: "Quinones, Guillermo" <GQuinones@miamigov.com>, "Nesbitt, Thomas" <TNesbitt@miamigov.com>

4th and Final request for access, inspection, removal of unaffixed property, and a full,
detailed statement of account dating to November 5, 2023

[Quoted text hidden]


                              PLAINTIFF
                              EXHIBIT 14B
                              PREVIOUS REQUESTS IGNORED

EXHIBIT A

PLAINTIFF EXHIBIT 15

LIEN NOTICE CERTIFIED MAIL

EXHIBIT 15 MAILED SEPTEMBER 15 2025

13257



ESTD    1984

**UNITED AMERICAN LIEN**
★ ★ ★
PO BOX 5823
FT LAUDERDALE, FL 33310



CERTIFIED MAIL

7019 1640 0002 0488 2736

**CPU**



U.S. POSTAGE IM
**$10.48**
FCML   RDC 99
Orig: 33431
Dest: 33133
09/15/25
2000052412

Evangelos Michael Skevofilax
3400 Pan American Dr
Miami   FL   33133

RETURN
RECEIPT
REQUESTED

33133-550300

PLAINTIFF EXHIBIT 17

# SUGGESTED NOTICE OF NONJUDICIAL SALE FLHSMV

**NOTICE OF NONJUDICIAL SALE OF A VESSEL**

DATE _____

TO:   REGISTERED OWNER                                                      **LIENHOLDER**

NAME _____          NAME _____

ADDRESS _____          ADDRESS _____

CITY, STATE, ZIP _____          CITY, STATE, ZIP _____

NAMES AND ADDRESSES OF ANY OTHER PERSONS OR ANY OTHER LIENHOLDERS, CLAIMING AN INTEREST IN THE VESSEL.

Name _____

ADDRESS _____          ADDRESS _____

CITY, STATE, ZIP _____          CITY, STATE, ZIP _____

LIENOR (NAME OF MARINA)                                      **DESCRIPTION OF VESSEL**

NAME _____          YEAR _____ MAKE _____ FL

                                                                 # _____ HIN # _____

ADDRESS _____          LOCATION OF VESSEL _____

CITY, STATE, ZIP _____          _____

TELEPHONE _____

Name _____

EACH OF YOU ARE HEREBY NOTIFIED THAT THE ABOVE-DESCRIBED VESSEL WAS BROUGHT IN FOR STORAGE/REPAIRS AT THE REQUEST

OF _____ ON _____ AND THE ABOVE-NAMED MARINA
        (PERSON WHO AUTHORIZED STORAGE)        (DATE)

IS IN POSSESSION OF AND CLAIMS A LIEN ON THE ABOVE-DESCRIBED VESSEL FOR STORAGE CHARGES ACCUMULATED IN THE AMOUNT OF:

(TOTAL) $ _____ . ITEMIZED CHARGES:

(REPAIR CHARGES) $ _____ . (TOTAL STORAGE CHARGES) $ _____ , FOR _____ DAYS, AT $ _____

PER DAY, (RECOVERY CHARGES, IF APPLICABLE) $ _____ , AND (ADMINISTRATIVE FEES) _____ .

THE STORAGE CHARGES WILL CONTINUE TO ACCUMULATE AT THE RATE OF $ _____ PER DAY.

THE LIEN CLAIMED ABOVE IS A RESULT OF THE DEFAULT OF PAYMENT TO THE MARINA NAMED ABOVE AND IS SUBJECT TO ENFORCEMENT PURSUANT TO SECTION 328.17, FLORIDA STATUTES, UNLESS SAID VESSEL IS REDEEMED FROM THE MARINA BY PAYMENT AS ALLOWED BY LAW. OTHERWISE, THE ABOVE-DESCRIBED VESSEL WILL BE SOLD AFTER 60 DAYS TO SATISFY THE LIEN.

A SALE IS TO BE HELD AT _____ COMMENCING AT

_____ AM/PM ON THE _____ DAY OF _____ , 20 _____ .

**STATEMENT OF OWNER(S) RIGHTS**

BEFORE ANY SALE OR OTHER DISPOSITION OF THE VESSEL PURSUANT TO THIS SECTION, THE OWNER OR THE LIENHOLDER MAY PAY THE AMOUNT NECESSARY TO SATISFY THE LIEN AND THE REASONABLE EXPENSES AND LATE PAYMENT INCURRED UNDER THIS SECTION AND THEREBY REDEEM AND TAKE POSSESSION OF THE VESSEL. UPON RECEIPT OF SUCH PAYMENT, THE MARINA SHALL RETURN THE PROPERTY TO THE OWNER OR LIENHOLDER MAKING SUCH PAYMENT AND THEREAFTER SHALL HAVE NO LIABILITY TO ANY PERSON WITH RESPECT TO SUCH VESSEL.

**IN THE EVENT OF A SALE UNDER THIS SECTION, THE MARINA MAY SATISFY ITS LIEN FROM THE PROCEEDS OF THE SALE, PROVIDED THE MARINA'S LIEN HAS PRIORITY OVER ALL OTHER LIENS ON THE VESSEL OTHER THAN A PRIOR LIEN PERFECTED UNDER THE STATE OR FEDERAL LAW.** THE LIEN RIGHTS OF SECURED LIENHOLDERS ARE AUTOMATICALLY TRANSFERRED TO THE REMAINING PROCEEDS OF THE SALE. THE BALANCE, IF ANY, SHALL BE HELD BY THE MARINA FOR DELIVERY ON DEMAND TO THE OWNER. A NOTICE OF ANY BALANCE SHALL BE DELIVERED BY THE MARINA TO THE OWNER IN PERSON OR BY CERTIFIED MAIL TO THE LAST KNOWN ADDRESS OF THE OWNER. IF THE OWNER DOES NOT CLAIM THE BALANCE OF THE PROCEEDS WITHIN 1 YEAR AFTER THE DATE OF SALE, THE PROCEEDS SHALL BE DEEMED ABANDONED, AND THE MARINA SHALL HAVE NO FURTHER OBLIGATION WITH REGARD TO THE PAYMENT OF THE BALANCE. IN THE EVENT THAT THE MARINA'S LIEN DOES NOT HAVE PRIORITY OVER ALL OTHER LIENS, THE SALE PROCEEDS SHALL BE HELD FOR THE BENEFIT OF THE HOLDERS OF THOSE LIENS HAVING PRIORITY. A NOTICE OF THE AMOUNT OF THE SALE PROCEEDS SHALL BE DELIVERED BY THE MARINA TO THE OWNER OR SECURED LIENHOLDER IN PERSON OR BY CERTIFIED MAIL TO THE OWNER'S OR THE SECURED LIENHOLDER'S LAST KNOWN ADDRESS. IF THE OWNER OR THE SECURED LIENHOLDER DOES NOT CLAIM THE SALE PROCEEDS WITHIN 1 YEAR AFTER THE DATE OF SALE, THE PROCEEDS SHALL BE DEEMED ABANDONED, AND THE OWNER OR THE SECURED LIENHOLDER SHALL HAVE NO FURTHER OBLIGATION WITH REGARD TO THE PAYMENT OF THE PROCEEDS.

DATED THIS _____ DAY OF _____ , 20 ____ . MARINA _____

                                                       (SIGNATURE OF AUTHORIZED AGENT)

This is a suggested not a prescribed form.



PLAINTIFF

EXHIBIT 18
NOTICES
POSTED
INSTEAD OF
IMPOUND





PLAINTIFF
EXHIBIT 20
NOTICES POSTED
INSTEAD OF
IMPOUND



PLAINTIFF
EXHIBIT 21
NOTICES POSTED
INSTEAD OF
IMPOUND



PLAINTIFF
EXHIBIT 22
NOTICES POSTED
INSTEAD OF
IMPOUND







EXHIBIT 27
TENDER
FUEL TANK
INVERTED



EXHIBIT 28
TENDER
FILLING WITH
RAIN WATER

☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.
☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION ☒ CIVIL ☐ DISTRICTS ☐ OTHER | SUMMONS 20 DAY CORPORATE SERVICE (a) GENERAL FORMS | CASE NUMBER 2025-023-258-CA-01 |
|---|---|---|
| **PLAINTIFF(S)** EVANGELOS SKEVOFILAX | **VS. DEFENDANT(S)** CITY OF MIAMI | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s): CITY OF MIAMI CLERK OF COURT

3500 PAN AMERICAN DR

MIAMI FL 33133

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney: EVANGELOS SKEVOFILAX, pro se

whose address is: 3400 PAN AMERICAN DR MIAMI FL 33133

CLOCK IN

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| JUAN FERNANDEZ-BARQUIN CLERK OF THE COURT AND COMPTROLLER MIAMI-DADE COUNTY CIRCUIT AND COUNTY COURTS | BY:_____ DEPUTY CLERK | DATE |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@jud11.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

CLK/CT. 314  Rev. 06/23        Clerk's web address: www.miamidadeclerk.gov

| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. ☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
|---|---|---|
| **DIVISION** ☒ CIVIL ☐ DISTRICTS ☐ OTHER | **SUMMONS 20 DAY CORPORATE SERVICE** (a) GENERAL FORMS | **CASE NUMBER** 2025-023-258-CA-01 |
| **PLAINTIFF(S)** EVANGELOS SKEVOFILAX | **VS. DEFENDANT(S)** UNITED AMERICAN LIEN AND RECOVERY | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s): "KAREN" or VICKI HURD

3411 NW 9TH AVENUE, SUITE 707

FORT LAUDERDALE FL 33309

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney: EVANGELOS SKEVOFILAX, pro se

whose address is: 3400 PAN AMERICAN DR MIAMI FL 33133

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days.**" after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| **JUAN FERNANDEZ-BARQUIN** **CLERK OF THE COURT AND COMPTROLLER** **MIAMI-DADE COUNTY** **CIRCUIT AND COUNTY COURTS** | BY:_____ DEPUTY CLERK | DATE |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@jud11.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

# IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO**:** <u>2025-023258-CA-01</u>

SECTION: <u>CA-08</u>

JUDGE: <u>Robert T. Watson</u>

**Evangelos Skevofilax,**

     Plaintiff, pro se

vs.

**City of Miami,**

**United American Lien and Recovery,**

     Defendant.

_____/

## Emergency Motion for Injunctive and Declaratory Relief

Plaintiff Evangelos Skevofilax moves this honorable Court for an
Emergency Injunction and Declaratory Judgement, compelling officials and
employees of the City of Miami ("City") and Dinner Key Marina ("DKM") to
cease the persistent deprivation of lawful, civil, and human rights and declaring
Plaintiff's legal and contractual rights.

This emergency arises from the retaliatory seizure, prolonged possession,
and nonjudicial sale of Plaintiff's yacht ("Noula") and the impound and destruction
of Plaintiff's yacht tender ("Tender"). The factual allegations in this motion
involve breach of contract and the deprivation of rights protected by ordinance,
statute, and U.S. Constitution.

Throughout the past fourteen weeks of this ordeal, Plaintiff has been
homeless because of the City's actions. The City's bases for their actions have been
limited to fiction and flimsy pretext. The Memorandum of Law supporting this
motion is comprehensive, as it relates to the claims described herein.

## Introduction

1.      Noula has served as domicile since Plaintiff's arrival at DKM in 2023.
Prior to seizure, Noula was located on Mooring Ball 56, in the DKM Mooring
Field ("DKMF"), approximately one and one-half miles offshore. Prior to seizure,
Tender was his sole method of conveyance between shore and Noula.

2.      The City's seizure of Tender and Noula caused, and continues to
cause, irreparable harm to Plaintiff, forcing him into homelessness and depriving
him of his lawful home and constitutionally protected speech interests, property
interests and due process interests.

Verified Motion

3.      The effects of being homeless quickly manifested themselves on Plaintiff's physical and mental health, affecting every aspect of his personal and professional life.

4.      As a result of the extreme emotional distress caused by the seizure of his property and home, Plaintiff sought and receives ongoing treatment from a physician and from a mental health professional.

5.      Plaintiff will be permanently and irreparably harmed if the City is permitted to continue the prolonged, unlawful possession of his property.

6.      Plaintiff will be permanently and irreparably harmed if this Court allows the City to complete the November 21, 2025, nonjudicial sale of Noula, as she is his home.

7.      The prolonged, unlawful possession of Plaintiff's domicile has so diminished its value as to rise to the level of a taking. The unlawful destruction of Tender and disposal in the trash heap is an indicator of systemic issues.

## Statement of Fact

8.      Plaintiff has no history of violation of policy or law since his arrival at DKM on November 5, 2023, aside from late payments caused by an injury requiring major surgery and preventing him from earning a living.

9.      Plaintiff's marina account balance was $0.00 on July 31, 2025. Plaintiff's monthly moorage fee of $424.79 became delinquent on August 11, 2025. Both contract and code provide a specific timeline and procedure for addressing delinquent moorage fee.

10.     On the afternoon of August 20, 2025, Pablo Pino ("Pino"), a DKM Supervisor, attempted to coerce Plaintiff regarding payment of the delinquent August 2025 moorage fee by stopping Plaintiff as he exited the DKM office. Upon hearing Plaintiff assert his lawful rights, Pino became irate. Pino gestured and

Verified Motion

yelled loudly to DKM office staff Hyron Figueredo ("Figueredo") to revoke
Plaintiff's "access to amenities." This marked the commencement of the City's
adverse action against Plaintiff.

11.     On August 21, 2025, at 8:00 a.m., the City revoked Plaintiff's lawful
right to the DKM dinghy dock, ordering him to remove Tender and agreeing to
allow Tender to remain until 5:30 p.m. that day.

12.     On August 21, 2025, at 1:00 p.m., Pino informed Plaintiff via email
(Exhibit 1) of the impound of Tender and termination of Plaintiff's Moorage
Agreement ("Contract"). The impound of Tender meant Plaintiff would be unable
to make the required journey from shore to reach home. The termination meant
Plaintiff was expelled from the marina.

13.     Guillermo Quinones ("Quinones"), the City's Marinas Manager and
Nesbitt and Pino's direct superior, was copied on the email described in Paragraph
11.

14.     The City was and is aware that Noula is Plaintiff's home and that
Tender was Plaintiff's sole conveyance between shore and home.

15.     When contacted via email by District Two Commissioner Pardo's
office, Quinones was unable to articulate a legal or contractual basis for the
impound of Tender and termination of Plaintiff's contract, resorting to flimsy
pretext of "late payments." (Exhibit 3A and Exhibit 3B)

16.     On August 25, 2025, Nesbitt described Tender seizure as coercion,
attempting to force Plaintiff to pay August monthly moorage fee.

17.     On September 3, 2025, Quinones impounded Noula and subsequently
filed a nonjudicial sale lien, a material breach of Contract and violation of City
Ordinance § 50-338.

18.     The lien notice is not itemized, as required by Fla. Stat. § 328.17,
omitting statutorily required itemization and failing to mention the fines assessed

Verified Motion

4

on Tender, although they were included in the total. The lien notice was unreadable, printed in 8pt font.

19.     FLHSMV recommended lien notice provides suggested itemization for a nonjudicial lien notice.

20.     The lien's "date notice sent" field is false, indicating a notice date of September 11, 2025, four days prior to the date the lien notice was mailed.

21.     On or about October 31, 2025, Defendants removed Tender from the water, discarded Plaintiff's personal belongings, and discarded Tender in the dumpster corral.

22.     At the time the City commenced the imposition of what would amount to over $30,000.00 in "storage fees," Tender was lawfully docked; neither a safety hazard nor a navigation hazard; not abandoned; causing no harm to the environment; its statutorily required registration not disputed by the City.

23.     The City offered no legal or basis for the impoundment of Tender, using Plaintiff's expired driver license and Noula's expired registration and insurance as pretext. Plaintiff's driver license and Noula's registration and insurance have been valid without interruption since arrival at DKM.

24.     On August 21, 2025, the day Tender was seized, Noula's monthly moorage fee was nine days delinquent, subject to neither late charges nor impound and fines.

25.     The City is thirsty for revenues and the "storage fees" amount to fines; unmistakably punitive in nature. Tender was assessed fines of $150.00 daily, double the price of a slip large enough for a dozen Tenders.

26.     The seizures and the termination are clear violations of contract, ordinance, and Plaintiff's protected speech interests, property interests, and due process interests.

Verified Motion

27.     The City is not harmed by the granting of this motion, as it has no legal or contractual basis for its actions or for its persistence in denying Plaintiff's lawful and civil rights.

28.     This Court rights a wrong by ordering the City to cease the arbitrary deprival of Plaintiff's property interests and due process interests granting each of Plaintiff's requests for relief, allowing him to continue the formal assertion of his lawful and civil rights and begin the healing process after one hundred days of forced homelessness.

29.     Granting Plaintiff's request for Slip 44 at Pier 7 at the City's expense is unusual but warranted, considering the City's unconscionable actions, failure to notify law enforcement, and destruction of Tender.

30.     Granting Plaintiff's request for hotel accommodations is reasonable, as Noula is uninhabitable after one hundred days of exposure to the elements and lack of maintenance.

31.     There is public interest in upholding the sanctity of Plaintiff's contract with the Defendants. Granting Plaintiff's motion provides clear indication to the City that it must take affirmative action to cure the ongoing deprivation of the rights of DKM clientele. Granting this motion indicates this Court values the rights of citizens, regardless of their socioeconomic status.

32.     There is public interest in Plaintiff's forthcoming challenge of Fla. Stat. § 328.17, based on its lack of specificity and on its lack of provision for constitutionally guaranteed due process.

33.     Injunctive relief is appropriate in that:

   a.  Plaintiff is likely to succeed on the merits of his claims;

   b.  The City has no legal or contractual basis for the possession of Plaintiff's property or basis to proceed with a non-judicial sale or title reassignment of Noula;

Verified Motion

    c.  The City has no legal or contractual basis for seizing and destroying Tender;

    d.  Plaintiff has clearly articulated, and supported with evidence, the City's history of failing to fulfill its contractual and legal obligations related to these claims;

    e.  There is no genuine dispute as to law or fact in Plaintiff's breach of contract claims and he is likely to be entitled to judgment as a matter of law; and

    f.  There is no genuine dispute as to law or fact in Plaintiff's violation of ordinance claims and he is likely to be entitled to judgment as a matter of law.

34.    Damages are appropriate in that the City disregarded the law, seized Plaintiff's Tender without a legal basis, and then tossed it into the dumpsters, failing to notify law enforcement or Plaintiff.

35.    It is appropriate to waive the bond requirements of Florida Rules of Civil Procedure 1.610 (b) due to Plaintiff's inability to pay and due to the clear law and fact in this case.

36.    There is no other adequate post-deprivation remedy available to Plaintiff.

37.    The City has a history of depriving Plaintiff of his civil rights. In September 2024, Defendants cancelled access to the Pier where Plaintiff's domicile was located, a clear violation of Plaintiff's constitutionally protected property interests and due process interests. (Exhibit 14A and Exhibit 14B)

38.    As a matter of law, the City commits per se violations of FDUTPA via the assessment of late fees;

Verified Motion

39.     The City typically posts notices on Tenders they find unlawfully
docked at the DKM dinghy dock, supporting Plaintiff's forthcoming Equal
Protection – Class of One cause of action.

40.     The factual and legal bases in support of Plaintiff's request herein are
further set forth in the Memorandum of Law.

**Memorandum Of Law**

41.     Under Rule 1.610, Plaintiff is entitled to an emergency injunction due
to the Coty's seizure of his property in violation of a valid contract, local
ordinance, and Plaintiff's civil rights.

42.     Neither contract nor code grants the City authority to effect self-help
impounds, assess excessive fines, or file liens as collections actions arising from a
ten-day payment delinquency.

43.     The City could have avoided controversy, prevented irreparable harm,
and precluded this action by choosing to uphold the covenant of good faith and fair
dealing inherent to any contract and requesting updated documents from Plaintiff.

**Breach of Contract**

44.     The City violated the covenant of good faith and fair dealing when
they  impounded Tender based on the pretext that Noula's registration (Exhibit 5)
was expired and without requesting updated documentation and a providing
Plaintiff a "time to cure."

45.     The City's failure to fulfill Clause 5, Clause 6, and Clause 7 of the
moorage agreement constitutes three material breaches of contract. (Exhibit 4)

**Violation of Ordinance**

46.     The procedure and timeline for addressing delinquent payments is
unambiguously stated in City Municipal Code § 50-338."

Verified Motion

47.     Plaintiff's lawful right of use to the DKM dinghy dock is stated unambiguously in City Municipal Code § 50-428.

48.     Importantly, Noula's registration is unrelated to Plaintiff's lawful right to use of the DKM dinghy dock. At the time of seizure, Tender was lawfully docked and properly registered with the State.

49.     The City typically gives notice to unlawfully docked tenders and dinghies, as shown in Exhibits

Verified Motion

**Per se Violations**

**Default Violations of FDUTPA**

**Fla. Stat. § 83.808 (3)**

50.     The City assesses late fees which are not contractually unstipulated, thereby harming Plaintiff and others. Violations of Fla. Stat. § 83.808 constitute a per se violation of FDUPTA. (Exhibit 13)

**Fla. Stat § 713.78**

**Breach of Duty of Care**

**Deprival of Plaintiff's protected speech interests, property interests, and due process interests**

51.     The City breached its duty of care via their removal of Tender from the water, disassembly, and discard in the dumpster corral. (Exhibit 9)

52.     The City violated statute by failing to notify law enforcement, failing to file a lien, and failing to notify Plaintiff of their removal of Tender from the water, disassembly, and discard in the dumpster corral, in violation of .

53.     The City deprived Plaintiff of interests protected by the U.S. Constitution when it impounded and when it destroyed Tender.

54.     The City's failure to fulfill obligations described in Clause 5, Clause 6, and Clause 7 of the moorage agreement constitute material breaches of contract.

**Prayer For Relief**

Plaintiff respectfully requests relief from this honorable Court in the form of:

a.  an order compelling Defendants to appear and show cause;

Verified Motion

b. a preliminary injunction invalidating the lien, sale and/or title reassignment of Noula;

c. the rescission of all fines and fees associated with the seizure of Noula and a stay on further collections actions, pending the adjudication of Plaintiff's claims, including appeals;

d. declaring DKMF customers legal right to the DKM dinghy dock under Miami, Florida Code § 50-428;

e. declaring Plaintiff's right to "cure" a default caused by delinquent payment, as granted by Miami, Florida Code § 50-338;

f. declaring the City's failure to fulfill its contractual obligations as stipulated in Clause 5, Clause 6, and Clause 7 of the contract constituted a material breach of contract;

g. an order compelling the City to return Plaintiff's personal belongings and Tender motor;

h. an order compelling the City to provide Slip 44 on Pier 7 as accommodation during repairs to Noula, at the City's expense and until Plaintiff's claims have been fully adjudicated, including appeals;

i. an order to provide accommodations for Plaintiff at Arya Hotel, Coconut Grove, until Noula is habitable;

j. an order compelling the City to take affirmative action to cure the persistent noncompliance with contract and law and the persistent deprivation of constitutionally protected interests at Dinner Key Marina;

k. an injunction compelling the City to cease per se violations of FDUPTA;

l. any such other relief as this Court deems just and equitable.

Verified Motion

## Index of Exhibits

| | | |
|---|---|---|
| Email Termination and Expulsion | August 21, 2025 | (Exhibit 1) |
| Email re: Tender Seized | August 21, 2025 | (Exhibit 1) |
| Email re: Noula Seized | September 3, 2025 | (Exhibit 2) |
| Quinones Email to City Hall | August 22, 2025 | (Exhibit 3A) |
| Quinones pretext for seizure and term | August 22, 2025 | (Exhibit 3B) |
| Moorage Agreement | October 1, 2024 | (Exhibit 4) |
| Noula & Tender Registrations | June 2023 | (Exhibit 5) |
| Noula Vessel Insurance | | (Exhibit 6) |
| Lien Notice not itemized | September 15, 2025 | (Exhibit 7) |
| Email Lien Invoice | November 21, 2025 | (Exhibit 8) |
| Photos of Trashed Tender | November 1, 2025 | (Exhibit 9) |
| Deprived Access to Noula in 2024 | September 19, 2024 | (Exhibit 10) |
| Sale of Noula confirmed | November 24, 2025 | (Exhibit 11) |
| Property Access Denied | October 29, 2025 | (Exhibit 14A) |
| Requests for Access to Property | October 2025 | (Exhibit 14B) |
| Lien envelope dated 9/15 | September 15, 2025 | (Exhibit 15) |
| FLHSMV recommended lien notice | | (Exhibit 17) |
| Typical Notice to unlawfully docked tenders | | (Exhibit 25) |

Verified Motion

Actual Conspicuous Notice on Vessel                 (Exhibit 26)

Tender Fuel Tank Inverted                           (Exhibit 27)

Tender Partially Submerged                          (Exhibit 28)

Trespassing Dinghy Given Time to Cure               (Exhibit 30)

Verified Motion

After reviewing the facts and researching applicable legal principles, I certify that this motion in fact presents a true emergency (as opposed to a matter that may need only expedited treatment) and requires an immediate ruling because the Court would not be able to provide meaningful relief to a critical, non-routine issue after the expiration of seven days. I understand that an unwarranted certification may lead to sanctions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 27th day of November 2025.


Respectfully submitted,


Evangelos Skevofilax, pro se

3400 Pan American Dr

Miami FL 33133

Telephone: 305-339-2568

skev.evan@gmail.com



**evan skev <evantech@gmail.com>**

---

## RE: Dinner Key Marina: Payment Overdue / Mooring ball payment pass due / non-compliance / Notice of Non renewal

---

**Pino, Pablo** <PPino@miamigov.com>             Thu, Aug 21, 2025 at 1:19 PM
To: "evantech@gmail.com" <evantech@gmail.com>
Cc: E Skev <skev.evan@gmail.com>, "Quinones, Guillermo" <GQuinones@miamigov.com>, "Nesbitt, Thomas" <TNesbitt@miamigov.com>, "Bustamante, Alex" <AlexBustamante@miamigov.com>

Mr. Skevofilax,


The City of Miami will not be renewing your Mooring Dockage Agreement as of today August 21,2025. Please have your vessel removed from the Mooring ball no later than August 31st, 2025. In reviewing your customer file, your vessel registration has expired as of August 19, 2025. Driver's license is also expired as of August 19th, 2024, and your vessel insurance has expired as of June 20th, 2025.


Due to non-compliance, all amenities have been deactivated which include dinghy dock privileges, vehicle parking lot access and building key access until all past due balance is received. Please visit the 2nd floor office to make payments so we can release your dinghy once your payment has been received.



**Thank you,**

## EXHIBIT 1 TERMINATION AND EXPULSION FROM MARINA


**Pablo Pino**

**Marinas Supervisor**

**3400 Pan American Drive**

**Miami, FL 33133**

**305-329-4755**

ppino@miamigov.com


**From:** Evan Skev <evantech@gmail.com>
**Sent:** Thursday, September 19, 2024 10:38 AM
**To:** Bustamante, Alex <AlexBustamante@miamigov.com>
**Cc:** E Skev <skev.evan@gmail.com>; Quinones, Guillermo <GQuinones@miamigov.com>; Nesbitt, Thomas <TNesbitt@miamigov.com>; Pino, Pablo <PPino@miamigov.com>; Lutton, Donald <dlutton@miamigov.com>
**Subject:** Re: Dinner Key Marina: Payment Overdue

11/18/25, 3:29 PM
Case 1:25-cv-26040-RKA   Document 1-1   Entered on FLSD Docket 12/22/2025   Page 176 of
Gmail - RE: Dinner Key Marina: Payment Overdue / Mooring ball payment pass due / non-compliance / Notice of Non renewal
218
EXHIBIT A

 Gmail

evan skev <evantech@gmail.com>

## RE: Dinner Key Marina: Payment Overdue / Mooring ball payment pass due / non-compliance / Notice of Non renewal

**Nesbitt, Thomas <TNesbitt@miamigov.com>**                    Wed, Sep 3, 2025 at 1:04 PM
To: "evantech@gmail.com" <evantech@gmail.com>, E Skev <skev.evan@gmail.com>
Cc: "Quinones, Guillermo" <GQuinones@miamigov.com>, "Bustamante, Alex" <AlexBustamante@miamigov.com>, "Pino, Pablo" <PPino@miamigov.com>, "Nesbitt, Thomas" <TNesbitt@miamigov.com>

Good afternoon Mr. Skevofilax,

Due to your refusal to pay your outstanding balance or submit the required documents for your vessel "Noula", the City of Miami has impounded your vessel.  If you need to collect any personal belongings, such as medication and clothes, please let us know in advance, so we can arrange for an officer to escort you to the vessel.

# EXHIBIT 2
# NOULA SEIZED

Thank you,

Jocko Nesbitt

City of Miami
Marinas Manager Assistant
3400 Pan American Dr
Miami, FL 33133
Tel: 305-329-4755



[Quoted text hidden]

## Subject: FW: Dinner Key Marina: Payment Overdue / Mooring ball payme Urgent – From Evan in D2 – we met at Brickell Zoning meeting

 **Quinones, Guillermo** <GQuinones@miamigov.com>
to Gonzalez, Javier, Frey, Andrew, Balzebre, Anthony, Pardo, Damian (Commissioner), Pino, Pablo, Nesbitt, Thomas, Busta

Javier, please see additional briefing on Mr. Skevofilax. Thank you

 Guillermo Quiñones
**Marinas Manager**
**3400 Pan American Drive**
**Miami, FL 33133**
**305-329-4764**
gquinones@miamigov.com

**EXHIBIT 3A QUINONES PRETEXTUAL BASES TO CITY HALL**

**From:** Nesbitt, Thomas <TNesbitt@miamigov.com>
**Sent:** Friday, August 22, 2025 9:26 AM
**To:** Quinones, Guillermo <GQuinones@miamigov.com>
**Cc:** Bustamante, Alex <AlexBustamante@miamigov.com>; Nesbitt, Thomas <TNesbitt@miamigov.com>; Pino, I
**Subject:** RE: Dinner Key Marina: Payment Overdue / Mooring ball payment pass due / non-compliance / Notice

Currently Mr. Skevoflex has multiple expired documents in his file and has failed to provide the marina
Mr. Skevoflex has been habitually late with payments since his arrival in the marina. Due to the diffic
with the agreement that he would keep up with his payments in a timely manner as they would now b
timely payments and has an outstanding balance of $472.28. Below I have highlighted the consistenc

| Skevofilax Evangelos | | | | Criteria for Search: All | | | |
|---|---|---|---|---|---|---|---|
| 3400 Pan American dr. | | Account#: | 141027 | | | | |
| Miami | | Phone: | | | | | |
| | | Mobile: | (786)253-3421 | | | | |
| **Double-click to drill down to Transaction Detail** | | | | 22-Aug-25 | | | Ac Fil |

| Select | Date | Type | Description | Trans | B/A Code | Debit | Credit |
|---|---|---|---|---|---|---|---|
| ☐ | 9/1/2025 | DSI | RR MB056 9/1/2025-9/30/2025 Noula - 37ft +... | 396527 | DKMF | 424.79 | |
| ☐ | 8/11/2025 | DSI | Finance Charge | 396105 | DKMF | 22.49 | |
| ☐ | 8/1/2025 | DSI | RR MB056 8/1/2025-8/31/2025 Noula - 37ft +... | 394497 | DKMF | 449.79 | |
| ☐ | 7/6/2025 | DMR | Check Receipt#28803 | 337798 | DKMF | 0.00 | 44 |
| ☐ | 7/1/2025 | DSI | RR MB056 7/1/2025-7/31/2025 Noula - 37ft +... | 392970 | DKMF | 449.79 | |
| ☐ | 6/16/2025 | DMR | Master Card Receipt Receipt 28683 | 336828 | DKMF | 0.00 | 47 |
| ☐ | 6/11/2025 | DSI | Finance Charge | 392409 | DKMF | 22.49 | |
| ☐ | 6/1/2025 | DSI | RR MB056 6/1/2025-6/30/2025 Noula - 37ft +... | 390696 | DKMF | 449.79 | |
| ☐ | 5/10/2025 | DMR | Visa Receipt Receipt#28509 | 335190 | DKMF | 0.00 | 44 |
| ☐ | 5/1/2025 | DSI | RR MB056 5/1/2025-5/31/2025 Noula - 37ft +... | 388380 | DKMF | 449.79 | |
| ☐ | 4/15/2025 | DMR | Visa Receipt Receipt # 28351 | 333660 | DKMF | 0.00 | |

# EXHIBIT 3B

**EXHIBIT 3B QUINONES CITING PAYMENTS THAT AREN'T DELINQUENT AS PRETEXT FOR SEIZURES AND EXPULSION**

| Skevofilax Evangelos | | | | Criteria for Search | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 3400 Pan American dr. | | Account#: | 141027 | | | | | | |
| | | Phone: | | | | | | | |
| Miami | | Mobile: | (786)253-3421 | | | | | | |

**Double-click to drill down to Transaction Detail**    22-Aug-25    Account Balance:   $897.07

**ZERO BALANCE JULY 31 2025**    Filter Balance:   $897.07

| Select | Date | Type | Description | Trans | B/A Code | Debit | Credit | Outstanding | Balance |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | 9/1/2025 | DSI | RR MB056 9/1/2025-9/30/2025 Noula - 37ft +... | 396527 | DKMF | 424.79 | 0.00 | 424.79 | $897.07 |
| ☐ | 8/11/2025 | DSI | Finance Charge | 396105 | DKMF | 22.49 | 0.00 | 22.49 | $472.28 |
| ☐ | 8/1/2025 | DSI | RR MB056 8/1/2025-8/31/2025 Noula - 37ft +... | 394497 | DKMF | 449.79 | 0.00 | 449.79 | $449.79 |
| ☐ | 7/6/2025 | DMR | Check Receipt#28803 | 337798 | DKMF | 0.00 | 449.79 | 0.00 | $0.00 |
| ☐ | 7/1/2025 | DSI | RR MB056 7/1/2025-7/31/2025 Noula - 37ft +... | 392970 | DKMF | 449.79 | 0.00 | 449.79 | $449.79 |
| ☐ | 6/16/2025 | DMR | Master Card Receipt Receipt 28683 | 336828 | DKMF | 0.00 | 472.28 | 0.00 | $0.00 |
| ☐ | 6/11/2025 | DSI | Finance Charge | 392409 | DKMF | 22.49 | 0.00 | 22.49 | $472.28 |
| ☐ | 6/1/2025 | DSI | RR MB056 6/1/2025-6/30/2025 Noula - 37ft +... | 390696 | DKMF | 449.79 | 0.00 | 449.79 | $449.79 |
| ☐ | 5/10/2025 | DMR | Visa Receipt Receipt#28414 **NOT DELINQUENT** | 335190 | DKMF | 0.00 | 449.79 | 0.00 | $0.00 |
| ☐ | 5/1/2025 | DSI | RR MB056 5/1/2025-5/31/2025 Noula - 37ft +... | 388380 | DKMF | 449.79 | 0.00 | 449.79 | $449.79 |
| ☐ | 4/15/2025 | DMR | Visa Receipt Receipt # 28351 | 333660 | DKMF | 0.00 | 472.28 | 0.00 | $0.00 |
| ☐ | 4/11/2025 | DSI | Finance Charge | 387978 | DKMF | 22.49 | 0.00 | 22.49 | $472.28 |
| ☐ | 4/11/2025 | DSI | Finance Charge | 387659 | DKM | 1.25 | 0.00 | 0.00 | $449.79 |
| ☐ | 4/1/2025 | DMC | Credit Note, Customer was invoiced and receipte... | 42409 | DKM | 0.00 | 26.25 | 0.00 | $448.54 |
| ☐ | 4/1/2025 | DMC | Credit Note, DKM Dockage Correction - Tax: Exe... | 42103 | DKM | 0.00 | 25.00 | 0.00 | $474.79 |
| ☐ | 4/1/2025 | DMF | Master Card Receipt Refund#61558 | 13758 | DKM | 25.00 | 0.00 | 0.00 | $499.79 |
| ☐ | 4/1/2025 | DMR | Data Entry Error Reversal for DMR 332742 | 332743 | DKM | 25.00 | 0.00 | 0.00 | $474.79 |
| ☐ | 4/1/2025 | DMR | AMEX Receipt Receipt#61558 | 332742 | DKM | 0.00 | 25.00 | 0.00 | $449.79 |
| ☐ | 4/1/2025 | DMI | Invoice, Miscellaneous (DKM) - Tax: ST-DK @ 7... | 387375 | DK/M | 25.00 | 0.00 | 0.00 | $474.79 |
| ☐ | 4/1/2025 | DSI | RR MB056 4/1/2025-4/30/2025 Noula - 37ft +... | 386194 | DKMF | 449.79 | 0.00 | 449.79 | $449.79 |
| ☐ | 3/30/2025 | DMR | Visa Receipt Refund28211 | 13746 | DKMF | 45.72 | 0.00 | 0.00 | $0.00 |
| ☐ | 3/9/2025 | DMR | Visa Receipt Receipt#28146 **NOT DELINQUENT** | 332154 | DKMF | 0.00 | 491.75 | 0.00 | ($45.72) |
| ☐ | 3/5/2025 | DMR | Master Card | 331807 | DKM | 0.00 | 25.00 | 0.00 | $446.03 |
| ☐ | 3/5/2025 | DMI | Invoice#61261, Miscellaneous (DKM) - parking | 385405 | DKM | 25.00 | 0.00 | 0.00 | $471.03 |
| ☐ | 3/5/2025 | DMC | Credit Note, Miscellaneous (DKMF) - parking invoi... | 41791 | DKM | 0.00 | 25.00 | 0.00 | $446.03 |
| ☐ | 3/5/2025 | DMR | RR Parking - DKMF 3/5/2025-3/31/2025 Noula -... | 385404 | DKM | 25.00 | 0.00 | 0.00 | $471.03 |
| ☐ | 3/1/2025 | DSI | RR MB056 3/1/2025-3/31/2025 Noula - 37ft | 384766 | DKMF | 424.79 | 0.00 | 0.00 | $446.03 |
| ☐ | 2/12/2025 | DMC | Credit Note, DKMF Dkge Correction - Tax: Exemp... | 41585 | DKMF | 0.00 | 25.00 | 0.00 | $21.24 |
| ☐ | 2/12/2025 | DMR | Dishonour Reversal Not Receipted Under DKMF ... | 331084 | DKMF | 25.00 | 0.00 | 0.00 | $46.24 |
| ☐ | 2/12/2025 | DMR | Visa | 330632 | DKMF | 0.00 | 25.00 | 0.00 | $21.24 |
| ☐ | 2/12/2025 | DSI | RR 2/12/2025-2/12/2025 | 384065 | DKMF | 25.00 | 0.00 | 0.00 | $46.24 |
| ☐ | 2/12/2025 | DMR | Visa Receipt Receipt27987 | 330631 | DKMF | 0.00 | 424.79 | 0.00 | $21.24 |
| ☐ | 2/12/2025 | DMC | Credit Note, BA Error - Late Fee Ran 3 Times inst... | 42015 | DKMF | 0.00 | 45.72 | 0.00 | $446.03 |
| ☐ | 2/11/2025 | DSI | Finance Charge | 384043 | DKMF | 23.42 | 0.00 | 0.00 | $491.75 |
| ☐ | 2/11/2025 | DSI | Finance Charge | 383653 | DKMF | 22.30 | 0.00 | 0.00 | $468.33 |
| ☐ | 2/11/2025 | DSI | Finance Charge | 383262 | DKMF | 21.24 | 0.00 | 0.00 | $446.03 |

City of Miami

# TRANSIENT MOORAGE AGREEMENT

*MB-56* (handwritten)

**EXHIBIT 4 CONTRACT** (stamped on left side)

| Vessel Owner's Name: *EVANGELUS SKEVOFLAX* | Dinner Key Mooring Facility | Buoy No: *56* |
|---|---|---|
| Vessel's Mailing Address: *3525 PAN AMERICAN DR* | Vessel Name: *NOLA* | Home Port: |
| City: *MIAMI*  State: *FL*  Zip: *33* | State Reg. No. or Fed. Doc.No. | |
| Vessel Physical Address: | LOA *37*  BEAM *12*  DRAFT *5* | |
| City:  State:  Zip: | Vessel Type: P (S) MS  Gas (Diesel) | |
| | Vessel Model: | |
| Work Telephone:  Home Telephone: | Dinghy Reg No:  Dinghy Length:  Hard/Soft: | |
| EMAIL: | | |

Agreement is made this _1_ day of _OCTOBER 2024_ 20____ between the City of Miami (CITY) and vessel owner (OWNER) of the above-described vessel for the lawful use of mooring space at the Dinner Key Municipal Mooring Facility (FACILITY) on a transient basis.

1. The OWNER agrees to pay the CITY for transient OVERNIGHT / MONTHLY (circle one) at the rate of $_____ per DAY / MONTH, plus tax.

2. Transient vessel moorage fees are due and payable in advance. Payments shall be made to the City of Miami, c/o the Marina Facility where the vessel is moored.

3. This agreement is only for the use of mooring space on a transient basis. The OWNER agrees to move the above-described mooring space if requested to do so by the CITY. Mooring space is to be used at the sole risk of the OWNER; the CITY shall not be liable for the care or protection, or security of the vessel, her appurtenances, or contents, or for any loss or damage of any kind or nature to the vessel, her appurtenances, or contents however caused. There is no warranty of any kind as to the condition of the moorings and related equipment and tackle; piers, docks, gangways, ramps, etc. and the CITY shall not be responsible for injuries to persons or property occurring upon CITY property for any reason.

4. OWNER agrees to comply with all federal, state, and local laws pertaining to marina facilities and boating, and with all of the terms of this agreement and CITY rules and regulations governing CITY marinas and mooring facilities. Copies of the Mooring Facilities Rules & Regulations are available at the Harbormaster's Office.

5. TERMINATION: This Agreement may be terminated by either party, with or without cause, by giving fifteen (15) days prior written notice to the other party. Upon termination of this Agreement, whether caused by lapse of time or otherwise, OWNER shall at once vacate the PREMISES and remove the VESSEL from the assigned facility. Should the OWNER fail to vacate the premises upon termination, the CITY may utilize any and all remedies provided by law, and as provided herein, to remove the OWNER and/or the VESSEL from the PREMISES, including, but not limited to Chapter 82, Fla. Stat., Chapter 83, Part I, Fla. Stat., and the general maritime law.

6. Upon failure of the OWNER to comply with the terms of this Agreement or the Mooring Facilities Rules & Regulations or to pay the moorage fee hereinabove provided, this Agreement may be terminated by the CITY. OWNER agrees that in the event that this Agreement is terminated or expires, OWNER will remove his/her vessel from the FACILITY. If the vessel is not removed from the FACILITY within five (5) days of termination or expiration of this Agreement, OWNER hereby agrees and consents to have the vessel towed from the FACILITY at his/her sole risk and expense. To the extent that the vessel remains and is stored at the FACILITY after termination or expiration of this Agreement, OWNER will be responsible and liable for payment of all moorage and late charges, and any lien processing fees that may be applicable.

7. OWNER and CITY agree that the mooring space provided for herein is a "necessary" within the meaning of the federal Maritime Lien Act, 46 U.S.C BB971-975, and that the CITY, in addition to reliance on the credit of the OWNER, shall retain a maritime lien against the vessel, her appurtenances and contents, for all mooring fees, delinquency charges, and for any damage caused to any mooring or related equipment, dock, piling, or any other property of the CITY

FOR UNDOCUMENTED VESSELS, PURSUANT TO FLORIDA STATUTES SECTION 328.17, IN THE EVENT OF NON-PAYMENT OF MOORAGE FOR A PERIOD OF TWO (2) MONTHS, FACILITY IS AUTHORIZED TO SELL OWNER'S VESSEL AT A NONJUDICIAL SALE.

8. OWNER agrees to release, indemnify, defend, and hold harmless the CITY from any and all liability, claims, demands, damages, losses, or causes of action of any nature whatsoever which may arise from the OWNER's use of mooring space at the herein named facilities occasioned wholly or in part by any act or omission of anyone whomsoever including the CITY. OWNER CLEARLY UNDERSTANDS THAT THIS AGREEMENT TO INDEMNIFY THE CITY SHALL INCLUDE CLAIMS IN WHICH IT IS ALLEGED THAT THE CITY WAS NEGLIGENT. Upon receipt of notice from CITY of any such claim, OWNER shall, at his/her expense, appear, defend, and pay all charges of attorneys and all costs and other expenses arising therefrom or incurred in connection therewith including any judgment rendered against the CITY in any such action.

9. The CITY may at any time, in its absolute discretion, require the OWNER to move the vessel from its assigned mooring to another mooring within the facility.

It is understood that this Agreement is not assignable or otherwise transferable. The undersigned person agrees that he/she is the lawful OWNER of the vessel described herein or is authorized to subject said vessel to the provisions of this Agreement.

_____  
WITNESS

_____  
WITNESS

By: _____  
OWNER (Vessel Owner)

By: _____  
City of Miami

DKMF TMA Rev. 101613

EXHIBIT A

PXL_20250830_175645882~3.jpg

11/18/25, 7:14 PM

https://mail.google.com/mail/u/0/#search/noula+registration/KtbxLzGXCJPgGsQmfvzqJLXdkXjTqwXTNq?projector=1&messagePartId=0.1

1/1

# EXHIBIT 5
# NOULA REGISTRATION

## FLORIDA VESSEL REGISTRATION

CO/AGY   I   / 15      T#   2150152289
B#   13272382

FL/DO #   **FL5679MN**   DECAL   **02228513**      Expires   **Midnight Thu 8/19/2027**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| YR/MK | **1986/BEY** | BODY | **VS** | | | Reg. Tax | |
| HIN | **BEY01781A686** | | | | | Init. Reg. | 7.50 |
| HULL | **FBGLSS** | PROPUL | **INBRD** | TITLE | **90400888** | County Fee | |
| USE | **EX AV** | TYPE | **AXSAIL** | FUEL | **DIESL** | Mail Fee | 1.00 |
| DL/FEID | **S237006953000** | | | LENGTH | **36'8"** | Sales Tax | 0.95 |
| Date Issued **7/2/2025** | | | | | | Voluntary Fees | |
| | | ENG DRIVE | | | | Grand Total | 9.45 |
| | | ST OPER | | | | | |

Class Code   104
Tax Months   24
Back Tax Mos   0
Credit Class   0
Credit Months

**EVANGELOS MICHAEL SKEVOFILAX**
**3400 PAN AMERICAN DR**
**MIAMI, FL  33133-5503**

1   Your registration must be updated to your new address within 30 days of moving.
2   Registration renewals are the responsibility of the registrant and shall occur during the 30-day period prior to the expiration date shown on this registration.  Renewal notices are provided as a courtesy and are not required for renewal purposes.

**IMPORTANT INFORMATION**

PROGRESSIVE
P.O. BOX 31260
TAMPA, FL 33631

### EXHIBIT 6
### NOULA INSURANCE
### DEC PAGE



**Policy number:  993735553**

Underwritten by:
Progressive Select Insurance Co
November 28, 2025
Policy Period:  Feb 27, 2025 - Feb 27, 2026
Page 1  of  2

EVANGELOS SKEVOFILAX
3191 GRAND AVE # 273
MIAMI, FL 33133

**progressive.com**
 **Online Service**
 Make payments, check billing activity, update
 policy information or check status of a claim.

**1-800-PROGRESSIVE  (1-800-776-4737)**
 For customer service and claims service,
 24 hours a day, 7 days a week.

# Boat Insurance
# Coverage Summary
## This is a copy of your
## Declarations Page

Your coverage began on February 27, 2025 at the later of 12:01 a.m. or the effective time shown on your application.  This policy period ends on February 27, 2026 at 12:01 a.m.

This coverage summary replaces your prior one.  Your insurance policy and any policy endorsements contain a full explanation of your coverage.  The policy limits shown for a watercraft may not be combined with the limits for the same coverage on another watercraft, unless the policy contract or endorsements indicate otherwise.  The policy contract is form 2749 FL (07/19). The contract is modified by forms Z820 (12/16), A314 (09/21) and A359 FL (08/22).

## Drivers and household residents

### Evangelos Skevofilax
Additional information:  Named insured

## Outline of coverage

### 1986 Beneteau 34 Sail
Hull ID #:  BEY01781A686
Propulsion type:  NonPower

|  | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others |  |  | $915 |
|    Bodily Injury and Property Damage Liability | $300,000 combined single limit each accident |  |  |
| Fuel and Oil Spill Coverage | $1,076,000 per occurrence |  | 2 |
| Coastal Navigation | 75 Nautical Miles |  | included |
| **Subtotal policy premium** |  |  | **$917.00** |
| 2023-10 FIGA Assessment |  |  | 9.17 |
| **Total 12 month policy premium and fees** |  |  | **$926.17** |

## Premium discounts

| Policy |  |
|---|---|
| 993735553 | Home Owner, Prompt Payment and Transfer |

| Driver |  |
|---|---|
| Evangelos Skevofilax | Safety Course and Responsible Driver |


Continued

```
*************************UNITED AMERICAN LIEN & RECOVERY*************************
```

CITY OF MIAMI
DINNER KEY MARINA
3400 PAN AMERICAN DR

MIAMI FL 33133

# EXHIBIT 7
# FALSIFIED
# LIEN

RE:  Year:          1986
     Manuf:         BEY
     Hull ID:       BEY01781A686
     Customer Name: EVANGELOS SKEVOFILAX

Date Notices Sent:      09/11/25
Case Number:            V13257
Last Day of Payment:    11/21/25

**ATTACHED ARE 2 COPIES OF THE NOTICE OF SALE OF VESSEL**

          1.          **POST IN MARINA OFFICE**
          2.          **POST ON VESSEL**

This is your confirmation letter that a lien has started on the above mentioned
vessel.

As of  09/11/25  , the balance owed is $   6,052.49  which includes our
fee of $ 725.00. The monthly and/or daily storage will continue to accrue thru
last day of payment.

If no interested parties contact our office by the last day of payment,
we will apply for the title in the marina's name.  Title will be received
by our office...within 7-10 business days from application.

JUST SOME FACTS:

1.  If any parties contact you, please refer them to our office.

**"NOTICE OF NONJUDICIAL SALE OF VESSEL"**
**CASE #: V13257**

```
-------Registered Owner------              -----Customer------
EVANGELOS MICHAEL SKEVOFILAX
3400 PAN AMERICAN DR
                                           EVANGELOS SKEVOFILAX
MIAMI FL 33133                             250 95TH ST
                                           SURFSIDE FL 33154


--------Lienholder----------              -------------Lienor----------
NONE                                       CITY OF MIAMI
                                           DINNER KEY MARINA
                                           3400 PAN AMERICAN DR
                                           MIAMI FL 33133
                                           305-579-6950
```

```
Year: 1986          Manufacturer: BEY          Reg #: FL5679MN

Hull ID #: BEY01781A686      DO#:               Prop: INBOARD

Use: EXEMPT       Fuel: DIESEL

Hull: FIBERGLASS                               Length: 36   ft
```

Each of you are hereby notified that the above mentioned vessel was brought in for storage/repairs at the request of
EVANGELOS SKEVOFILAX        on 10/01/24  and the above mentioned marina is in possession of and claims a lien on the vessel.

The lien claimed by the above named lienor is a result of the default of payment and is subject to enforcement pursuant to
F.S. 328.17 and unless said vessel is redeemed by payment as allowed by law.  Otherwise, the above described vessel will be
sold after 60 days to satisfy the lien.

The above mentioned vessel will be sold at public auction on 11/21/25       at 10:00 am  at the premises of United American Lien
& Recovery 3411 NW 9th Ave Suite 707 Ft Lauderdale, Florida.

Itemized Charges are as follows:

# EXHIBIT 7A
# LIEN NOT
# ITEMIZED

```
    REPAIRS/LABOR:                    $

    STORAGE AT TIME OF NOTICE:
    (MONTHLY         DAILY 350.00    )   $   5,302.49

    PROFESSIONAL FEE:                  $    750.00

    TOTAL AMOUNT DUE:                  $   6,052.49
```

Prior to sale or other disposition of the vessel pursuant to this section, any interested party may pay the amount necessary to
satisfy the lien and thereby redeem and take possession of the vessel.  Upon receipt of such payment the marina shall return the
vessel to the interested party making such payment and thereafter shall have no liability to any person with respect to such vessel.

In the event of a sale, the marina may satisfy its lien from the proceeds of the sale, provided the marina's lien has priority over
all other liens on the vessel other than a prior lien perfected under the state or federal law. The lien rights of secured lienholders
are automatically transferred to the remaining proceeds of the sale.  A notice of the balance of the proceeds shall be delivered by
the marina to the owner and secured lienholder in person or by certified mail to the owners' and lienholders'last known address. If
the owner or lienholder does not claim the balance of the proceeds within 1 year after the date of sale, the proceeds shall be deemed
abandoned, and the owner or lienholder shall have no further obligation with regard to the payment of the proceeds.

Signature of Authorized Agent for Marina
Date of Notice: 09/11/25

UNITED AMERICAN LIEN & RECOVERY
P.O. BOX 5823
FT LAUDERDALE FLORIDA 33310
PH: (954) 563-1999
FX: (954) 563-1393

LICENSED AUCTIONEERS
FLAB 422, FLAU 765 & 1911

# UNITED AMERICAN LIEN & RECOVERY

DATE: 11/21/25

RE: V13257

# EXHIBIT 8
# EXCESSIVE FINES

Below is the requested breakdown of charges until 11/21/25 .

Repairs/Labor:      ∅

Storage/Dockage:   30152.49

Lien Fee:          750.00

TOTAL:             30,902.49

The above figures are good until 11/21 after that date the charges will increase by N/A per month or N/A per day.

ALL PAYMENTS MUST BE PAID IN CASH OR CASHIER CHECK ONLY IN OUR OFFICE.  CASHIER CHECK MUST BE MADE PAYABLE TO UNITED AMERICAN LIEN & RECOVERY.  OUR TAX ID# IS 592785008.

***ANY LOAD CHARGES ARE NOT INCLUDED IN THE ABOVE TOTALS, THEY MUST BE PAID DIRECTLY TO THE MARINA AT THE TIME THE VESSEL IS PICKED UP

*"Established in 1984"*

(954) 563-1999

UNITED AMERICAN LIEN   P.O. BOX 5823   FT. LAUDERDALE, FL 33310
BRANCHES: FLORIDA & NEW JERSEY

EXHIBIT A

EXHIBIT 9 TENDER REMOVED FROM WATER, DISASSEMBLED, AND TRASHED



 Gmail

**evan skev <evantech@gmail.com>**

---

## Dinner Key Marina: Payment Overdue

**Pino, Pablo** <PPino@miamigov.com>                                    Thu, Sep 19, 2024 at 10:44 AM
To: "evantech@gmail.com" <evantech@gmail.com>
Cc: "Bustamante, Alex" <AlexBustamante@miamigov.com>, "Nesbitt, Thomas" <TNesbitt@miamigov.com>, "Quinones,
Guillermo" <GQuinones@miamigov.com>

                                              EXHIBIT 10
                                              ACCESS TO PROPERTY DENIED
                                              WITHOUT LEGAL BASIS
                                              9/19/2024

Good morning Skev,

Due to payment not being received for your September dockage, we can not activate your key until payment
has been made. In reviewing your account, the outstanding balance of $1662.78 has nit been met.

We do apologize for any inconvenience though until this payment has been received we cannot active your
access card.


Thank you

                **Thank you,**


                                      **Pablo Pino**

                                      **Marinas Supervisor**

                                      **3400 Pan American Drive**

                                      **Miami, FL 33133**

                                      305-329-4755

                                      ppino@miamigov.com




**From:** Evan Skev <evantech@gmail.com>
**Sent:** Thursday, September 19, 2024 10:38 AM
**To:** Bustamante, Alex <AlexBustamante@miamigov.com>
**Cc:** E Skev <skev.evan@gmail.com>; Quinones, Guillermo <GQuinones@miamigov.com>; Nesbitt, Thomas
<TNesbitt@miamigov.com>; Pino, Pablo <PPino@miamigov.com>; Lutton, Donald <dlutton@miamigov.com>
**Subject:** Re: Dinner Key Marina: Payment Overdue

---

CAUTION: This is an email from an external source. Do not click links or open attachments unless you recognize the sender and
know the content is safe.

---

Good morning, may I have my key card activated again please



Thank you



Evan Skev

[Quoted text hidden]



**evan skev <evantech@gmail.com>**

## Written Permission Requested to Retrieve Personal Items

**VICKI HURD** <unitamer@bellsouth.net>                    Mon, Nov 24, 2025 at 9:48 AM
To: Evan Skev <evantech@gmail.com>

The public sale was completed at 10:15 on 11/21.

Thank you!

Vicki Hurd
Office Manager

United American Lien & Recovery
3411 NW 9th Ave #707
Ft Lauderdale, FL 33309
954-563-1999

# EXHIBIT 11
# SALE OF NOULA
# COMPLETED

[Quoted text hidden]

 Gmail

evan skev <evantech@gmail.com>

## Request for Account Statements

**Nesbitt, Thomas** <TNesbitt@miamigov.com>                              Wed, Oct 29, 2025 at 9:23 AM
To: "evantech@gmail.com" <evantech@gmail.com>
Cc: "Quinones, Guillermo" <GQuinones@miamigov.com>, "Bustamante, Alex" <AlexBustamante@miamigov.com>, "Nesbitt, Thomas" <TNesbitt@miamigov.com>, "Pino, Pablo" <PPino@miamigov.com>

Good morning Mr. Skevofilax,

Attached is a current statement of your account.

Access to your impounded vessel and to remove unaffixed property has been denied. You were given multiple opportunities to get essential items such as medication and clothes from the vessel when it was first impounded.

Thank you,

Jocko Nesbitt

**City of Miami**
**Marinas Manager Assistant**
3400 Pan American Dr.
Miami, FL 33133
**Tel: 305-329-4755**

EXHIBIT 14A
ACCESS TO SEIZED
PROPERTY DENIED



**From:** Evan Skev <evantech@gmail.com>
**Sent:** Tuesday, October 28, 2025 4:12 PM
**To:** Quinones, Guillermo <GQuinones@miamigov.com>; Nesbitt, Thomas <TNesbitt@miamigov.com>
**Subject:** Re: Request for Account Statements

---

**CAUTION:** This is an email from an external source. Do not click links or open attachments unless you recognize the sender and know the content is safe.

---

[Quoted text hidden]

 **Statement (29 Oct 2025).pdf**
166K

 Gmail

evan skev <evantech@gmail.com>

---

**Request for Account Statements**

---

**Evan Skev** <evantech@gmail.com>                                                      Tue, Oct 28, 2025 at 4:11 PM
Reply-To: evantech@gmail.com
To: "Quinones, Guillermo" <GQuinones@miamigov.com>, "Nesbitt, Thomas" <TNesbitt@miamigov.com>

    4th and Final request for access, inspection, removal of unaffixed property, and a full,
    detailed statement of account dating to November 5, 2023

    [Quoted text hidden]

EXHIBIT 14B
PREVIOUS REQUESTS IGNORED

LIEN NOTICE CERTIFIED MAIL

EXHIBIT 15 MAILED SEPTEMBER 15 2025



13257

**UNITED AMERICAN LIEN**
ESTD 1984
★ ★ ★
PO BOX 5823
FT LAUDERDALE, FL 33310

CERTIFIED MAIL®

7019 1640 0002 0488 2736

CPU

U.S. POSTAGE IM.
$10.48
FCML   RDC 99
Orig: 33431
Dest: 33133
09/15/25
2000052412   02

Evangelos Michael Skevofilax
3400 Pan American Dr
Miami   FL   33133

RETURN RECEIPT REQUESTED

33133-550300

EXHIBIT A

**Exhibit 17  Notice of Nonjudicial Sale of a Vessel** LATEST REVISION FHSMV

---

### NOTICE OF NONJUDICIAL SALE OF A VESSEL

DATE _____

TO:    REGISTERED OWNER                                                                                    LIENHOLDER

NAME _____                          NAME _____

ADDRESS _____                          ADDRESS _____

CITY, STATE, ZIP _____                          CITY, STATE, ZIP _____

NAMES AND ADDRESSES OF ANY OTHER PERSONS OR ANY OTHER LIENHOLDERS, CLAIMING AN INTEREST IN THE VESSEL.

Name _____

ADDRESS _____                          ADDRESS _____

CITY, STATE, ZIP _____                          CITY, STATE, ZIP _____

LIENOR (NAME OF MARINA)                                                    DESCRIPTION OF VESSEL

NAME _____                          YEAR_____ MAKE_____ FL

                                                                                            #_____ HIN # _____

ADDRESS _____                          LOCATION OF VESSEL _____

CITY, STATE, ZIP _____                          _____

TELEPHONE _____                          _____

Name _____

EACH OF YOU ARE HEREBY NOTIFIED THAT THE ABOVE-DESCRIBED VESSEL WAS BROUGHT IN FOR STORAGE/REPAIRS AT THE REQUEST

OF_____ ON_____ AND THE ABOVE-NAMED MARINA
              (PERSON WHO AUTHORIZED STORAGE)                        (DATE)

IS IN POSSESSION OF AND CLAIMS A LIEN ON THE ABOVE-DESCRIBED VESSEL FOR STORAGE CHARGES ACCUMULATED IN THE AMOUNT OF:

(TOTAL) $_____ . ITEMIZED CHARGES:

(REPAIR CHARGES) $_____, (TOTAL STORAGE CHARGES) $_____, FOR_____ DAYS, AT $_____

PER DAY, (RECOVERY CHARGES, IF APPLICABLE) $_____, AND (ADMINISTRATIVE FEES)_____.

THE STORAGE CHARGES WILL CONTINUE TO ACCUMULATE AT THE RATE OF $_____ PER DAY.

THE LIEN CLAIMED ABOVE IS A RESULT OF THE **DEFAULT OF PAYMENT** TO THE MARINA NAMED ABOVE AND IS SUBJECT TO ENFORCEMENT PURSUANT TO SECTION 328.17, FLORIDA STATUTES, UNLESS SAID VESSEL IS REDEEMED FROM THE MARINA BY PAYMENT AS ALLOWED BY LAW. OTHERWISE, THE ABOVE-DESCRIBED VESSEL WILL BE SOLD AFTER 60 DAYS TO SATISFY THE LIEN.

A SALE IS TO BE HELD AT_____ COMMENCING AT

_____ AM/PM ON THE_____ DAY OF_____, 20_____ __.

### STATEMENT OF OWNER(S) RIGHTS

BEFORE ANY SALE OR OTHER DISPOSITION OF THE VESSEL PURSUANT TO THIS SECTION, THE OWNER OR THE LIENHOLDER MAY PAY THE AMOUNT NECESSARY TO SATISFY THE LIEN AND THE REASONABLE EXPENSES AND LATE PAYMENT INTEREST INCURRED UNDER THIS SECTION AND THEREBY REDEEM AND TAKE POSSESSSION OF THE VESSEL. UPON RECEIPT OF SUCH PAYMENT, THE MARINA SHALL RETURN THE PROPERTY TO THE OWNER OR LIEN HOLDER MAKING SUCH PAYMENT AND THEREAFTER SHALL HAVE NO LIABILITY TO ANY PERSON WITH RESPECT TO SUCH VESSEL.

IN THE EVENT OF A SALE UNDER THIS SECTION, THE MARINA MAY SATISFY ITS LIEN FROM THE PROCEEDS OF THE SALE, PROVIDED THE MARINA'S LIEN HAS PRIORITY OVER ALL OTHER LIENS ON THE VESSEL OTHER THAN A PRIOR LIEN PERFECTED UNDER THE STATE OR FEDERAL LAW. THE LIEN RIGHTS OF SECURED LIENHOLDERS ARE AUTOMATICALLY TRANSFERRED TO THE REMAINING PROCEEDS OF THE SALE. THE BALANCE, IF ANY, SHALL BE HELD BY THE MARINA FOR DELIVERY ON DEMAND TO THE OWNER. A NOTICE OF ANY BALANCE SHALL BE DELIVERED BY THE MARINA TO THE OWNER IN PERSON OR BY CERTIFIED MAIL TO THE LAST KNOWN ADDRESS OF THE OWNER. IF THE OWNER DOES NOT CLAIM THE BALANCE OF THE PROCEEDS WITHIN 1 YEAR AFTER THE DATE OF SALE, THE PROCEEDS SHALL BE DEEMED ABANDONED, AND THE MARINA SHALL HAVE NO FURTHER OBLIGATION WITH REGARD TO THE PAYMENT OF THE BALANCE. IN THE EVENT THAT THE MARINA'S LIEN DOES NOT HAVE PRIORITY OVER ALL OTHER LIENS, THE SALE PROCEEDS SHALL BE HELD FOR THE BENEFIT OF THE HOLDERS OF THOSE LIENS HAVING PRIORITY. A NOTICE OF THE AMOUNT OF THE SALE PROCEEDS SHALL BE DELIVERED BY THE MARINA TO THE OWNER OR SECURED LIENHOLDER IN PERSON OR BY CERTIFIED MAIL TO THE OWNER OR THE SECURED LIENHOLDER'S LAST KNOWN ADDRESS. IF THE OWNER OR THE SECURED LIENHOLDER DOES NOT CLAIM THE SALE PROCEEDS WITHIN 1 YEAR AFTER THE DATE OF SALE, THE PROCEEDS SHALL BE DEEMED ABANDONED, AND THE OWNER OR THE SECURED LIENHOLDER SHALL HAVE NO FURTHER OBLIGATION WITH REGARD TO THE PAYMENT OF THE PROCEEDS.

DATED THIS_____ DAY OF_____, 20_____ . MARINA_____

                                                                                            (SIGNATURE OF AUTHORIZED AGENT)

**This is a suggested not a prescribed form.**

EXHIBIT 23
CONSPICUOUS
POSTING ON
VESSEL
CITING FLA.
STAT. 713.78





EXHIBIT 25

NOTICE POSTED ON UNLAWFULLY DOCKED REFERENCING §  50-428



EXHIBIT 26
PROPER
CONSPICUOUS
NOTICE

EXHIBIT A



EXHIBIT 27
TENDER
FUEL TANK
INVERTED

EXHIBIT 28
TENDER
FILLING WITH
RAIN WATER





► **Dinner Key Boating &**

**Sailing Community Page**

Mar 15 · 👥

EXHIBIT 30
UNLAWFULLY DOCKED
GIVEN NOTICE AND
TIME TO CURE

Heads up.  New warnings posted on dinghies:





**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL**

**CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2025-023258-CA-01

SECTION: CA-08

JUDGE: Robert T. Watson

**EVANGELOS SKEVOFILAX,**

　　　Plaintiff, pro se

vs.

**DINNER KEY MARINA,**

**UNITED AMERICAN LIEN AND RECOVERY,**

　　　Defendants.

_____/

## MOTION TO DETERMINE CONFIDENTIALITY

## OF COURT RECORDS

Plaintiff Evangelos Skevofilax moves this honorable Court to determine the confidentiality of court records, including DIN 4, DIN 6, DIN 7, and this motion, until January 1, 2027, on the following grounds:

1. Plaintiff's privacy interests outweigh the public's access interests.
2. Plaintiff's personal data is not inherent to his claims.
3. Public disclosure of the data required for a determination by the Clerk would cause further harm to Plaintiff at a time when the government has caused him irreparable harm.
4. An ephemeral right to privacy in this context, though not specifically enumerated, could be justified via a liberal interpretation of Plaintiff's constitutionally protected liberty interests.
5. Public disclosure of this type of information may deter similar Plaintiffs from seeking legal relief for meritorious claims, hindering the equitable administration of justice.
6. Granting this motion is compatible with public policy promoting access to justice.


I certify this motion is made in good faith and is supported by a sound factual and legal basis.




Dated: November 30, 2025.

Respectfully submitted,



Evangelos Skevofilax

3400 Pan American Drive

Miami FL 33133

305-339-2568 mobile

skev.evan@gmail.com

2

Filing # 236494968 E-Filed 11/25/2025 08:13:25 AM

IN THE CIRCUIT/COUNTY COURT OF THE __11TH__ JUDICIAL CIRCUIT
IN AND FOR __MIAMI-DADE__ COUNTY, FLORIDA

EVANGELOS SKEVOFILAX

CASE NO. 2025-023258-CA-01

Plaintiff/Petitioner or in the Interest of
CITY OF MIAMI et al                vs.

Defendant//Respondent

## APPLICATION FOR DETERMINATION OF CIVIL INDIGENT STATUS

**Notice to Applicant:** If you qualify for civil indigence, the filing and summons fees are waived; other costs and fees are not waived.

1. **I have __0__ dependents.** *(Include only those persons you list on your U.S. Income tax return.)*
   Are you Married?...Yes ✗ No    Does your Spouse Work?...Yes ✗ No    Annual Spouse Income?  $ __NA__

2. **I have a net income of $ __2000__** paid ( ) weekly ( ) every two weeks ( ) semi-monthly ✗ monthly ( ) yearly ( ) other __NA__.
   *(Net income is your total income including salary, wages, bonuses, commissions, allowances, overtime, tips and similar payments,*
   ***minus** deductions required by law and other court-ordered payments such as child support.)*

3. **I have other income** paid ( ) weekly ( ) every two weeks ( ) semi-monthly ( ) monthly ( ) yearly ( ) other __NA__.
   *(Circle "Yes" and fill in the amount if you have this kind of income, otherwise circle "No")*

| | | | |
|---|---|---|---|
| Second Job .......................... Yes $ ___ **No** | Veterans' benefits.................. Yes $ ___ **No** |
| Social Security benefits | Workers compensation ......... Yes $ ___ **No** |
| For you ............................ Yes $ ___ No | Income from absent family members ...... Yes $ ___ **No** |
| For child(ren) ................. Yes $ ___ No | Stocks/bonds...................... Yes $ ___ **No** |
| Unemployment compensation ......... Yes $ ___ No | Rental income..................... Yes $ ___ **No** |
| Union payments ............... Yes $ ___ No | Dividends or interest........... Yes $ ___ **No** |
| Retirement/pensions .......... Yes $ ___ No | Other kinds of income not on the list ........ Yes $ ___ **No** |
| Trusts ............................ Yes $ ___ No | Gifts ................................. Yes $ ___ **No** |

I understand that I will be required to make payments for costs to the clerk in accordance with §57.082(5), Florida Statutes, as provided by law, <u>although I may agree to pay more if I choose to do so.</u>

4. **I have other assets:** *(Circle "yes" and fill in the value of the property, otherwise circle "No")*

| | | | |
|---|---|---|---|
| Cash .............................. Yes $ __33__ No | Savings account................. Yes $ 0 No |
| Bank account(s) ............... Yes $ __166__ No | Stocks/bonds.................... Yes $ 0 No |
| Certificates of deposit or | Homestead Real Property* .......... Yes $ 0 No |
| Money market accounts .......... Yes $ __0__ No | Motor Vehicle*................... Yes $ 0 No |
| Boats* .......................... Yes $ __4500__ No | Non-homested real property/real estate* ...... Yes $ 0 No |

Boat was seized and sold but still titled in my name    Other assets* ....... Yes $ 0 No
Check one: I ( ) DO (✗) DO NOT expect to receive more assets in the near future. The asset is __NA__ _____

5. **I have total liabilities and debts of $ __65045__** as follows: Motor Vehicle $ __0__ , Home $ __0__ , Boat
   $ __0__ , Non-homestead Real Property $ __0__ , Child Support paid direct $ __0__ , Credit Cards $ __2500__
   Medical Bills $ __1400__ , Cost of medicines (monthly) $ __55__ , Other $ __61045__ .

6. **I have a private lawyer in this case.........__Yes__    __✓__ No**

A person who knowingly provides false information to the clerk or the court in seeking a determination of indigent status under s. 57.082, F.S. commits a misdemeanor of the first degree, punishable as provided in s.775.082, F.S. or s. 775.083, F.S. **I attest that the information I have provided on this application is true and accurate to the best of my knowledge.**

Signed on  __NOVEMBER 24__ , 20 __25__ .                    [signature]

__1970__          __8000__                    Signature of Applicant for Indigent Status
Year of Birth      Last 4 digits of Driver License or ID Number    Print Full Legal Name EVANGELOS SKEVOFILAX
Email address: __skev.evan@gmail.com__                Phone Number/s: __305-339-2568__

__3400 Pan American Drive, Miami, FL 33133__
Address: Street, City, State, Zip Code

This form was completed with the assistance of: _____
                                        Clerk/Deputy Clerk/Other authorized person.

## CLERK'S DETERMINATION

Based on the information in this Application, I have determined the applicant to be (✗) Indigent ( ) Not Indigent according to s. 57.082, F.S.

Dated on  __NOV 2 5 2025__ , 20 ___ .

Clerk of the Circuit Court
By [signature]    Deputy Clerk

**APPLICANTS FOUND NOT TO BE INDIGENT MAY SEEK REVIEW BY A JUDGE BY ASKING FOR A HEARING TIME. THERE IS NO FEE FOR THIS REVIEW.**
Sign here if you want the judge to review the clerk's decision _____

IN THE CIRCUIT/COUNTY COURT OF THE ___11TH___ JUDICIAL CIRCUIT
IN AND FOR __MIAMI-DADE__ COUNTY, FLORIDA

EVANGELOS SKEVOFILAX
_____
Plaintiff/Petitioner or In the Interest of

CITY OF MIAMI et al                    vs.
_____
Defendant//Respondent

CASE NO._____

## APPLICATION FOR DETERMINATION OF CIVIL INDIGENT STATUS

**Notice to Applicant:** If you qualify for civil indigence, the filing and summons fees are waived; other costs and fees are not waived.

1. **I have** _0_ **dependents.** *(Include only those persons you list on your U.S. Income tax return.)*
   Are you Married?...Yes ✓ No   Does your Spouse Work?...Yes NA No   Annual Spouse Income? $ NA

2. **I have a net income of $** _2000_ paid ( ) weekly ( ) every two weeks ( ) semi-monthly ✓ monthly ( ) yearly ( ) other NA
   *(Net income is your total income including salary, wages, bonuses, commissions, allowances, overtime, tips and similar payments, minus deductions required by law and other court-ordered payments such as child support.)*

3. **I have other income** paid ( ) weekly ( ) every two weeks ( ) semi-monthly ( ) monthly ( ) yearly ( ) other NA .
   *(Circle "Yes" and fill in the amount if you have this kind of income, otherwise circle "No")*

| | | | | | |
|---|---|---|---|---|---|
| Second Job | Yes $_____ | No | Veterans' benefits | Yes $_____ | No |
| Social Security benefits | | | Workers compensation | Yes $_____ | No |
| For you | Yes $_____ | No | Income from absent family members | Yes $_____ | No |
| For child(ren) | Yes $_____ | No | Stocks/bonds | Yes $_____ | No |
| Unemployment compensation | Yes $_____ | No | Rental income | Yes $_____ | No |
| Union payments | Yes $_____ | No | Dividends or interest | Yes $_____ | No |
| Retirement/pensions | Yes $_____ | No | Other kinds of income not on the list | Yes $_____ | No |
| Trusts | Yes $_____ | No | Gifts | Yes $_____ | No |

I understand that I will be required to make payments for costs to the clerk in accordance with §57.082(5), Florida Statutes, as provided by law, although I may agree to pay more if I chose to do so.

4. **I have other assets:** *(Circle "yes" and fill in the value of the property, otherwise circle "No")*

| | | | | |
|---|---|---|---|---|
| Cash | Yes $ 33 | No | Savings account | Yes $ 0 No |
| Bank account(s) | Yes $ 166 | No | Stocks/bonds | Yes $ 0 No |
| Certificates of deposit or | | | Homestead Real Property* | Yes $ 0 No |
| Money market accounts | Yes $ 0 | No | Motor Vehicle* | Yes $ 0 No |
| Boats* | Yes $ 4500 | No | Non-homestead real property/real estate* | Yes $ 0 No |
| | | | Other assets* | Yes $ 0 No |

Boat was seized and sold but still titled in my name

Check one: I ( ) DO ✓ DO NOT expect to receive more assets in the near future.  The asset is NA .

5. **I have total liabilities and debts of** $ 65045 as follows: Motor Vehicle $ 0 , Home $ 0 , Boat $ 0 , Non-homestead Real Property $ 0 , Child Support paid direct $ 0 , Credit Cards $ 2500 , Medical Bills $ 1400 , Cost of medicines (monthly) $ 55 , Other $ 61045 .

6. **I have a private lawyer in this case** _____Yes   ✓ No

A person who knowingly provides false information to the clerk or the court in seeking a determination of indigent status under s. 57.082, F.S. commits a misdemeanor of the first degree, punishable as provided in s.775.082, F.S. or s. 775.083, F.S. **I attest that the information I have provided on this application is true and accurate to the best of my knowledge.**

Signed on __NOVEMBER 24__ , 20 _25_ .

_1970_        _8000_
Year of Birth   Last 4 digits of Driver License or ID Number
Email address: skev.evan@gmail.com

3400 Pan American Drive, Miami, FL 33133
Address: Street, City, State, Zip Code

_____
Signature of Applicant for Indigent Status
Print Full Legal Name EVANGELOS SKEVOFILAX
Phone Number/s: 305-339-2568

This form was completed with the assistance of: _____
Clerk/Deputy Clerk/Other authorized person.

---

### CLERK'S DETERMINATION

Based on the information in this Application, I have determined the applicant to be ( ) Indigent ( ) Not Indigent, according to s. 57.082, F.S.

Dated on _____ , 20 _____.

Clerk of the Circuit Court
By _____ , Deputy Clerk

**APPLICANTS FOUND NOT TO BE INDIGENT MAY SEEK REVIEW BY A JUDGE BY ASKING FOR A HEARING TIME. THERE IS NO FEE FOR THIS REVIEW.**

Sign here if you want the judge to review the clerk's decision _____

07/01/2014 - upd 7-20-18

# Form 1.918 Lis Pendens

**NOTICE OF LIS PENDENS**

TO DEFENDANT(S) .........., AND ALL OTHERS WHOM IT MAY CONCERN:
CITY OF MIAMI,
UNITED AMERICAN LIEN AND RECOVERY
YOU ARE NOTIFIED OF THE FOLLOWING:

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT FOR
MIAMI-DADE COUNTY

**(a)** The plaintiff has instituted this action against you seeking ("to foreclose a mort-gage" or "to partition" or "to quiet title" or other type of action) with respect to the property described below.

**(b)** The plaintiff(s) in this action is/are:

An action has been instituted against you on November 25, 2025,
in the above-entitled court by
the named Plaintiff against the named Defendants. The action seeks: INJUNCTIVE RELIEF

**(1)** EVANGELOS SKEVOFILAX

**(2)** ..........

**(c)** The date of the institution of this action is ..........OR: the date on the clerk's electronic receipt for the action's filing is .......... OR: the case number of the action is as shown in the caption.

**(d)** The property that is the subject matter of this action is in .......... County, Florida, and is described as follows: MIAMI-DADE

(legal description of property)

DATED ON NOVEMBER 25, 2025

BENETEAU SAILBOAT
HULL# 01781A686
EVANGELOS SKEVOFILAX
CASE:
2025-023258-CA-01

..........

Attorney for.......... EVANGELOS SKEVOFILAX, pro se

3400 PAN AMERICAN DRIVE
MIAMI FL 33133
..........

Address

Florida Bar No. ..........

**NOTE:** This form is not to be recorded without the clerk's case number.

Filing # 236494968 E-Filed 11/25/2025 08:13:25 AM

IN THE CIRCUIT/COUNTY COURT OF THE ___11TH___ JUDICIAL CIRCUIT
IN AND FOR __MIAMI-DADE__ COUNTY, FLORIDA

EVANGELOS SKEVOFILAX
_____
Plaintiff/Petitioner or In the Interest of

CASE NO._____

CITY OF MIAMI et al                    vs.
_____
Defendant//Respondent

## APPLICATION FOR DETERMINATION OF CIVIL INDIGENT STATUS

**Notice to Applicant:** If you qualify for civil indigence, the filing and summons fees are waived; other costs and fees are not waived.

1. **I have** _0_ **dependents.** *(Include only those persons you list on your U.S. Income tax return.)*
   Are you Married?...Yes ✓ No    Does your Spouse Work?...Yes ___NA___ No    Annual Spouse Income? $ __NA__

2. **I have a net income of $**___2000___ paid ( ) weekly ( ) every two weeks ( ) semi-monthly ✓ monthly ( ) yearly ( ) other __NA__
   *(Net income is your total income including salary, wages, bonuses, commissions, allowances, overtime, tips and similar payments, minus deductions required by law and other court-ordered payments such as child support.)*

3. **I have other income** paid ( ) weekly ( ) every two weeks  ( ) semi-monthly ( ) monthly ( ) yearly ( ) other ___NA___ .
   *(Circle "Yes" and fill in the amount if you have this kind of income, otherwise circle "No")*

| | | | |
|---|---|---|---|
| Second Job ............................ Yes $_____ No | Veterans' benefits ................................... Yes $_____ No |
| Social Security benefits | Workers compensation ........................... Yes $_____ No |
|   For you ............................ Yes $_____ No | Income from absent family members ... Yes $_____ No |
|   For child(ren) ...................... Yes $_____ No | Stocks/bonds ........................................ Yes $_____ No |
| Unemployment compensation .. Yes $_____ No | Rental income ....................................... Yes $_____ No |
| Union payments ...................... Yes $_____ No | Dividends or interest ............................ Yes $_____ No |
| Retirement/pensions ............... Yes $_____ No | Other kinds of income not on the list ....... Yes $_____ No |
| Trusts ................................. Yes $_____ No | Gifts ................................................. Yes $_____ No |

I understand that I will be required to make payments for costs to the clerk in accordance with §57.082(5), Florida Statutes, as provided by law, <u>although I may agree to pay more if I chose to do so.</u>

4. **I have other assets:** *(Circle "yes" and fill in the value of the property, otherwise circle "No")*

| | | | |
|---|---|---|---|
| Cash ............................... Yes $_33_ No | Savings account............................................... Yes $ 0 No |
| Bank account(s) .............. Yes $_166_ No | Stocks/bonds ................................................... Yes $_0_ No |
| Certificates of deposit or | Homestead Real Property* ............................... Yes $ 0 No |
| Money market accounts ......... Yes $_0_ No | Motor Vehicle*................................................ Yes $_0_ No |
| Boats* ........................... Yes $_4500_ No | Non-homestead real property/real estate* ...... Yes $ 0 No |
| | Other assets* ................................................. Yes $_0_ No |

Boat was seized and sold but still titled in my name

Check one: I ( ) DO ✓ DO NOT expect to receive more assets in the near future.  The asset is __NA__.

5. **I have total liabilities and debts of $** _65045_ as follows:  Motor Vehicle $_0_ , Home $_0_ , Boat $_0_ , Non-homestead Real Property $_0_ , Child Support paid direct $_0_ , Credit Cards $_2500_ , Medical Bills $_1400_ , Cost of medicines (monthly) $_55_ , Other $_61045_ .

6. **I have a private lawyer in this case**.........___Yes    ✓ No

A person who knowingly provides false information to the clerk or the court in seeking a determination of indigent status under s. 57.082, F.S. commits a misdemeanor of the first degree, punishable as provided in s.775.082, F.S. or s. 775.083, F.S. **I attest that the information I have provided on this application is true and accurate to the best of my knowledge.**

Signed on ___NOVEMBER 24___ , 20 _25_ .

_1970_        _8000_                        Signature of Applicant for Indigent Status
Year of Birth    Last 4 digits of Driver License or ID Number    Print Full Legal Name EVANGELOS SKEVOFILAX
Email address: _skev.evan@gmail.com_                Phone Number/s: _305-339-2568_
_3400 Pan American Drive, Miami, FL 33133_
Address: Street, City, State, Zip Code

This form was completed with the assistance of: _____
                                    Clerk/Deputy Clerk/Other authorized person.

---

### CLERK'S DETERMINATION

Based on the information in this Application, I have determined the applicant to be ( ) Indigent ( ) Not Indigent, according to s. 57.082, F.S.

Dated on _____ , 20 _____.

                        Clerk of the Circuit Court
                        By _____ , Deputy Clerk

**APPLICANTS FOUND NOT TO BE INDIGENT MAY SEEK REVIEW BY A JUDGE BY ASKING FOR A HEARING TIME. THERE IS NO FEE FOR THIS REVIEW.**
Sign here if you want the judge to review the clerk's decision _____

07/01/2014 - upd 7-20-18

Filing # 236494968 E-Filed 11/25/2025 08:13:25 AM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION          CASE NO.: _____          SECTION: _____

IN RE: SKEVOFILAX v DINNER KEY MARINA et al

### CIRCUIT CIVIL NOTICE OF RELATED CASES

1. **(Petitioner)** ✓ **/ (Respondent)** submits this Notice of Related Cases as required by Administrative Order XX-XX.

2. [check **one** only]:

   ☐ There are no related cases for this filing.

   ✓ There are related cases for this filing, as described below.

3. The Petitioner acknowledges a continuing duty to inform the court of any cases in this or any other state that could affect the current proceeding.

4. The case or cases listed below are related for the following reason or reasons [check **all** that apply, and add additional lines or pages if necessary]:

   ☑ The following case or cases involve any of the same parties, family members including children, or issues and it is pending at the time the party files a circuit civil case:

   Case name: Albert v City of Miami et al
   Case number: 2025-019547-CA-01
   Division: CIVIL
   Type of Proceeding: CONTRACT AND INJUNCTION

   Case name: _____
   Case number: _____
   Division: _____
   Type of Proceeding: _____

   ☐ The following case or cases (which may be open or closed) arise from the same or substantially identical transactions, happenings, or events, as the above-captioned case, **or** they involve determining the same or substantially identical legal questions:

   Case name: _____
   Case number: _____
   Division: _____
   Type of Proceeding: _____

   Case name: _____
   Case number: _____
   Division: _____
   Type of Proceeding: _____

- 3 -

☐ The following case or cases (which may be open or closed) affect the **court's** jurisdiction to proceed:

Case            name:_____
Case            number:_____
Division:_____
Type of Proceeding:_____


Case            name:_____
Case            number:_____
Division:_____
Type of Proceeding:_____


☐ An order or orders from the following case or cases (which may be open or closed) may conflict with an order on the same issues in this one, and vice versa:

Case            name:_____
Case            number:_____
Division:_____
Type of Proceeding:_____


Case            name:_____
Case            number:_____
Division:_____
Type of Proceeding:_____


## CERTIFICATE OF SERVICE

I certify that a copy the foregoing document has been furnished to _____
_____
_____
_____ by (e-mail) (delivery) (mail)
(fax) on the _____ day of _____, 20____.


_____
**Attorney's Signature**

Printed Name: _EVANGELOS SKEVOFILAX, pro se_

Bar Number: _____

Address: _____3400 Pan American Drive_

City, State, Zip: _____Miami FL 33133_

Telephone Number: _305.339.2568_

E-mail Address(es): _skev.evan@gmail.com_


- 4 -

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT FOR
MIAMI-DADE COUNTY

Case No:

EVANGELOS SKEVOFILAX, pro se
     Plaintiff,

v.

DINNER KEY MARINA,
UNITED AMERICAN LIEN
and RECOVERY,

     Defendants.

_____/

## **COMPLAINT FOR INJUNCTIVE RELIEF**

## Parties

Plaintiff, Evangelos Skevofilax of 3400 Pan American Drive, a ten-year resident of Miami-Dade County and two-year resident of Dinner Key Marina ("DKM"), is the legal owner of the vessels described herein.

The City of Miami ("City") is a political subdivision of the State of Florida. On all occasions relevant to the factual allegations contained in this complaint, the City owned, operated, staffed, and managed DKM.

According to their website, United American Lien and Recovery is a towing and storage company located at POB 5823, Fort Lauderdale, Florida, 33310.

## BACKGROUND

1.  Plaintiff has no history of violation of policy or law during his two-year residency at DKM, aside from being late on payments because of an injury that required surgery (Exhibit 12) and prevented him from earning a living.

2.  Plaintiff's marina account balance was $0.00 on July 31, 2025, his $424.79 monthly payment was late on August 2, 2025, and his monthly payment was delinquent on August 11, 2025 (Exhibit 13). Contract and ordinance provide specific a timeline for the City to follow in the event a licensee is delinquent with payment.

3.  On August 20, 2025, at approximately 2:00 p.m., City employee Pablo Pino ("Pino"), a DKM Supervisor, stopped Plaintiff as he exited the DKM office and attempted to collect Plaintiff's delinquent monthly moorage fee payment. When Plaintiff asserted his statutory right to privacy under Fla. Stat. § 559.72, Pino became irate. Pino gestured and yelled loudly to City employee Hyron Figueredo ("Figueredo") to revoke Plaintiff's "access to

2

amenities." This marked the commencement of the City's adverse action against Plaintiff.

4.  On August 21, 2025, at 8:00 a.m., Thomas Nesbitt, a City employee and DKM Supervisor, ordered Plaintiff to remove Tender from the DKM dinghy dock. Plaintiff requested to remove Tender upon return from work and Nesbitt agreed to allow Tender to remain at dock until 5:30 p.m. Plaintiff departed with the reasonable expectation that Tender would be there when he returned from work.

5.  Revoking Plaintiff's access to the DKM dinghy dock is a violation of City of Miami Ordinance § 50-428.

6.  On August 21, 2025, at 1:00 p.m., Plaintiff was notified via email of the impound of Tender and termination of Plaintiff's Moorage Agreement ("Agreement") (Exhibit 4), expelling Plaintiff from the marina and preventing Plaintiff from using Tender to travel from shore to his home. Guillermo Quinones ("Quinones"), the City's Marinas Manager and Nesbitt and Pino's direct superior, was copied on the email.

7.  On August 25, 2025, Nesbitt stated to Plaintiff, "we were just gonna [sic] have you come and pay and release it," indicating the City had seized Plaintiff's Tender as a collection action, in violation of Florida statute and federal law.

8.  On September 3, 2025, DKM impounded Noula and subsequently filed a nonjudicial sale lien (Exhibit 7), in violation of contract and code.

9.  Over the next two months, Plaintiff contacted District Two Commissioner Pardo's office, the City Manager's office, and the Director of the Department of Real Estate, Andrew Frey, attempting to recover his home. They replied to each other but ignored him.

10.   Quinones notified Commissioner Pardo via email that Plaintiff was expelled from DKM due to "late payments." He offered no legal or contractual basis for the impound and sale of Noula or for the impound and destruction of Tender. (Exhibit 3)

11.   On or about October 31, 2025, the City removed Tender from the water, discarding Plaintiff's personal belongings, and discarded Tender in the dumpster corral.

12.   The City did not notify law enforcement of Tender's impound or destruction and neglected to notify Plaintiff of Tender's destruction.

13.   In its zeal to generate revenue, the City imposed over $30,000.00 in fines for a $424.79 invoice that was ten days delinquent, a clear violation of contract and law. The fines serve no remedial purpose. The fines prevent Plaintiff from claiming his property pending adjudication of his complaint.

14.   Quinones filed a nonjudicial sale lien (Exhibit 7) against Noula, in breach of Agreement Clause Seven and in violation of City of Miami, Florida Ordinance § 50- 338. According to Vicki Hurd at United American Lien, the sale of Noula was completed on November 21, 2025. (Exhibit 15)

15.   The seizures and the termination are clear violations of contract, ordinance, and Plaintiff's constitutionally protected speech interests, property interests, and due process interests.

16.   Plaintiff's vessel registration and insurance have been current without interruption since August 2023.

17.   Quinones claims he terminated Plaintiff's Agreement due to an expired driver's license and previous "late payments." As the City's final decision maker on DKM policy, Quinones created a termination policy after the fact and attempted to apply it to Plaintiff retroactively.

4

18.   An expired driver license is an illogical response to a request for legal basis for seizures.

19.   Nesbitt and Figueredo denied access to Tender and Noula on multiple occasions, causing Tender to become partially submerged from heavy rain. (Exhibit 14)

20.   The Lien notice was unreadable as it was printed in 8pt font. It did not contain a detailed invoice of charges for Noula and Tender, only a subtotal, a lien fee, and a total. (Exhibit 7)

21.   The lien notice sent via USPS Certified Mail was dated September 15, 2025, and "date of notices" was entered as September 11, 2025. (Exhibit 16)

**COUNT I**

**INJUNCTIVE RELIEF**

22.   Plaintiff realleges and incorporates Paragraphs 1 through 21.

23.   The impound of Plaintiff's property was a violation of contract and code.

24.   The impound of Plaintiff's property rendered him homeless.

25.   The sale of Noula, Plaintiff's home, causes irreparable harm and can never be compensated with a monetary award at the conclusion of this action.

**COUNT II**

**NEGLIGENCE**

26.   Plaintiff realleges and incorporates Paragraphs 1 through 21.

27.   Plaintiff's Tender has been removed from the water, disassembled and trashed in the dumpster corral. The motor was removed, and his personal belongings were discarded.

28.   Plaintiff has endured irreparable damage due to the seizure of his home.

29. Plaintiff is experiencing trauma responses, lack of sleep, lack of appetite, extreme anxiety and extreme depression, and with the sale of his home, this ordeal continues through the holidays and into the future.

30. Plaintiff is under care of a physician and a mental health professional to treat the effects of homelessness on his mental health and every aspect of his personal and professional life.

WHEREFORE, Plaintiff respectfully requests this honorable Court provide the following relief:

    a. a preliminary injunction invalidating the sale and/or title reassignment of Noula;

    b. a preliminary injunction invalidating the lien filed on Noula;

    c. a preliminary injunction ordering Defendant to end the unlawful, prolonged detention of Noula;

    d. the rescission of any fines and a stay on further collections actions, pending the adjudication of Plaintiff's claims, including appeals;

    e. a preliminary injunction ordering Defendant to provide accommodation for Noula at Slip 44 on Pier 7, at Defendant's expense and until Plaintiff's claims have been fully adjudicated, including appeals;

    f. an order compelling the City to take affirmative action to cure the ongoing violations of contract, law, and civil rights at DKM;

    g. an order compelling the City to appear and show cause;

    h. an order enjoining the City from taking further retaliatory action, including any further legal action, to deprive Plaintiff of his lawful and constitutionally protected rights;

    i. damages in the amount of $2,750,000.00; and

    j. any such other relief as this Court deems just and equitable.

# Index of Exhibits

| | | |
|---|---|---|
| Termination and Expulsion | August 21, 2025 | (Exhibit 1) |
| Tender Seized | August 21, 2025 | (Exhibit 1) |
| Noula Seized Email | September 3, 2025 | (Exhibit 2) |
| Quinones Email to City Hall | August 22, 2025 | (Exhibit 3) |
| Moorage Agreement | October 1, 2024 | (Exhibit 4) |
| Noula Vessel Registration | June 2023 | (Exhibit 5) |
| Noula Vessel Insurance | | (Exhibit 6) |
| Lien | September 15, 2025 | (Exhibit 7) |
| Lien Invoice | November 21, 2025 | (Exhibit 8) |
| Lien USPS Mail Stamped | September 15, 2025 | (Exhibit 16) |
| Photos of Trashed Tender | November 1, 2025 | (Exhibit 9) |
| Sale of Noula confirmed | November 24, 2025 | (Exhibit 11) |
| Surgery Proof | August 2, 2024 | (Exhibit 12) |
| $0 Balance on August 1 | | (Exhibit 13) |
| Access to Property Denied | October 29, 2025 | (Exhibit 14) |
| Lien envelope dated | September 15, 2025 | (Exhibit 15) |

## DEMAND FOR JURY TRIAL

**Plaintiff demands a trial by jury on all claims so triable.**

Dated: November 24, 2025

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

Evangelos Skevofilax

3400 Pan American Dr

Miami FL 33133

Telephone: 305-339-2568

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

I.    **CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT, IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

<u>Evangelos Skevofilax</u>
Plaintiff                                              Case # _____
                                                       Judge  _____

vs.
<u>Dinner Key Marina, United American Lien and Recovery, City of Miami</u>
Defendant

II.    **AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

III.    **TYPE OF CASE**      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

## CIRCUIT CIVIL

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☒ Negligence—other
      ☐ Business governance
      ☐ Business torts
      ☐ Environmental/Toxic tort
      ☐ Third party indemnification
      ☐ Construction defect
      ☐ Mass tort
      ☐ Negligent security
      ☐ Nursing home negligence
      ☐ Premises liability—commercial
      ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
      ☐ Commercial foreclosure
      ☐ Homestead residential foreclosure
      ☐ Non-homestead residential foreclosure
      ☐ Other real property actions

☐ Professional malpractice
      ☐ Malpractice—business
      ☐ Malpractice—medical
      ☐ Malpractice—other professional
☐ Other
      ☐ Antitrust/Trade regulation
      ☐ Business transactions
      ☐ Constitutional challenge—statute or ordinance
      ☐ Constitutional challenge—proposed amendment
      ☐ Corporate trusts
      ☐ Discrimination—employment or other
      ☐ Insurance claims
      ☐ Intellectual property
      ☐ Libel/Slander
      ☐ Shareholder derivative action
      ☐ Securities litigation
      ☐ Trade secrets
      ☐ Trust litigation

## COUNTY CIVIL

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

- 2 -

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.    REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☒ Punitive

**V.    NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

  2

**VI.    IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☐ no
    ☒ yes If "yes," list all related cases by name, case number, and court.
    Albert v Dinner Key Marina

**VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.    DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Evangelos Skevofilax        Fla. Bar #
      Attorney or party              (Bar # if attorney)

Evangelos Skevofilax           11/25/2025
  (type or print name)          Date